UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DONGGUK UNIVERSITY,             :   No. 3:08-CV-00441 (RNC)

                            :

        Plaintiff,         :

                            :

   v.                 :

                            :

YALE UNIVERSITY,             :

                            :

        Defendant.     :   JUNE 18, 2008

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### REPORT OF PARTIES' RULE 26(f) PLANNING MEETING

Date Complaint filed: March 24, 2008

Date Complaint served on defendant:  March 25, 2008

Date of defendant's appearance in federal court:  April 14, 2008

Pursuant to Fed. R. Civ. P. 16(b) and 26(f) and D. Conn. L. Civ. R. 26(e), a conference was held on June 12, 2008.  The participants were:

Robert A. Weiner for Plaintiff;

Jin Yung Bae for Plaintiff;

Felix J. Springer for Defendant;

Howard Fetner for Defendant.

**I.**     **Certification**

The undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan.  Counsel further certify that they have forwarded a copy of this report to their clients.

II.    **Jurisdiction**

    A.    ***Subject Matter Jurisdiction***

This Court has subject matter jurisdiction under 28 U.S.C. § 1332  because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

    B.    ***Personal Jurisdiction***

Not contested.

III.   **Brief Description of Case**

    A.    ***Claims of Plaintiff***

        1.    Negligence

Dongguk University ("Dongguk") asserts that Yale University ("Yale") should be held liable for negligence because of the following reasons:

(i) Yale failed to exercise the requisite degree of care in determining whether Ms. Jeong Ah Shin ("Shin") had been awarded a Ph.D. from Yale and provided inaccurate information in its September 22 Fax that was sent in response to Dongguk's inquiry in 2005;

(ii) Yale failed to exercise the requisite degree of care in determining whether the September 22 Fax had been created and sent by Ms. Pamela Schirmeister ("Schirmeister") on behalf of Yale and provided inaccurate information in its response to a series of investigation requests made by Dongguk in 2007;

(iii) Even though it was aware of the importance of providing truthful, accurate and complete information to the Korean media regarding its communications with Dongguk about Shin, beginning on July 10, 2007, in a series of press interviews as well as in emails and press

releases disseminated to the Korean media, Yale made a series of false statements regarding Dongguk's efforts to verify Shin's Ph.D.;

(iv) Despite having received the information from Dongguk that should have allowed it to determine that it had received a request for verification of Shin's degree in 2005 and that the September 22 Fax was authentic, Yale did not respond to Dongguk's email, which inquired the result of Yale's investigation of the matter;

(v) Despite having received the information from Dongguk that should have allowed it to determine that it had received a request for verification of Shin's degree in 2005 and that the September 22 Fax was authentic, rather than correct its false statements and admit the truth, Yale issued an Official Statement on September 21, 2007, stating that all documents supporting Shin's claim were forgeries and therefore "are fake."

        2.       Reckless and Wanton Conduct

Dongguk asserts that Yale should be held liable for reckless and wanton conduct for the following reason:

(i) Despite having assured Dongguk that Yale's investigators were examining the September 22 Fax and would be making further inquiries, Yale did not conduct any further investigation;

(ii) Even though it was aware of the importance of providing truthful, accurate and complete information to the Korean media regarding its communications with Dongguk about Shin, beginning on July 10, 2007, in a series of press interviews as well as in emails and press releases disseminated to the Korean media, Yale made a series of knowingly false statements regarding Dongguk's efforts to verify Shin's Ph.D.;

(iii) Despite having received the information from Dongguk that should have allowed it to determine that it had received a request for verification of Shin's degree in 2005 and that the September 22 Fax was authentic, Yale did not respond to Dongguk's email which inquired the result of Yale's investigation of the matter;

(iv) Despite having received the information from Dongguk that should have allowed it to determine that it had received a request for verification of Shin's degree in 2005 and that the September 22 Fax was authentic, rather than correct its false statements and admit the truth, Yale issued an Official Statement on September 21, 2007, stating that all documents supporting Shin's claim were forgeries and therefore "are fake."

                    3.      Implied Contract

Dongguk asserts that Yale should be held liable for breach of implied contract with Dongguk University. Academic institutions, including Yale, have long been aware that unscrupulous individuals will falsify their academic records in order to assert that they have received degrees from them. In order to protect its reputation and prevent individuals from representing themselves falsely as having been awarded degrees by Yale, Yale regularly and routinely respond to numerous inquiries from various inquirers for verification of Ph.D.'s and other degrees purportedly awarded by Yale. Yale has established certain protocols regarding the verification of Ph.D.'s and other degrees claimed to have been awarded by Yale for the purpose of responding to those inquiries. Further, just as Yale receives inquiries seeking to verify whether an individual has received a degree from Yale, Yale regularly and routinely contacts other academic institutions in order to verify the academic credentials of individuals who are seeking faculty positions at Yale.

By establishing protocols to be used in verifying whether Yale has awarded graduate or post-graduate degrees to particular individuals, Yale has agreed to be bound by such protocols. Yale was at all times aware that institutions would be relying on Yale's response to inquiries as to whether a particular individual had been awarded a graduate or post-graduate degree by Yale.

Dongguk asserts that, based upon their dealings with one another, Yale and Dongguk entered into an implied contract. Dongguk further asserts that, by sending Dongguk the September 22 Fax, which erroneously confirmed the fact that Shin had been awarded a Ph.D. by Yale, Yale breached its implied contract with Dongguk University.

4.     Defamation

Dongguk asserts that Yale should be held liable for defamation because, as set forth in detail in its complaint, on July 10, 2007, July 12, 2007, July 17, 2007, July 18, 2007, August 4, 2007 and September 21, 2007, Yale maliciously stated to various Korean newspapers and/or other news media, which was then published by such news media, that Yale had never received the September 5 Registered Letter, that it had never informed Dongguk that Ms. Shin had been awarded a Ph.D. from Yale University, and that the September 22 Fax was a "fake" and a "forgery."

In addition, Yale should be held liable because, despite having received the information from Dongguk that should have allowed it to determine that it had received a request for verification of Shin's degree in 2005 and that the September 22 Fax was authentic, Yale issued an Official Statement on September 21, 2007, stating that all documents supporting Shin's claim were forgeries and therefore "are fake."

**B.     *Defenses and Claims of Defendant***

Yale believes that Dongguk has failed to state a claim upon which relief can be granted. Dongguk cannot state a negligence claim because Yale owed Dongguk no duty and caused it no

harm.  Dongguk cannot state a reckless and wanton conduct claim because Yale did not consciously disregard a known danger to Dongguk.  Dongguk cannot state a breach of implied contract claim because Yale did not enter into a contract with Dongguk and Dongguk provided no consideration to Yale.  Dongguk cannot state a defamation claim because Yale made no defamatory statements about Dongguk and, in any event, Dongguk is a public figure and Yale made no statements with actual malice.

If Yale's Rule 12(b)(6) motion to dismiss is denied in part, Yale will deny liability under any of the counts of the Complaint that remain and will likely allege several affirmative defenses.  Yale has not asserted any counterclaims, third party claims, or cross claims.

With respect to each of Dongguk's claims, Yale reserves the right to assert additional defenses as additional facts come to light during the course of discovery.

### C.      *Defenses and Claims of Third Party Defendants*

Not applicable.

## IV.      Statement of Undisputed Facts

The parties have not been able to reach agreement on the undisputed facts despite considerable communications on this matter.

## V.      Case Management Plan

### A.      *Standing Order on Scheduling in Civil Cases*

The parties request modification of the deadlines in the Standing Order on Scheduling in Civil Cases as follows:

1.      The parties request that the deadline to complete discovery be modified in accordance with section E, *infra.*

2.      The parties request that the deadline to file motions for summary judgment be modified in accordance with section F, *infra*.

3.      Yale requests that the commencement of formal discovery be stayed pending the resolution of Yale's motion to dismiss the Complaint.  Dongguk objects to this request.

**B.      *Scheduling Conference with the Court***

Magistrate Judge Martinez has scheduled a status conference for July 15, 2008.

**C.      *Early Settlement Conference***

1.      The parties certify that they have considered the desirability of attempting to settle the case before undertaking discovery or further motion practice.  The parties initiated discussions of settlement on June 13, 2008 and plan to hold their next settlement discussion during the week of July 7.  The parties will further report the results of their settlement discussions to Magistrate Judge Martinez on July 15, 2008.

2.      The parties request an early settlement conference.

3.      Yale prefers a settlement conference with a Magistrate Judge.  Dongguk prefers a settlement conference with a Special Master.

4.      The parties do not request referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16(h).

**D.      *Joinder of Parties and Amendment of Pleadings***

Dongguk does not plan to amend its Complaint, but based upon facts elicited during its depositions of Yale's party and non-party witnesses, it may need to file motions to amend the Complaint.

**E.      *Discovery***

1.      The parties anticipate that discovery will be needed on the facts and circumstances alleged in Dongguk's complaint and the facts and circumstances relating to Yale's

defenses, including but not limited to the matters identified in Felix Springer's April 1, 2008 letter to Ira Grudberg and in Robert Weiner's April 4, 2008 letter to Felix Springer.

2.      Dongguk proposes the following discovery schedule, to which Yale objects:

(a)      All discovery is to commence immediately.  Production of written discovery, including documents, shall be completed not later than December 31, 2008.  All fact discovery shall be completed by June 30, 2009.

(b)      The names of Dongguk's experts and Yale's experts shall be disclosed (and expert reports to be furnished) on or before July 31, 2009.

(c)      The names of Yale's expert reports shall be furnished on or before August 31, 2009.

(d)      Dongguk will provide a damages analysis to Yale in connection with its submission of expert report.

3.      Yale proposes the following discovery schedule, to which Dongguk objects:

(a)      All discovery to be stayed pending the resolution of Yale's motion to dismiss.  In the event that the Court denies Yale's motion to dismiss, discovery is to proceed in phases, with written discovery to commence upon the denial of Yale's motion to dismiss, and non-expert depositions to commence nine months after the commencement of written discovery. Dongguk is to provide a damages analysis to Yale not later than thirty days after discovery commences.

Yale expects written discovery to require at least nine months because the facts are complex and wide-ranging, and many documents will require translation.  Most, if not all, of

Dongguk's documents are likely to be in Korean, and will need to be translated into English in order to be intelligible to Yale, its counsel, and the Court. In addition, Yale will likely issue a number of subpoenas to Korean entities in order to obtain documents, such as Jeong Ah Shin's personnel files from the museums and universities where she worked, which may require the intervention of a Korean court. Because there would be little value in conducting depositions without the production of relevant documents, it makes sense to engage in nine months of written discovery before beginning depositions of fact witnesses.

All non-expert discovery (including depositions) to be completed (not propounded) on or before twenty months after the resolution of the motion to dismiss. Yale expects depositions of non-expert witnesses to require 11 months for similar reasons. Based on Yale's current assessment of Dongguk's allegations and the surrounding facts, Yale could easily require as many as 20 depositions. Many of these depositions will require Dongguk witnesses to travel to the United States, and some third-party depositions will likely require both parties' American counsel to travel to Korea. International travel arrangements, and the need for translators, should make the scheduling of depositions particularly difficult. Third-party depositions of Korean witnesses (for example, of Jeong Ah Shin and her lover and conspirator Yang Kyun Byeon) will likely require the intervention of Korean courts and will likely take some time to arrange.

(b)     Dongguk's experts to be disclosed (and expert reports to be furnished) on or before thirty days after the conclusion of written discovery and non-expert depositions. Yale's experts to be disclosed (and expert reports to be furnished) on or before sixty days after Dongguk's experts are disclosed.

4.     Yale requests that discovery be conducted in phases, with written discovery to commence upon the resolution of Yale's motion to dismiss, and non-expert

depositions to commence nine months after the commencement of written discovery.  Dongguk objects to this request.

5.      Dongguk requests that discovery be completed by June 30, 2009.  Yale requests that discovery be completed by twenty-four months after the Motion to Dismiss is decided.

6.      The parties anticipate that Dongguk will require a total of as many as ten depositions and Yale will require a total of as many as twenty depositions.

7.      Yale anticipates requesting permission to serve more than 25 interrogatories.  Dongguk will object to this request.

8.      Plaintiff's experts.  *See* 2(b) and 3(b) above.

9.      Defendant's experts.  *See* 2(b)-(c) and 3(b) above.

10.      In accordance with Rule 26(f)(3)(C), counsel have discussed the disclosure and preservation of electronically stored information, including but not limited to the form or forms in which it will be produced.  The parties have agreed that, to the extent possible, all electronic discovery will be provided both in native format and on paper.  The parties have retained all electronic data relating to the allegations of the Complaint.

11.      In accordance with Rule 26(f)(3)(D), counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production.  The parties agree that privileged information inadvertently produced will not waive the attorney-client privilege.

F.      *Dispositive Motions*

Summary judgment motions (or other dispositive motions) will be filed not later than 30 days after the close of discovery.

G.   *Joint Trial Memorandum*

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed 45 days after this Court's ruling on all dispositive motions or 45 days after the close of discovery, whichever date is later.

**VI.   <u>Trial Readiness</u>**

The case will be ready for trial within 30 days after the filing of the Joint Trial Memorandum.

As officers of the Court, undersigned counsel agree to cooperate with opposing counsel and the Court to promote the just, speedy, and inexpensive determination of this action.

PLAINTIFF DONGGUK UNIVERSITY            DEFENDANT YALE UNIVERSITY

By:    /s/ Robert A. Weiner            By:    /s/ Felix J. Springer
       Ira Grudberg (#ct00178)                 Felix J. Springer (#ct05700)
       Jacobs, Grudberg, Belt, Dow & Katz P.C. Howard Fetner (#ct26870)
       350 Orange Street                       Day Pitney LLP
       New Haven, CT 06511                      242 Trumbull Street
       (203) 951-3720 (phone)                   Hartford, CT 06103
       igrudberg@jacobslaw.com                  (860) 275-0100 (phone)
                                                (860) 275-0343 (fax)
       Robert A. Weiner                         fjspringer@daypitney.com
       McDermott Will & Emery LLP               hfetner@daypitney.com
       340 Madison Avenue
       New York, NY10173-1922                   Its attorneys
       (212) 547-5400
       rweiner@mwe.com

       Its attorneys

## <u>CERTIFICATION</u>

I hereby certify that on this date a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_\_\_/s/ Howard Fetner\_\_\_\__