1                    UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF CONNECTICUT

3

4     - - - - - - - - - - - - - - - - x
                                      :
5     DONGGUK UNIVERSITY              :   No. 3:08CV441(RNC)
                                      :
6                     Plaintiff,      :
                                      :
7              vs                     :
                                      :
8     YALE UNIVERSITY                 :
                                      :   HARTFORD, CONNECTICUT
9                     Defendant.      :   FEBRUARY 23, 2009
                                      :
10    - - - - - - - - - - - - - - - - x

11

12

13                    TELEPHONE CONFERENCE

14

       BEFORE:
15
            HON. ROBERT N. CHATIGNY, CHIEF U.S.D.J.
16

17

18

19

20

21                                Darlene A. Warner, RDR-CRR
                                  Official Court Reporter
22

23

24

25

```
1    APPEARANCES:

2        FOR THE PLAINTIFF:

3            MCDERMOTT WILL & EMERY
                 50 Rockefeller Plaza
4                340 Madison Avenue
                 New York, New York 10173-4613
5            BY:  ROBERT A. WEINER, ESQ.
                 JEAN BAE, ESQ.
6
             JACOBS, GRUDBERG, BELT, DOW & KATZ, P.C.
7                350 Orange Street, P.O. Box 606
                 New Haven, Connecticut 06503-0606
8

9        FOR THE DEFENDANT:

10           DAY PITNEY LLP
                 242 Trumbull Street
11               Hartford, Connecticut 06103-1212
             BY:  FELIX J. SPRINGER, ESQ.
12               HOWARD FETNER, ESQ.

13

14       ALSO PRESENT:  Audrey Lu

15

16

17

18

19

20

21

22

23

24

25
```

1                          10:00 A.M.

2

3              THE COURT:  Hello.

4              MR. WEINER:  Good morning, Your Honor.

5              MR. SPRINGER:  Good morning, Your Honor.

6              MR. GRUDBERG:  Good morning, Judge.

7              THE COURT:  Would you please identify yourselves

8    for the record.

9              MR. WEINER:  Yes.  Robert Weiner.  I'm here with

10   Jean Bae representing the plaintiff, Dongguk University.

11             MR. GRUDBERG:  Ira Grudberg, also for the

12   plaintiff.

13             MR. SPRINGER:  Felix Springer for the defendant,

14   Yale University.

15             MR. FETNER:  And Howard Fetner, also for the

16   defendant.

17             THE COURT:  Thank you.

18             Let me begin by asking you to tell me where

19   things stand.

20             Mr. Weiner?

21             MR. WEINER:  Your Honor, I think in terms of the

22   issue that you had raised at the last conference regarding

23   when, if at all, the questions regarding reckless

24   disregard and negligence should be sent to the Connecticut

25   Supreme Court, we agree with Your Honor, the statements

1    Your Honor made regarding the development of the record.

2                    I'm not sure where Yale stands on this issue.

3                    MR. SPRINGER:  We would also agree, Your Honor,

4    that the record should be developed before the matter is

5    referred to the Connecticut Supreme Court.

6                    THE COURT:  Okay.  I don't know if indeed the

7    matter will be referred to the Connecticut Supreme Court,

8    but I do agree that it makes sense to develop the record

9    before a decision is made in that regard.

10                   Let me turn to the question of how we should

11   proceed to develop the record.

12                   It occurs to me that one sensible way to proceed

13   would be to confine discovery to issues relating to

14   liability and then see where we are.  If it turns out that

15   the discovery on liability leads us to think that it would

16   make sense to revisit the legal sufficiency of the claims,

17   then we could do that before you incur the time and

18   expense involved in doing discovery on damages.

19                   MR. SPRINGER:  Your Honor, if I might, and I

20   haven't had a chance to talk about this with Mr. Weiner

21   and it may fall in with what you're suggesting, but we had

22   thought long and hard after you had mentioned the wisdom

23   of, you know, a resolution here.

24                   This is a unique case, as you know, and it's not

25   what universities usually do to universities.  Having said

1     that, we also took into account what Bob Weiner has been

2     talking about, the need for discovery before having

3     meaningful resolution talks.  And we've been talking

4     assiduously in fact over the end of last week and up

5     through this morning.  And I wonder if something like this

6     makes sense, and it falls in line with your thinking, it

7     does give us some damages discovery because that's the

8     heart of the discovery we will be taking of course.  But

9     what we thought might work would be to have Dongguk serve

10    its discovery request.  I think we both agreed that

11    initial disclosures will be issued in the next week and

12    then discovery could begin.  They serve their discovery

13    requests, we respond.  We serve our discovery requests,

14    Dongguk responds.  Then Dongguk would take three key

15    depositions.  That would be, you know, Shirmeister, Carney

16    and Reinstein.  And we don't take any depositions.  And

17    then we have a settlement conference with party

18    representatives attending.

19         I think all of that could be done within six

20    months, and it may dovetail with some of what you're

21    suggesting, because I think we're thinking along the same

22    lines.

23         What we're trying to do is avoid the complex

24    legal issues that would relate to third party discovery in

25    Korea if in fact we could get third party discovery, or as

1    much as we would want for either of the sides, and it

2    would also avoid the burdens, we think, to Dongguk.  They

3    would not have to send a dozen people over here for

4    depositions.

5              There are some liability issues to be sure that

6    we would need to discover but at the very least this would

7    be a minimal damages discovery for us.  But, you know,

8    again it may well be that we can, you know, work around

9    your suggestion as well, but the thought being that we

10   both engage in limited discovery that allows us to

11   discover the other's case to some degree while avoiding

12   the real burdens that discovery here would entail.

13             And of course if the case does not settle at

14   that six-month conference, we would both proceed much more

15   informed.  We would also have, you know -- be able to

16   tell, Your Honor, I think in much more detail, what

17   further discovery might be necessary and to fashion a

18   plan.

19             So that was our thinking, and to some degree I

20   think it dovetails with your thinking.

21             And again I apologize to Bob.  I, you know --

22   literally we've been working on this and getting approval

23   for it up until this morning.

24             MR. WEINER:  Your Honor, I'm always happy to

25   start someplace, and I certainly have no difficulty with

1    starting on the liability issues.  I don't want to commit

2    myself to whether it's three or four or even maybe five

3    depositions until I see the documents because the

4    documents will often tell a story.  And I agree that the

5    three depositions that were mentioned are critical

6    depositions, but there may be one or two others that we

7    think are similarly important but won't know that until

8    the documents are produced.

9              I'm happy to go along with the -- I think it was

10   the six-month schedule you mentioned, Felix.

11             MR. SPRINGER:  I did.  And, you know, in part

12   that was because, you know, neither of us are going to get

13   everything we want before that.  And, you know, you're

14   certainly welcome to take more depositions, and I'm not

15   trying -- what I'm trying to do is do something that's

16   manageable at this point to provide you what is I think

17   critical to your case -- I think we'd all acknowledge

18   those three individuals -- and also, you know, limits us

19   at this point as well.  But, you know, that at least was

20   the thinking.

21             THE COURT:  Well, I think that your suggestion

22   makes sense and it sounds realistic.  Why don't we agree

23   to proceed that way.  Should it turn out that the

24   plaintiff wants to take an additional deposition or two in

25   advance of the settlement conference, then I'll be happy

1    to entertain that request and we can talk about that and

2    see if it makes sense in the circumstances.

3            But in the meantime I'm perfectly willing to go

4    along with this suggestion.

5            Do you have an idea what you would like to do

6    with regard to a settlement conference in six months?

7    Would you propose to do that with a magistrate judge or a

8    private ADR provider?

9            MR. WEINER:  My suggestion on that, Your Honor,

10   is to wait and see as we approach that time.

11           We did have a conference this past August.  We

12   did bring our client in.  It was not a fruitful experience

13   from our point of view.

14           We had suggested prior to that conference the

15   use of someone who was sensitive to our client's language

16   and culture.  I still think that's an important part of

17   this settlement process.  But I do think that it's

18   something that perhaps as we're in the process of taking

19   the discovery we can revisit this issue and come to some

20   meeting of the minds on that.

21           MR. SPRINGER:  I guess, Your Honor, one of my

22   thoughts had been since this is a jury trial, you know, I

23   was actually thinking that it made some sense to have the

24   settlement conference before Your Honor.  I don't know

25   what your thoughts are on that, but --

1          THE COURT:  My concern is that both sides might

2     find themselves engaged in a very candid exchange with me,

3     perhaps on an ex parte basis, that could complicate

4     matters for everybody if the case didn't settle.

5          Why don't we do this, why don't we say that you

6     will think about this and discuss it and you will let me

7     know in a timely manner what your preference turns out to

8     be so that we can make the necessary arrangements without

9     encountering needless delay.

10          I think if you get back to me in four months

11     with two months remaining before you're ready for the

12     conference, then we should have enough time to make the

13     arrangements.

14          MR. SPRINGER:  That would be fine, Your Honor.

15          May I also raise a couple of other issues?  The

16     plan I'd suggested sought to obviate some of the

17     disagreements that we had in the 26(f) report but it

18     doesn't take care of all of them as it were.

19          One of them is our need to serve more than 25

20     interrogatories in this matter in light of the complexity

21     of it and the nature of it.  Normally we would perhaps

22     take more depositions, but here the need for information

23     strikes us as such that we would want to serve up to 50

24     interrogatories and get some, you know, specific answers

25     with regard to topics.

1              The other issue that I think is not obviated is

2     the damage analysis.

3              As you may know, we submitted Mr. Weiner's

4     letter that was the basis of settlement -- the settlement

5     conference before the magistrate.  But even in that

6     letter, and it's not a pleading, of course, there was a

7     statement, we are still in the process of determining the

8     damage amount and other areas that are not mentioned in

9     this letter.  We don't want to be in a position of finding

10    out that there are categories of damages that are unknown.

11    There's certainly a wealth of damages claimed and

12    categories claimed that appear to be even more.

13             So we would like, at the very least, a pleading

14    with regard to the damage analysis that we could rely on

15    and frame our discovery with regard to.  We can use the

16    letter to be sure, but it is not what is called for in the

17    rules.  And Mr. Weiner's indicated he, you know, may need

18    experts with regard to certainly the amount of some of

19    this.  But we would like to have some firmer basis from

20    which to conduct our discovery.

21             And the last matter is not really one I think

22    that Your Honor need get involved in but I mention it.

23             We talked, Bob, about sharing the cost of

24    translation and we could discuss that further, but it

25    seemed I think at one point a good idea to both of us.  So

1    I raise that as well as one of the three unresolved issues

2    by -- at least in my mind -- by this plan, Your Honor.

3              MR. WEINER:  Your Honor, I'd like to respond to

4    all three of those.  I'm not going to do them quite in the

5    order in which they were mentioned.

6              On the damage analysis, the damage analysis that

7    was done was done at the request of the magistrate and we

8    provided her with what she had asked for.  But as to

9    special discovery on that point and for bifurcating for

10   purposes of damages, I'm a little confused as to the focus

11   on it at this point.

12             Having said that, Rule 26(a)(iii) provides us

13   with a duty of providing information regarding our

14   damages.  We intend to comply with that in the full

15   respect.  We do not intend to add any additional

16   categories of damages.  I think that the memorandum we

17   provided to the magistrate was very clear in the damage

18   categories.

19             What we have said and what we continue to say,

20   these damages aren't -- unfortunately are not static.  The

21   impact continues to this day.  Therefore, we will be

22   providing at the appropriate time all damage discovery,

23   including expert testimony, on the rehabilitation, which

24   will help determine the specific amount of our damages.

25             But to assure Mr. Springer he is fully aware of

1    all of our categories of damages, we will comply with the

2    rules as they are written in providing that information to

3    him, but again I'm a little confused as to how far down

4    the road we're going as to damages at this point in view

5    of Mr. Springer's suggestion and Your Honor's suggestion.

6    Maybe just deal with them seriatim.

7            MR. SPRINGER:  Bob, I guess I'm confused.  When

8    I said that I heard what the Judge said and I was trying

9    to combine, I thought we would be doing some discovery on

10   damages.  I didn't think we would be limiting it to

11   liability at this point in this plan.  But I'm willing to,

12   you know, because I think we would be at a considerable

13   disadvantage because our -- you know, much of our

14   discovery is related to damages and causation related to

15   damages.

16           MR. WEINER:  Your Honor, I thought your

17   suggestion was to deal with liability issues and revisit

18   where we are and if necessary go beyond that.  If I

19   misunderstood, I apologize.

20           THE COURT:  No, my view is I guess a bit of a

21   compromise between your initial positions.  Specifically I

22   think that the primary focus should be on liability, and

23   to the extent that you are interested in trying to resolve

24   the case at a settlement conference, then whatever

25   discovery on damages needs to be done to make that a

1    useful exercise should be done, but the focus needs to be

2    on liability issues.

3         I would like to be clearer, and I suppose I can

4    be clearer -- I can be very specific if we get into the

5    nits-and-lice of the matter -- but to my mind,

6    conceptually speaking, we would use this six-month period

7    of time to do discovery that is necessary to be able to

8    evaluate the legal sufficiency and strength of the

9    plaintiff's claims, and once this discovery is done and we

10   have an opportunity to take a look at the claims, we can

11   decide what more needs to be done.

12        I did not include in my own thinking the

13   possibility of having a settlement conference at that

14   point so I wasn't thinking about damages discovery, but

15   I'm always happy to hear that people are interested in a

16   settlement conference and I don't want to throw cold water

17   on that.  In fact, I'd like to facilitate that.  So if and

18   to the extent some discovery on damages is needed during

19   this time in order to prepare for what we would like to be

20   a productive settlement conference, then it should be done

21   in the interests of all concerned.

22        MR. WEINER:  And that's fine with us, Your

23   Honor, and we certainly will respond to the request

24   regarding the damages as they're sent to us.

25        On the issue of 50 interrogatories, I have had

1    for some time had some difficulty -- and I think I

2    explained this to Mr. Springer before -- regarding where

3    the focus of discovery is.  Certainly as to liability, we

4    were, in our view, the victims of things that were going

5    on between Yale and the press.  We're not going to have

6    the information they will, and therefore I don't

7    understand the need for 50 interrogatories.  This is not

8    an antitrust case or a securities case where I'm making

9    all kinds of claims and the information is truly in my

10   client's possession.  Unless Mr. Springer can provide Your

11   Honor with more detail as to why he needs more -- double

12   the amount of permitted interrogatories, I'm very much

13   dead set against it.

14           If he wants to propose those interrogatories and

15   provide it to Your Honor so we can all look at them and

16   determine their reasonableness, I think that would be

17   something to think about.  But in a vacuum, it strikes me

18   as overreaching.  And in my experience, interrogatories

19   are generally served for one purpose, which is to burden

20   the other side to doing all kinds of things that really

21   never have a lot of use ultimately in a lawsuit.

22           So I would oppose that, and I guess in some ways

23   he could ask them and I can object to them, but I think

24   we're better off trying to get a little more feel for what

25   is being sought in these interrogatories and why the use

1    of a document request, for example, could not serve as a

2    better substitute.

3            MR. SPRINGER:  One should be to make sure we

4    understand what documents we are receiving, and there are

5    a number of identification issues.  With regard to the

6    point the Judge had raised and that we were very

7    interested in, what a variety of Dongguk officials knew,

8    when they knew it and what they did with that information

9    is critical, it seems to me, to a number of issues here.

10   And there are a number of complex questions related to

11   Dongguk's own procedures as well as a number of people

12   involved at various layers of Dongguk.

13            And that would, you know -- and because -- one

14   of the things we're trying to avoid here through the

15   interrogatories is the -- you know, the perhaps need for

16   depositions, recognizing the problematic nature of third

17   party depositions particularly, but I -- you know, we

18   don't want to burden ourselves with answers that -- or

19   information that can't be useful, but I do think in this

20   matter, with -- you know, after all, is over 200

21   paragraphs and is complex factually at least and, you

22   know -- and to be sure some of those interrogatories are

23   designed to get an appreciation of what information exists

24   with regard to certain damages as well as perhaps, Your

25   Honor, key issues of causation here.  Those are the

1    essential -- and it just seems to me -- and Mr. Weiner's

2    right.  He can object to those and we can take them before

3    you.

4              But those, you know, this is -- I can understand

5    Mr. Weiner's point.  From his point of view, he can focus

6    on Yale and we have a much more, I think, complex burden

7    when we look to Korea and Dongguk and try to, you know,

8    parse out what information it is that we need.  And we're

9    concerned about being limited.  Because interrogatories in

10   this case, unlike a number of others, may be our best

11   approach and the least expensive approach for all the

12   parties to obtain certain information.

13             THE COURT:  I think that sounds right.  I think

14   that you do have the more challenging work to be done

15   during this phase insofar as the plaintiff's claims do

16   entail issues relating to what the plaintiff knew and when

17   the plaintiff knew it and what the plaintiff disclosed or

18   failed to disclose.  So I think that the best thing to do

19   would be to have you submit interrogatories in excess of

20   the prescribed limit, and if Mr. Weiner wants to respond,

21   fine.  If he wants to discuss them with you, fine.  If he

22   wants to object, fine.  But we can at least see what you

23   have in mind.  If there is an objection, then I'll take

24   care of it.

25             MR. WEINER:  That's fine, Your Honor.

1        The one point I would make is I'm not sure -- I

2    remember Your Honor's point about the initial 2005 and as

3    to whether there was some obligation to say more than what

4    was said at that time.  I'm still having some

5    difficulties.  In 2007, what people knew was what they

6    read.  I'm not -- I'm just still a little confused as to

7    what it is Mr. Springer's searching for.

8        MR. SPRINGER:  Well, let me give you one

9    specific example.

10        In June, Dongguk communicated to Yale in early

11   June and found out that Shin had not gotten a Ph.D. there

12   nor had she written a dissertation.  There was a month lag

13   until July when it approached Yale.  I would very much

14   like to know what was going on in that month after Yale

15   had informed Dongguk of that information in June of '07.

16        There are other issues related and we will put

17   them in the interrogatories.  So --

18        MR. WEINER:  I don't think you have your facts

19   right.  I think that within days after they received that

20   information, they sent letters out to Yale, including

21   e-mails --

22        MR. SPRINGER:  No.

23        MR. WEINER:  -- to the people involved, so --

24        MR. SPRINGER:  But --

25        MR. WEINER:  Because your client came back on

1    July 10th.

2         MR. SPRINGER:  I understand, but it was in early

3    June that they first wrote to other departments, the

4    department of our history, and then there was a lag until

5    that July letter, Bob.  Go back and look at it.

6         MR. WEINER:  I think you'll see the letter is a

7    little more complete than you think, but to me that again

8    is document discovery and certainly depositions.  But

9    you'll serve those interrogatories for that time period

10   and we'll respond.

11        THE COURT:  Okay.  Is there anything else that

12   we should talk about now?

13        You mentioned the cost of translation.

14        MR. WEINER:  That was a suggestion that I made

15   but it had limitations to it.  It wasn't an invitation

16   that every document that Yale was going to be requesting

17   would be jointly translated.

18        What I think I said to Mr. Springer was that

19   there were certain documents that both sides believe were

20   pertinent and important to have translated and important

21   that we agree on the translation, and as to those, it made

22   sense to me that we should split the costs.

23        But Mr. Springer has also indicated to me that

24   his discovery intentions are much broader than that, and

25   including, among other things, I think the whole criminal

1    trial of Ms. Shin.  And we don't even understand, quite

2    frankly, the relevance of that trial.  If there's a

3    specific area that we can agree on is relevant, we're

4    happy to talk about translation there as well.  But we're

5    not agreeing wholesale to picking up half of their

6    translation costs.

7              MR. SPRINGER:  We can talk further, Your Honor,

8    and it may well be that we get some compromise here that,

9    you know, both sides are at least willing to entertain.

10             THE COURT:  Okay, all right.

11             MR. WEINER:  One last point, Your Honor.

12             THE COURT:  Sure.

13             MR. WEINER:  As I had read your rules regarding

14   the Rule 26(f) statement, there is an obligation on the

15   parties to stipulate to as much facts as they can to avoid

16   unnecessary disputes, and we have had a fundamental

17   disagreement as to what Your Honor meant by that in your

18   rules.  And we think there are a number of facts that can

19   be stipulated to that should not become the subject of

20   litigation.  For example, the publication dates of the

21   articles, what the articles say.  And we have been unable

22   to reach an agreement on that.

23             THE COURT:  Well, the intent of the rule is to

24   call on responsible counsel to stipulate when appropriate.

25   The party who believes that stipulations should be made

1    but finds itself dealing with a recalcitrant opponent can

2    submit requests to admit.

3              I mean, I don't know what else to tell you.

4              MR. WEINER:  We'll go down that road.

5              MR. SPRINGER:  That's exactly what we intend to

6    do as well, Your Honor.

7              THE COURT:  From my perspective, this way of

8    proceeding holds out the promise of a relatively early

9    resolution of an unusual case.  The case is one that can

10   be more polarizing for the parties than the usual case.

11             The plaintiff can justly feel that it was

12   ill-used by Yale, as we've discussed, and certainly Yale

13   must acknowledge that this was not handled well.  At the

14   same time, Yale can justly feel that the plaintiff's

15   demands are extravagant and that the plaintiff is failing

16   to appreciate that it had no contract with Yale, certainly

17   no express contract, it could have done other things to

18   protect its own interest, and the law in Connecticut is

19   actually not that favorable to the plaintiff's position.

20   It is not at all clear that the plaintiff can recover for

21   negligent or even grossly negligent infliction of

22   pecuniary harm.  It's also far from clear that the

23   plaintiff can satisfy the rigorous requirements of a

24   successful defamation claim brought by a public figure.

25             So I hope very much that you will be able to

1    proceed in a way that enables us to get a good handle on

2    the legal sufficiency of these claims and resolve the

3    matter without taking years and incurring vast expense.

4    That's the approach that I am taking and I hope it's the

5    approach that you will take.

6              I invite you to call me, write to me, let me

7    know if there's anything I can do to assist you during

8    this period.  If I have the ability to keep it on track,

9    then please let me know if you need me to keep it on

10   track, because I would like to help you get this resolved.

11   All right?

12             MR. SPRINGER:  Your Honor, after listening to

13   Mr. Weiner, I'm not sure how we resolved the issue on the

14   damage analysis.  Is there going to be a pleading that is

15   going to be submitted?

16             THE COURT:  Mr. Weiner's going to do what is

17   required by Rule 26, as he said, that is, he will provide

18   you with the categories of damages and a computation in

19   each.  If you have a need for further information, I hope

20   you will call him and see if you can work it out.

21             MR. SPRINGER:  Yeah, I certainly would try that,

22   Your Honor.

23             THE COURT:  All right?

24             Is that your understanding, Mr. Weiner?

25             MR. WEINER:  It is, Your Honor.

```
 1              THE COURT:  Okay.  And please don't hesitate to
 2    call me.  Like I said, I'd be happier to work with you to
 3    keep it on track than to hear that it came off the track
 4    and find myself dealing with that.
 5              Fair enough?
 6              MR. WEINER:  Yes, Your Honor.
 7              MR. SPRINGER:  Yes, understood.
 8              THE COURT:  Okay, then, thank you.
 9              MR. SPRINGER:  Thank you very much, Your Honor.
10                   (Proceedings adjourned at 10:36 a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2

3                          C E R T I F I C A T E

4

5                     In Re: Dongguk  vs. Yale

6

7

8          I, Darlene A. Warner, RDR-CRR, Official Court

9    Reporter for the United States District Court for the

10   District of Connecticut, do hereby certify that the

11   foregoing pages are a true and accurate transcription of

12   my shorthand notes taken in the aforementioned matter to

13   the best of my skill and ability.

14

15

16

17

18                  /s/_____

19                     DARLENE A. WARNER, RDR-CRR
                         Official Court Reporter
                       450 Main Street, Room #223
20                     Hartford, Connecticut 06103
                           (860) 547-0580
21

22

23

24

25