## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

DONGGUK UNIVERSITY,

        Plaintiff,

    v.

YALE UNIVERSITY,

        Defendant.

Civil Action No. 3:08-CV-00441-RNC

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF DONGGUK UNIVERSITY'S MOTION TO COMPEL DEFENDANT YALE UNIVERSITY TO PRODUCE DOCUMENTS NOT PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

Plaintiff Dongguk University ("Dongguk") pursuant to Rule 37(a) of the Federal Rules of Civil Procedure respectfully submits this Memorandum of Law in support of its motion compelling defendant Yale University ("Yale") to produce documents that are being withheld or have been redacted on the basis of Yale's assertion of the attorney-client privilege.

### PRELIMINARY STATEMENT

As set forth in the accompanying affidavit of Robert A. Weiner ("Weiner Affidavit"), sworn to the 19th day of January 2010, Yale has submitted two privilege logs ("Privilege Logs) containing several hundred documents which have either been withheld from production in their entirety on the ground of attorney-client privilege or have been redacted to remove what Yale contends is attorney-client material (collectively, the "Withheld/Redacted Documents"). The Withheld/Privileged Documents fall into the following categories:

- Communications Concerning, Requesting, or Responding to Legal Advice
- Communications Between Attorneys/In-House Counsel Only
- Attorney Notes Regarding Attorney-Client Communications
- Fact Gathering in Order to Respond to the Department of Justice's Information Subpoena
- Strategy Regarding Drafting of Yale's Public Statement

- Strategy for Communicating with Dongguk University
- Strategy for Addressing Jeong Ah Shin Issue or Media Attention Regarding Jeong Ah Shin
- Strategy for Addressing Dongguk University and Jeong Ah Shin
- Non-Attorney Communications "Conveying" Legal Advice
- Correspondence with Dongguk University
- Attorney Notes Regarding The Facts of the Case
- Emails and Attachments Concerning Drafts

With a limited option,  Dongguk is not challenging Yale's assertion of the attorney-client privilege for the documents described the following three categories:

- Communications concerning, requesting, or responding to legal advice
- Communications between attorneys/in-house counsel only
- Attorney notes regarding attorney-client communications

Dongguk is challenging the assertions of privilege for each document contained in each of the other categories.  A list of the challenged Withheld/Redacted Documents is annexed to the Weiner Affidavit as Exhibit 12.

## THE BACKGROUND FACTS

This case centers around the false statements and allegations made by Yale to the Korean media in a university-wide cover-up of its negligent and reckless behavior, in denying that it ever provided Dongguk with a statement confirming that it had awarded a Ph.D. to Jeong Ah Shin ("Shin").  Dongguk has asserted against Yale claims of: (1) negligence, (2) reckless and wanton conduct, and (3) defamation.

Specifically, Dongguk asserts that Pamela Schirmeister ("Schirmeister"), an Associate Dean in Yale's Graduate School of Art and Sciences, failed to follow Yale's protocols for verifying post-graduate degrees purportedly awarded by Yale.  Dongguk also asserts that Schirmeister violated Yale's protocols and, as a consequence, authenticated what turned out to be a forged document that Shin had provided to Dongguk as proof that she received a Ph.D. from Yale.

2

Dongguk also asserts that beginning in July 2007 and throughout September 2007, Yale, through its Office of Public Affairs ("OPA"), in its initial media campaign, made a series of false and defamatory statements when it informed the Korean media that Yale had not verified Shin's degree and that Dongguk had never asked Yale to verify Shin's Ph.D. Dongguk further asserts that Yale compounded its wrongful behavior by failing to correct its false statements even after Dongguk provided Yale it with proof that Yale's statements to the Korean media was false.

Discovery has also revealed that on October 17, 2007, Yale received a subpoena from the United States Department of Justice ("Justice Department Subpoena") (Weiner Affidavit, Exhibit 3). Although Yale had for months publicly denied that it had ever verified Shin's degree and it ignored the proof that Dongguk had provided, on October 18, 2007, Yale was able to establish that it had received a verification request from Dongguk and had, in fact, verified Shin's Ph.D.

Rather than immediately revealing the truth to the Korean media and to Dongguk, Yale waited ten weeks before it notified Dongguk. In addition, pursuant to a carefully planned public relations and media campaign, Yale waited until Saturday evening, December 30, 2007, to issue additional press releases and other media statements.

Based upon their description, virtually all of the challenged Withheld/Redacted Documents bear directly on the issues raised in Dongguk's defamation and reckless disregard claims. The challenged Withheld/Redacted Documents fall generally into three categories:

3

a.    internal communications regarding Yale's intensive media campaign during the summer and early fall 2007;

b.    internal communications regarding the factual investigation made by Yale after receipt of the Justice Department Subpoena; and

c.    internal communications regarding the public relations and media strategy developed by Yale in November and December 2007.

Dongguk believes that none of the challenged Withheld/Redacted Documents relating to these areas are privileged.

As further background, the Court should be aware of the day-to-day responsibilities of Yale's OPA. Among the documents produced by Yale is a document that describes in detail the workings of Yale's OPA. That document states in pertinent part:

### AN OVERVIEW

**The Yale Office of Public Affairs (OPA)** <u>is responsible for all of the University's public communications</u> and the advancement of Yale's major goals and priorities through creative programming and the public dissemination of information. It serves as a link to the media -- domestic and international -- and works to keep opinion leaders abreast of the University's latest developments and initiatives.

OPA is equipped to provide a full range of professional media services to the Yale community. Along with a professional photographer, the office consists of a web communications team, staff who publish the Yale Bulletin & Calendar and ten press officers who cover Arts, Humanities, Science, Engineering, Medicine and International Affairs.

<u>Press officers work with faculty and administrators to respond to media inquiries, prepare press releases, pitch story ideas and track daily media coverage.</u> For more information, please see attached Press Officers' Bios.

(Weiner Affidavit, Exhibit 4 (emphasis supplied).) Thus, there is no doubt that Yale's OPA is primarily responsible for developing public relations' campaigns and strategy.

Moreover, employees in Yale's OPA carry out these strategies and campaigns. As described in a job description posted by Yale on the internet for a position in Yale's OPA, Yale's public relationship officers are expected to:

4

> Respond to inquiries from the news media, student media, the public or members of the University community. Utilize independent research of background information in the development of effective response strategies, and articulate that response via personal interviews or written responses.

(Weiner Affidavit, Exhibit 5.)  Yale's public relations officers are also expected to "[d]evelop and maintain regular contact with media representatives in a manner that enhances the efficacy of media relations." (*Id.*)

Based on the descriptions given to many of the challenged Withheld/Redacted Documents, Dongguk's counsel has reason to believe that the challenged Withheld/Redacted Documents include documents that were created or received by Yale's OPA, in the normal course of its business and that therefore the documents should have been produced.

Similarly, Dongguk's counsel believes that the challenged Withheld/Privileged Documents also include fact investigation documents which are also not privileged. As detailed in the Weiner Affidavit, pursuant to Fed. R. Civ. 37(a)(1) and Local Rule 37(a), Dongguk's counsel has in good faith conferred and attempted to confer with Yale's counsel in an effort to secure these documents without Court action.

## ARGUMENT

## I.   THE APPLICABLE ATTORNEY-CLIENT PRIVILEGE STANDARD

Under Connecticut law, the scope of the attorney-client privilege is: "(1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." *EDO Corp. v. Newark Insur. Co.*, 145 F.R.D. 18, 21 (D. Conn.

1992).[1] *See also Walsh v. Seaboard Surety Co.*, 184 F.R.D. 494, 495-96 (D. Conn. 1999) (same). It is also well established that under "both federal and Connecticut law, "[t]he burden of establishing attorney-client privilege in all its elements, always rests upon the asserting of it." *U.S. v. Schwimmer*, 892, F.2d 237, 242 (2d Cir. 1989).

As stated in *EDO Corp.*, because "the Federal Rules of Civil Procedure favor liberal discovery and …the attorney-client privilege has the effect of barring relevant information, the privilege has been narrowly construed by courts." 145 F.R.D. at 22 (emphasis supplied) (citing *U.S. v. Nixon*, 418 U.S. 683, 710 (1974)). *See also U.S. v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991) (the attorney-client privilege "should be strictly confined within the narrowest possible limits underlying its purpose.").

For the reasons set forth below, Dongguk submits that Yale has used the attorney-client privilege in order to shield communications that are not covered by this "narrow" privilege. Accordingly, Dongguk requests that the Court perform an *in camera* review of the Withheld/Redacted Documents and order production of documents that the Court determines are not covered by the attorney-client privilege.

## II.   BUSINESS ADVICE PROVIDED BY YALE'S IN-HOUSE COUNSEL IS NOT COVERED BY THE ATTORNEY-CLIENT PRIVILEGE

In determining whether a document is privileged, "the central inquiry is whether the communication is one that was made by a client to attorney for the purposes of obtaining legal advice or services," *Astra Aktiebotag v. Anda Pharmaceuticals, Inc.*, 208 F.R.D. 92, 103

---

[1] While "the issue of privilege is governed by the substantive law of the forum state," *First Aviation Services, Inc. v. Gulf Insurance Co.*, 205 F.R.D. 65, 68 (D. Conn. 2001) and thus Connecticut law applies, New York law is substantially similar. *See U.S. Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 159 (E.D.N.Y. 1994)(stating that the attorney client privilege attaches "(1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." ). Thus, cases from the federal district and state courts in New York are also applicable to the Court's analysis.

6

(S.D.N.Y. 2007).  Notwithstanding, Yale has attempted to expand the attorney-client privilege by claiming that communications not providing, requesting, or responding to legal advice are covered by the privilege simply because an in-house attorney authored or received the document.

While it is undeniable that "[i]n-house counsel often serve their corporate employer in mixed business-legal roles," courts have noted that in situations involving in-house counsel, it is even more critical that the attorney-client privilege be "cautiously and narrowly" applied "lest the mere participation of an attorney be used to seal off disclosure." *ABB Kent-Taylor, Inc. v. Stallings and Co., Inc.*, 172 F.R.D. 53, 55 (W.D.N.Y. 1996).

As explained in *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 160 (E.D.N.Y. 1994), "[T]he attorney-client privilege attaches only to legal, as opposed to business, services.  The communication must be made to the attorney acting in her capacity as counsel." Moreover, "where a lawyer responds to a request not made primarily for the purpose of securing legal advice to any part of the document," it is not protected by the privilege.  *U.S. v. International Business Machines Corp.*, 66 F.R.D. 206, 213 (S.D.N.Y. 1974).

Thus, as stated in the *IBM*, "the critical factor in determining whether a [communication] is protected by the attorney-client privilege is whether legal, as opposed to business advice is sought and given." 66 F.R.D. at 210.  As further stated in *U.S. Postal Serv.*, "A corporation cannot be permitted to insulate its files from discovery simply by sending a "cc" to in-house counsel." 852 F. Supp. at 64.  *See also AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052, 2008 WL 4067437, at *9 (S.D.N.Y. Aug. 28, 2008) ("[C]ourts must be wary that the involvement of an attorney is not being used simply to shield corporate communications from disclosure."; ordering production where emails "merely copy" in-house counsel and did not seek legal advice).

NYK 1273461-1.081817.0011

Based upon Yale's descriptions of the challenged Withheld/Redacted Documents, it appears that the in-house attorney was not providing legal advice and therefore the documents are not privileged.  As evidenced by the differences in its own descriptions on its Privilege Logs, Yale itself recognizes the distinction between "legal advice" that is covered by the privilege and non-legal advice that is not covered by the privilege.

Indeed, Yale's Privilege Logs are replete with entries stating that documents are being withheld from production because the documents contained communications "concerning, requesting or responding to legal advice."  With the limited exception discussed in Point III, *infra*, Dongguk is not challenging the privilege assertion for documents "concerning, requesting or responding to legal advice."

For the Court's convenience, Dongguk has identified the following five categories of communications, derived from Yale's own descriptions on its Privilege Logs, whereby Yale's in-house counsel were not acting as legal advisors:

- Strategy Regarding Drafting of Yale's Public Statement;
- Strategy For Communicating with Dongguk University;
- Strategy for Addressing Jeong Ah Shin Issue or Media Attention Regarding Jeong Ah Shin; and
- Strategy for Addressing Dongguk University and Jeong Ah Shin
- Correspondence with Dongguk University.

The Withheld/Redacted Documents described in each of these categories are best categorized as documents involving "public relations" activities and strategy in communicating with Dongguk, the media, and the public.  Therefore, the documents are not protected by the attorney-client privilege.  *See, e.g., Reino de Espana v. American Bureau of Shipping*, 03 Civ. 3573, 2005 WL 3455782 at *3 (S.D.N.Y. Dec. 14, 2005)  (holding notes regarding "public relations strategies" to be non-legal and thus not privileged).

III.   **COMMUNICATIONS CONVEYING FACTUAL INFORMATION
       ARE NOT COVERED BY THE ATTORNEY-CLIENT PRIVILEGE**

Courts have consistently held that "neither the attorney-client nor the work product privilege protects underlying facts." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props*. LLC, No. 01 Civ. 9291 (JSM), 2002 WL 1455346, at *4 (S.D.N.Y. July 3, 2002).  Simply, because "factual data is transmitted through an attorney does not mean that it takes on a confidential character." *United States v. Davis*, 132 F.R.D 12, (S.D.N.Y. 1990)(holding that documents merely discussing factual circumstances and reporting on conclusions were not privileged).

Thus, unless the communication by the attorney to the client or vice versa contains some legal advice regarding those facts, any "factual information" gathered and reported to the client is not protected by the attorney-client privilege. *See Carte Blanche (Singapore) PTE, Ltd. v. Diners Club Int'l, Inc.*, 130 F.R.D. 28, 33 (S.D.N.Y. 1990) (holding documents drafted by attorney merely outlining factual information not protected by attorney-client privilege).

A review of Yale's Privilege Logs reveals that Yale is also seeking to protect as privileged documents in which Yale's in-house counsel played an investigatory role, gathering and communicating facts in connection with Yale's efforts to respond to the Justice Department Subpoena.  For ease of convenience, these documents have been placed in the following categories:

- Fact Gathering in Order to Respond to the Department of Justice's Information Subpoena; and
- Attorney Notes Regarding The Facts.

A review of the Justice Department Subpoena reveals that the subpoena seeks factual information from Yale regarding its knowledge of Shin and Dongguk's efforts to verify Shin's Ph.D. degree.  Yale's in-house attorneys' notes relate to the same factual matter.

9

Based upon Yale's descriptions, it seems obvious that these do not involve the rendering

of legal advice and therefore are not protected by the attorney-client privilege. *See, e.g., ECDC*

*Environmental, L.C. v. New York Marine and General Insurance Co.*, 96 Civ. 6033, 1998 WL

614478, at *10 (S.D.N.Y. June 4, 1998) (requiring production of documents that only conveyed

factual information without legal advice or analysis because they were not privileged); *Spectrum*

*Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d 371, 379 (1991) ("Nor is an [investigative] report

privileged merely because an investigation was conducted by an attorney"); *Kenford Co. v.*

*County of Erie*, 55 A.D.2d 466, 471 (N.Y. App. 4th Dep't 1977) ("In this respect, the attorney

serves as a fact-gathering agent for the client.").

## IV.   COMMUNICATIONS WITH NO ATTORNEY INVOLVED CANNOT BE AUTOMATICALLY PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

On several occasions, without further explanation, Yale has even claimed the attorney-

client privilege for communications where no attorney was a participant. *See, e.g.*, Yale

Privilege Log entry nos.  157, 166 and Yale Redacted Documents Log bates nos.

YALE00007061, YALE00007066.  These communications have been placed in the category

entitled "Non-Attorney Communications "Conveying" Legal Advice.

It is well settled that where "neither party to the communication is an attorney nor does

the content of the documents reflect legal advice from an attorney," the attorney-client privilege

does not apply. *AIU Ins. Co.*, 2008 WL 4067437, at *10; *see also Cuno, Inc. v. Pall Corp.*, 121

F.R.D. 198, 203 (E.D.N.Y. 1988) (finding communications between non-attorneys to that were

not "made primarily for the purpose of obtaining legal advice" were not covered by the

privilege).  Here, Yale has simply not provided sufficient information in its descriptions to

determine whether the information shared with non-attorneys was legal in nature.  Thus, these

emails must be reviewed to determine whether the communications legitimately provided legal advice to other Yale non-attorneys.

## **CONCLUSION**

For the foregoing reasons, Dongguk respectfully requests that this Court:

(i)  order an *in camera* review of those documents on Yale's privilege and redacted logs challenged by Dongguk; and

(ii)  order documents that are not covered by the attorney-client or work product privileges be produced.

Dated:        New York, New York
              January 19, 2010

                                        McDERMOTT WILL & EMERY LLP

                                        By: *Robert A. Weiner*
                                            Robert A. Weiner
                                            Audrey Lu
                                        340 Madison Avenue
                                        New York, New York 10173-1922
                                        (212) 547-5400
                                        *Attorneys for Plaintiff Dongguk University*

Of Counsel:
Ira Grudberg
Jacobs, Grudberg, Belt, Dow & Katz, P.C.
350 Orange Street
New Haven, Connecticut 06511
(203) 951-3720