UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DONGGUK UNIVERSITY,                    :   No. 3:08-CV-00441 (RNC)
                                       :
       Plaintiff,                      :
                                       :
v.                                     :
                                       :
YALE UNIVERSITY,                       :
                                       :
       Defendant.                      :   FEBRUARY 9, 2010
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN OPPOSITION TO DONGGUK UNIVERSITY'S MOTION TO COMPEL

Defendant Yale University ("Yale") respectfully submits this memorandum of law in opposition to Plaintiff Dongguk University's ("Dongguk") motion to compel the production of documents that Yale has withheld or redacted as privileged.

## I.    PRELIMINARY STATEMENT

Dongguk's motion is misguided. Yale has produced thousands of documents in this case, including many documents matching each of the categories that Dongguk describes as the subjects of its motion. In particular, contrary to the thrust of Dongguk's motion, Yale has produced many documents reflecting communications between Yale employees and Yale's in-house counsel. Yale has also produced detailed privilege logs and further elaborated to Dongguk's counsel, in correspondence and in telephone conferences, on its reasons for withholding or redacting the particular documents that are the subjects of Dongguk's motion. Consistent with the standard for adjudicating claims of privilege, each document that Yale has withheld or redacted reflects a confidential communication that was made for the purpose of

obtaining or providing legal assistance. Therefore, Dongguk's motion should be denied in its entirety.

## II.     BACKGROUND

Yale disputes many of the statements and characterizations under the heading "Background Facts" in Dongguk's memorandum, for which Dongguk provides no evidentiary support. (See Pl. Mem. at 2-5.) Nevertheless, because the background facts are generally irrelevant to the instant motion, Yale will not belabor the point.

## III.    ARGUMENT

### A.     Legal Standard

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." Matthews v. Lynch, No. 3:07CV739, 2009 U.S. Dist. LEXIS 68591, at *5 (D. Conn. Aug. 6, 2009). "The privilege applies to communications between officials or employees of a corporate entity, provided the following conditions are met: (1) the attorney must be acting in a professional capacity for the agency, (2) the communications must relate to the legal advice sought by the agency from the attorney, and (3) the communications must be made in confidence." Uniroyal Chem. Co. v. Syngenta Crop Protection, 224 F.R.D. 53, 55 (D. Conn. 2004) (citation and internal quotation marks omitted).

All of the documents at issue in Dongguk's motion reflect attorney-client communications "for the purpose of obtaining legal advice or services." See Astra Aktiebolag v. Andrx Pharms., Inc., 208 F.R.D. 92, 103 (S.D.N.Y. 2002). Dongguk acknowledges that this is the proper standard. (See Pl. Mem. at 6.) Each of Dongguk's arguments is based on a faulty assumption about the documents at issue, the applicable legal standard, or both.

### B. Communications Between Yale's Office of Public Affairs and Yale's Attorneys Are Privileged.

Dongguk inexplicably suggests that documents created or received by the staff of Yale's Office of Public Affairs ("OPA") cannot be privileged and therefore "should have been produced." (Pl. Mem. at 5; Jan. 19, 2010 Aff. of Robert A. Weiner ("Weiner Aff.") ¶ 11.) Dongguk is incorrect. The staff of OPA, like the staff of any other Yale office, may communicate with Yale's attorneys for the purpose of obtaining legal advice or services. The only authority that Dongguk cites in connection with its argument is one District Court opinion finding a non-attorney's notes regarding public relations strategies to be not privileged. (See Pl. Mem. at 8.) Yale has not withheld any such notes (see Weiner Aff. Ex. 12), nor has it withheld or redacted documents reflecting non-privileged communications with OPA. (See, e.g., YALE00000073, YALE00000496, YALE00000517, YALE00000527, YALE00000612, YALE00007035 (collectively attached as Ex. A).) Instead, all documents that Yale has withheld or redacted concerning the work of OPA – unlike the many such documents that Yale has produced – reflect attorney-client communications made for the purpose of obtaining or providing legal advice or services.

### C. Yale Has Not Withheld Documents Simply Because Attorneys Authored or Received Them.

Dongguk's contention that Yale has withheld documents "simply because an in-house attorney authored or received the document" (Pl. Mem. at 7) is incorrect. Moreover, Dongguk *knows* that this argument is incorrect because Yale has produced many documents reflecting communications between Yale employees and Yale's in-house counsel – that is, many documents "authored or received" by Yale attorneys. (See, e.g., YALE00001033, YALE00006882-83, YALE00006936-40, YALE00006941, YALE00006942, YALE00006966-

69, YALE00006970-71, YALE00007036, YALE00007398-7400, YALE00007509, YALE00007641-46, YALE00007684-85 (collectively attached as Ex. B).)  Indeed, Yale's counsel reminded Dongguk's counsel of this precise point before Dongguk filed its motion.  (See letter from Fetner to Weiner of 10/29/09 (Weiner Aff. Ex. 7) at 1-2 ("We are obviously well aware that not every communication involving an in-house attorney is privileged, and we have not asserted privilege merely because an attorney was involved in a communication – as is apparent from even a cursory review of Yale's production, we have produced many documents reflecting communications with in-house counsel.").)

### D. Yale Has Not Withheld Documents Involving Attorneys' Non-Legal Capacity.

Dongguk makes much of the dual business and legal roles sometimes served by in-house counsel (Pl. Mem. at 7), but all of the documents that Yale has withheld or redacted involved counsel's service in a legal capacity.  Where in-house counsel served in any other capacity, Yale produced the documents reflecting their communications.  (See, e.g., YALE00000711-14, YALE00006962-65, YALE00006966-69, YALE00006972, YALE00007305, YALE00007366-67 (collectively attached as Ex. C).)

### E. Yale Has Not Withheld Documents Concerning Fact Investigations.

Dongguk's contention that Yale has withheld non-privileged "fact investigation documents" (Pl. Mem. at 5) is incorrect.  Yale has produced such documents, even where those documents reflected communications between Yale employees and Yale attorneys.  (See, e.g., YALE00006882-83, YALE00006954-56, YALE00006957-59, YALE00006960-61, YALE00006972, YALE00006976-77, YALE00007439-42, YALE00007446-48 (collectively attached as Ex. D).)

### F. Yale Has Not Withheld Documents Reflecting Communications That Were Merely "cc'd" to Counsel.

Dongguk's suggestion that Yale has claimed privilege with respect to documents reflecting communications that "simply [] sen[t] a 'cc' to in-house counsel" (Pl. Mem. at 7) is incorrect. Yale has not withheld or redacted such documents. Indeed, Dongguk must know this because Yale has produced many documents reflecting Yale employees' communications that "cc'd" in-house counsel. (See, e.g., YALE00000354-57, YALE00000833-34, YALE00001141, YALE00006896, YALE00006943-46, YALE00007271, YALE00007303-04, YALE00007309-10, YALE00007311, YALE00008001 (collectively attached as Ex. E).)

### G. Communications Need Not Explicitly Request Legal Advice in Order to Be Protected by the Attorney-Client Privilege.

Dongguk's suggestion that any document not described on Yale's privilege logs as explicitly "seeking legal advice" cannot be privileged (Pl. Mem. at 8) is incorrect. As Dongguk acknowledges, "the central inquiry" in determining whether a communication is privileged is whether the communication was made "for the purposes [sic] of obtaining legal advice or services." (Pl. Mem. at 6.) Obviously, a communication need not explicitly request legal advice in order for the communication to be made for the purpose of obtaining legal advice or services. See, e.g., In re: Buspirone Antitrust Litig., No. 1413, 2002 U.S. Dist. LEXIS 23463, at *12 (S.D.N.Y. Dec. 10, 2002) ("While the documents do not explicitly solicit legal advice from the attorneys, they qualify as privileged because they consist of information sent to corporate counsel in order to keep them apprised of ongoing business developments, with the expectation that the attorney will respond in the event that the matter raises important legal issues. Such a request is privileged to the same extent as an explicit request.") (citations and quotation marks omitted).

### H. Attorney-Client Communications for the Purpose of Obtaining or Providing Legal Advice or Services Concerning Public Statements or Correspondence Are Privileged.

Dongguk's blanket assertion that communications concerning various subjects cannot be privileged (Pl. Mem. at 8) is incorrect. Dongguk has not explained, because it cannot explain, why public statements, inter-university correspondence, or, indeed, any subject at all is somehow incapable of being the subject of a privileged communication. Yale employees may seek legal advice or services on any number of topics, including public statements and correspondence. (See Pl. Mem. at 8.) Indeed, Dongguk surely knows that those topics can require legal advice or services, since it has claimed that Yale's public statements and correspondence gave rise to its legal claims. (See, e.g., Compl. ¶¶ 151-55.) Dongguk also knows that Yale has not withheld documents merely because they concern public statements or correspondence with Dongguk, because Yale has produced many such documents. (See, e.g., YALE00000528, YALE00000530-31, YALE00000559, YALE00007035, YALE00007633-34, YALE00007746, YALE00007759-61, YALE00008545 (collectively attached as Ex. F).)

### I. Attorney-Client Communications for the Purpose of Responding to a Subpoena Are Privileged.

Dongguk's arguments regarding communications supposedly "conveying factual information" (Pl. Mem. at 9-10) are incorrect. Where documents reflect attorney-client communications merely conveying factual information for any purpose other than the provision of legal advice or services, Yale produced those documents. (See, e.g., YALE00000017-18, YALE00000838-39, YALE00006941, YALE00006962-65, YALE00006976-77, YALE00006978-81, YALE00006998-99, YALE00007000-02, YALE00007341-47, YALE00007406, YALE00007409-10, YALE00007709-11 (collectively attached as Ex. G).) Dongguk's suggestion that an attorney's efforts to respond to a subpoena from the United States

Attorney's Office do not constitute legal services is incorrect, notwithstanding Dongguk's arbitrary decision to label documents reflecting those efforts "fact gathering."  (See Pl. Mem. at 9.)  Responding to a subpoena is a quintessential legal service, and, as Dongguk acknowledges, communications made for the purpose of obtaining or providing legal services are privileged.  (Pl. Mem. at 6.)

Similarly, Dongguk's arbitrary decision to label an attorney's draft memorandum, containing the attorney's mental impressions, for the purpose of communicating with her client, "attorney notes regarding the facts" (Pl. Mem. at 9) is of no significance to determining whether the attorney-client privilege applies.  A document that (a) reflects attorney-client communications and the attorney's mental impressions and (b) was created for the purpose of providing legal advice and services in connection with still more attorney-client communications, is privileged.  "The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client."  ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins. Co., No. 96 Civ. 6033, 1998 U.S. Dist. LEXIS 8808, at *26 (S.D.N.Y. June 4, 1998) (citation and quotation marks omitted).

Dongguk's reliance on the Spectrum and Kenford cases in connection with this point is misplaced.  (See Pl. Mem. at 10.)  Spectrum held, as Dongguk acknowledges, that an investigative report is not privileged merely because the investigation was conducted by an attorney.  Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 379 (1991); (Pl. Mem. at 10.)  Unlike the party in Spectrum, however, Yale has not withheld or redacted any investigative report, nor has it withheld or redacted any document merely because an attorney was involved, as the many exhibits to this memorandum make clear.  Similarly, Kenford held that a deposition

-7-

witness may not refuse to answer questions on the ground that he received the responsive information from his attorney.  Kenford Co. v. County of Erie, 55 A.D.2d 466, 471 (N.Y. App. Div. 1977).  Yale, however, has withheld no such information, nor does Dongguk's motion concern the withholding of any information at all.  Rather, Dongguk's motion concerns only documents, which reflect attorney-client communications for the purpose of obtaining legal advice or services.

### J. Communications Conveying an Attorney's Legal Advice From One Yale Employee to Another Are Privileged.

Dongguk's suggestion that communications to which no attorney is a party cannot be privileged (Pl. Mem. at 10-11) is incorrect.  A communication conveying an attorney's legal advice from one non-attorney employee of the client organization to another is privileged.  See, e.g., Nat'l Educ. Training Group, Inc. v. SkillSoft Corp., No. M8-85, 1999 U.S. Dist. LEXIS 8680, at *9-10 (S.D.N.Y. June 10, 1999) ("Courts have also recognized that intra-corporate distribution of legal advice received from counsel does not necessarily vitiate the privilege, even though the legal advice is relayed indirectly from counsel through corporate personnel.").  "This follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege."  Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 442 (S.D.N.Y. 1995).  Dongguk's further contention that Yale has withheld documents reflecting such communications "without further explanation" (Pl. Mem. at 10) is untrue.  Yale's privilege logs explained that the communications reflected in these documents conveyed either legal advice or requests for legal advice concerning various subjects (see Weiner Aff. Ex. 12 at 19-20), and Yale's counsel further explained to Dongguk's counsel, with supporting legal authority, that "the communications conveyed information that was

-8-

independently privileged, and the privilege was not vitiated by communicating the information between Yale employees." (See letter from Fetner to Weiner of 10/29/09 (Weiner Aff. Ex. 7) at 3-4.)

In any event, Dongguk acknowledges – apparently without realizing that it has done so – that an attorney need not be a party to a communication in order for the communication to be privileged. Dongguk states that the attorney-client privilege does not apply where "neither party to the communication is an attorney *nor does the content of the documents reflect legal advice from an attorney*." (Pl. Mem. at 10.) Of course, as Dongguk implies, where the content of the documents *does* reflect legal advice from an attorney, the document is privileged, even if no attorney was party to the ultimate communication, as is the case with the documents at issue here. Dongguk's further assertion that Yale has "not provided sufficient information" to determine whether the non-attorney communications were "legal in nature" (Pl. Mem. at 10) is incorrect. Dongguk acknowledges that Yale described these documents as "conveying legal advice" concerning various subjects. (See Weiner Aff. Ex. 12 at 19-20.) As Yale's counsel explained to Dongguk's counsel, Yale could not provide any more information without divulging information that is itself privileged. (See letter from Fetner to Weiner of 10/29/09 (Weiner Aff. Ex. 7) at 1.) See, e.g., SEC v. Beacon Hill Asset Mgmt. LLC, 231 F.R.D. 134, 144-45 (S.D.N.Y. 2004) (privilege log describing documents only as correspondence or e-mails seeking, transmitting, or reflecting legal advice held to be sufficient, "[a]lthough the subject matter of the legal advice is not disclosed"; "To require BH to disclose additional information would come perilously close to requiring disclosure of the substance of the privileged communication.").

## IV.   CONCLUSION

For the foregoing reasons, Yale respectfully requests that the Court: (a) not order an *in camera* review of any documents that Yale has withheld or redacted as privileged; and (b) not order Yale to produce to Dongguk any documents that it has withheld or redacted as privileged.[1]

DEFENDANT YALE UNIVERSITY

By:   /s/ Howard Fetner
Felix J. Springer (#ct05700)
Howard Fetner (#ct26870)
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103
(860) 275-0100 (phone)
(860) 275-0343 (fax)
fjspringer@daypitney.com
hfetner@daypitney.com

Its attorneys

---

[1] Contrary to the statement in Attorney Weiner's affidavit, Yale's counsel has not agreed to submit the challenged documents to the Court for an *in camera* review. (See Weiner Aff. ¶ 13.) Indeed, Dongguk implicitly acknowledges as much when it asks the Court to "***order*** an *in camera* review" of the documents at issue. (Pl. Mem. at 11 (emphasis added).) Regardless, no *in camera* review is warranted because Dongguk's motion is self-evidently meritless.

## **CERTIFICATION**

   I hereby certify that on February 9, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


                        /s/ Howard Fetner