UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------- x
DONGGUK UNIVERSITY,                   :  No. 3:08-CV-00441 (TLM)
                                      :
         Plaintiff,                   :
                                      :
    v.                                :
                                      :
YALE UNIVERSITY,                      :
                                      :
         Defendant.                   :  APRIL 30, 2010
------------------------------------- x
```

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF DONGGUK UNIVERSITY'S MOTION TO STRIKE "CONFIDENTIAL" DESIGNATIONS

Defendant Yale University ("Yale") respectfully submits this memorandum of law in opposition to Plaintiff Dongguk University's ("Dongguk") motion to strike Yale's designations of the depositions of Pamela Schirmeister, Susan Carney, and Gila Reinstein as "Confidential."

### I. PRELIMINARY STATEMENT

While Dongguk's motion to strike relies on the narrowest possible interpretation of the Protective Order with respect to Yale's discovery material, throughout this litigation Dongguk has relied on the broadest possible interpretation of the Protective Order with respect to its own discovery material. Dongguk has invoked the Protective Order with respect to nearly every document it has produced in discovery in this case. Therefore, it is both ironic and disingenuous for Dongguk to suggest that Yale's designation of the Schirmeister, Carney, and Reinstein depositions as "Confidential" somehow represents an overly broad interpretation of the Protective Order. Indeed, Dongguk has consistently acknowledged that, with respect to its own discovery material, the Protective Order applies to many of the very same documents and subject

matters that it now claims are beyond its scope. For this reason alone, Dongguk's motion should be denied.

In addition to being disingenuous, Dongguk's motion is also based on a fundamental misunderstanding of the purpose of pretrial discovery. Dongguk apparently assumes that the purpose of pretrial discovery is to educate the media and the public, and that both groups have some special interest in private litigants' discovery material. To the contrary, the purpose of pretrial discovery is to enable the parties – and only the parties – to prepare for trial. Moreover, not only is there no presumption of public access to the depositions at issue in Dongguk's motion, but there is actually a presumption *against* public access in the circumstances in which those depositions occurred. For this reason as well, Dongguk's motion should be denied.

## II.  BACKGROUND

Throughout this litigation, Dongguk has adopted the broadest possible interpretation of the Protective Order with respect to its own discovery material. Dongguk has produced 381,340 pages of documents in this litigation, and it has designated 379,186 (99.4%) of them "Confidential" under the Protective Order. (April 30, 2010 Aff. of Howard Fetner (attached as Ex. 1) ¶ 3.) Dongguk's interpretation of the Protective Order with respect to its own discovery material is so broad that Dongguk has designated "Confidential" many documents that are far less sensitive than the material discussed in the Schirmeister, Carney, and Reinstein depositions. (See, e.g.,

.)

Based on the Protective Order and on Dongguk's consistently broad interpretation of it, Yale designated the entirety of the Schirmeister, Carney, and Reinstein depositions "Confidential." (Letter from Springer to Weiner of 1/7/10 (attached as Ex. 35).) When Dongguk objected, Yale explained that its understanding that the Protective Order applied to the Schirmeister, Carney, and Reinstein depositions was based in part on Dongguk's own extremely broad interpretation of the Protective Order. (Letter from Springer to Weiner of 1/12/10 (attached as Ex. 36); letter from Springer to Weiner of 1/22/10 (attached as Ex. 37).) Based on the Protective Order and on Dongguk's broad interpretation of it, Yale permitted the depositions to proceed. (Letter from Springer to Weiner of 1/22/10 (Ex. 37) ("If you persist in your disregard of the protective order and of our 'Confidential' designation, we will not go forward with the three scheduled depositions.").)

## III. ARGUMENT

Because Yale proceeded with the three depositions in reliance upon an existing Protective Order, which Dongguk has consistently interpreted extremely broadly, there is a strong presumption against modifying the Protective Order or the parties' broad interpretation of it in

order to permit Dongguk to disseminate video recordings and transcripts of the Yale depositions to the media, as it apparently intends to do. See Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 296 (2d Cir. 1979). Dongguk cannot overcome the Martindell presumption.

Apart from the Martindell presumption, it is abundantly clear that, contrary to Dongguk's contention, there is *no* presumption in favor of public access to the three depositions at issue. (See Dongguk Mem. (Dkt. # 133-1) at 5.) A presumption of public access arises only in the case of "judicial documents." See United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"). "Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach and stand[] on a different footing than . . . any other document which is presented to the court to invoke its powers or affect its decisions." United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Amodeo II") (citations and internal quotation marks omitted); Amodeo I, 44 F.3d at 145 (a document "must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document"). The Second Circuit has specifically held that "deposition discovery material" does not constitute judicial documents. SEC v. TheStreet.com, 273 F.3d 222, 233 (2d Cir. 2001). Presenting private discovery material to the Court in order to strike a "Confidential" designation, as Dongguk has done here, does not convert that material into a "judicial document" for purposes of the presumption of public access. Id. (noting that a contrary rule "would transform every document that a court reviews into a 'judicial document' presumptively open to the public, despite well-settled law to the contrary").

Dongguk's reliance on the Agent Orange case as the basis for a presumption of public access to private discovery material is misplaced. (See Dongguk Mem. at 5-6.) See In re "Agent

Orange" Prod. Liab. Litig., 821 F.2d 139 (2d Cir. 1987) ("Agent Orange"). The Second Circuit has clarified that "[a]t least one District Court in our Circuit," like Dongguk, "has incorrectly concluded that Agent Orange established a new rule that created a presumption that discovery materials should be publicly available whenever possible, i.e., absent a showing of good cause for shielding them from view." TheStreet.com, 273 F.3d at 231 n.9 (citation and internal quotation marks omitted). The Second Circuit has rejected the contention – echoed by Dongguk here – that "the Agent Orange line of cases carves out an additional presumption in favor of access to all discovery materials." TheStreet.com, 273 F.3d at 233 n.11. The court explained that, whereas Agent Orange had "relied upon Federal Rule of Civil Procedure 5(d) to find a statutory right of access to discovery materials, we observe that the recent amendment to this rule provides no presumption of filing all discovery materials, let alone public access to them. Indeed, the rule now prohibits the filing of certain discovery materials unless they are used in the proceeding or the court orders filing." TheStreet.com, 273 F.3d at 233 n.11 (citing Fed. R. Civ. P. 5(d)). The District of Connecticut's local rules state even more clearly that deposition transcripts and exhibits are not presumptively available to the public, even when filed with the Court. See D. Conn. L. Civ. R. 30(b) ("If filed with the Clerk, transcripts of all pre-trial depositions in the case and any exhibits marked upon the taking of any deposition shall be withheld from public inspection by the Clerk, but shall be available to any party for any proper use in the case.").

More generally, the idea behind Dongguk's motion – that private discovery material somehow exists for the benefit of the public at large – is incorrect. The purpose of pretrial discovery is to enable the parties to prepare for trial. See, e.g., In re PE Corp. Sec. Litig., 221 F.R.D. 20, 23 (D. Conn. 2003). "Discovery involves the use of compulsory process to facilitate

orderly preparation for trial, not to educate or titillate the public." Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982). Any "media interest" in the parties' private discovery material is irrelevant. (Dongguk Mem. at 3.)

The Schirmeister, Carney, and Reinstein depositions are well within the scope of the Protective Order, particularly as Dongguk has interpreted and applied it throughout this litigation. All three depositions discussed sensitive matters that Yale does not disclose to the public. These include the assignment of work to, and the policies, practices, and inner workings of, Yale's Office of General Counsel, Police Department, Graduate School of Arts and Sciences, and Office of Public Affairs. The three depositions discussed, at length, the work of these offices, both generally and in the particular context of the facts of this case. Dongguk's strawman argument that "embarrassment and negative publicity" are not grounds for protecting the confidentiality of discovery material (see Dongguk Mem. at 4) is irrelevant, since those are not Yale's concerns.

As discussed above, Dongguk's own "Confidential" designations demonstrate the applicability of the Protective Order to the Schirmeister, Carney, and Reinstein depositions.

In addition to the depositions' extensive discussions of those particular documents, they also discussed, at even greater length, the topics embodied by those documents. Having designated those documents "Confidential" and required that Yale treat them as such when it suited Dongguk's own interests, Dongguk cannot now make a contrary claim simply because its interests have shifted.

-7-

In its zeal to distribute the Yale witnesses' depositions to the media, Dongguk fundamentally contradicts itself. Dongguk suggests that the depositions of Schirmeister, Carney, and Reinstein could not have discussed confidential matters because the witnesses "barely even provided 'general commentary'" and testified that they did not know certain facts. (Dongguk Mem. at 8-9.) At the same time, though, Dongguk argues that there is some "special public interest" in the three depositions, and that media coverage of the depositions would cause Yale "embarrassment and negative publicity." (Dongguk Mem. at 4-6.) Of course, if the depositions truly discussed nothing of substance, the public could have no interest in them whatsoever, and Dongguk would not be so eager to distribute them to the media. Regardless, Dongguk's frequent press releases, press conferences, and leaks to the media do not constitute any "special public interest" in this litigation, which involves two private institutions. Regardless of Dongguk's efforts to stoke media attention, the instant case is obviously a far cry from the Agent Orange class action, which involved "enormous public interest . . . and the compelling need for class members and non-class members alike to evaluate fully the efficacy of settling this litigation." Agent Orange, 821 F.2d at 148.

By threatening to disclose the three Yale depositions to the media, even while acknowledging that it does not believe the depositions discussed anything of substance, Dongguk exemplifies the precise conduct that protective orders are designed to prevent. "Protective orders are useful to prevent discovery from being used as a club by threatening disclosure of matters which will never be used at trial." Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982). From the outset, Dongguk and its attorneys have used not only discovery, but this entire lawsuit, as a springboard for pursuing Dongguk's case in the media: their initial Complaint essentially served

as a press release, as Judge Chatigny noted[1]; their proposed Amended Complaint served the same function, and no apparent role in the context of the litigation itself[2]; they even used a settlement conference as an excuse to broadcast Yale's confidential settlement position to the media[3]; now, Dongguk clearly intends to do the same with the videos and transcripts of the Schirmeister, Carney, and Reinstein depositions (see Dongguk Mem. at 2, 6). Indeed, just as Dongguk had no other apparent reason to seek to amend its Complaint, it also had no other reason to object to Yale's designation of the three depositions as "Confidential."

Of course, even as Dongguk broadcasts to the media at every possible opportunity, it continues to designate all of its own discovery material "Confidential." Dongguk seeks to impose a drastic double standard, with one extremely broad definition of "Confidential" for its own discovery material, and another, extremely narrow definition of "Confidential" for Yale's discovery material. Dongguk's motive is clear: disclose Yale's private discovery material to the media, while preventing Yale from doing the same with Dongguk's discovery material. Regardless, unlike Dongguk, Yale prefers to try this case in Court, not in the media.[4]

---

[1] (See                              ; Tr. of 1/30/09 Motions Hearing (Dkt. # 66) at 41 ("[T]o my eye, [the Complaint] reads like a press release that one would issue to the Korean press to explain the whole saga from the Plaintiff's point of view. It's not a notice pleading for purposes of litigation.").)

[2] When Yale pointed this out in its memorandum of law in opposition to Dongguk's motion for leave to amend the Complaint, Dongguk protested that the news articles attached to Yale's memorandum did not even mention the proposed Amended Complaint. (Reply Mem. of Law in Supp. of Dongguk University's Mot. for Leave to Amend the Compl. (Dkt. # 102) at 7-8.) Now, however, Dongguk acknowledges just what Yale said, that those very news articles, as well as "virtually every major Korean newspaper," did in fact report on Dongguk's proposed Amended Complaint. (Dongguk Mem. at 3 & Ex. 2.)

[3] (Letter from Springer to Weiner of 9/19/08 (attached as Ex. 38).)

[4] Also unlike Dongguk, Yale does not believe that the instant motion is the place to argue the merits of the case. (See, e.g., Dongguk Mem. at 3.) Nevertheless, Yale feels compelled to

-9-

## IV. CONCLUSION

For the foregoing reasons, Yale respectfully requests that the Court deny Dongguk's motion to strike Yale's designations of the depositions of Pamela Schirmeister, Susan Carney, and Gila Reinstein as "Confidential."[5]

DEFENDANT YALE UNIVERSITY

By:    /s/ Howard Fetner
      Felix J. Springer (#ct05700)
      Howard Fetner (#ct26870)
      Day Pitney LLP
      242 Trumbull Street
      Hartford, CT 06103
      (860) 275-0100 (phone)
      (860) 275-0343 (fax)
      fjspringer@daypitney.com
      hfetner@daypitney.com

Its attorneys

---

point out that Dongguk's gratuitous contentions concerning the merits are completely wrong. More than two years after filing its Complaint, Dongguk still has no evidence that it suffered the damages alleged in the Complaint, that Yale caused it any harm, or that Yale behaved negligently or recklessly or defamed Dongguk.

[5] If the Court believes that it is necessary to amend the Protective Order in order to give effect to the interpretation of that Order that both parties have been operating under, Yale respectfully requests that the Court so amend the Protective Order, which expressly contemplates the possibility of amendment. (See Protective Order (Dkt. # 87) ¶ 12.)

## CERTIFICATION

I hereby certify that on April 30, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                        /s/ Howard Fetner