# EXHIBIT S

# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  Houston  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Robert A. Weiner
Attorney at Law
rweiner@mwe.com
+1 212 547 5408

March 16, 2010

**VIA E-MAIL AND FIRST CLASS MAIL**

Felix J. Springer, Esq.
Day Pitney LLP
242 Trumbull Street
Hartford, Connecticut  06103

Re:    Dongguk University v. Yale University, Case No. 3:08-CV-0441 (RNC)

Dear Felix:

In your February 25, 2010 letter ("February 25 letter"),[1] you state that you have "serious questions about Dongguk's compliance with the most basic discovery requirements" because "Dongguk has produced virtually no email or other documents or electronically stored information ("ESI") reflecting communications among Dongguk personnel concerning Jeong Ah Shin or Yale University." The lack of ESI should not be a surprise because email is not nearly as popular or common a form of communication in Korea as it is in the United States. For example, there is no Blackberry service in Korea.

Nonetheless, you have raised a number of questions regarding the adequacy of the scope of our review and collection procedures. In this regard, I note that you are requesting precisely the same type of information regarding the preservation, collection, and review of hard copy documents, emails, and ESI that we have requested from Yale on several occasions and that Yale has refused to provide to date. Unlike Yale, we will provide you with the information that you are seeking.

As discussed below, Dongguk has more than complied with its "basic discovery requirements." Dongguk, in consultation with its counsel, developed a comprehensive preservation, collection, and review protocol that has resulted in a far more complete document production than Yale's, by far.

## Dongguk's General Document and Email Retention Policies

Dongguk does not have a general document retention policy. Dongguk maintains a university-wide shared database on which individuals can store their electronic documents. The

---

[1] The remaining specific issues raised in your February 25 letter will be discussed under separate cover.

Felix J. Springer, Esq.
March 16, 2010
Page 2

documents are stored on the shared database indefinitely. Once a document is stored on the shared database it cannot be deleted by the individual who created or otherwise saved the document.

Dongguk also does not have a general email retention policy. Dongguk maintains its own internal email servers. Emails are not automatically deleted from the servers. An email can only be completely deleted from Dongguk's email server if the sender and all recipients of the email manually delete their copy of the email from the server. We have seen no evidence that any potentially responsive emails have been deleted.

### Preservation of Documents Relevant to This Litigation

As counsel for Dongguk, McDermott Will & Emery LLP ("McDermott") has made three separate written requests concerning document preservation and has had numerous follow-up conversations with Dongguk officials and Dongguk's IT personnel during the course of this litigation. In all of these communications, McDermott emphasized to Dongguk the importance of preserving any and all paper and electronic data in its possession, custody or control that might be potentially relevant to this litigation.

On January 23, 2008, prior to the commencement of this litigation, in an abundance of caution, I sent a broadly worded litigation hold notice to Dongguk's officials advising them to preserve all hard copy documents and ESI potentially relevant to this litigation. The January 23, 2008 letter is attached hereto as Exhibit A. Within the week, Dongguk's officials informed us that they had notified potential custodians and Dongguk's IT staff of the general litigation hold.

Between the end of January and through March 2008, McDermott had several follow-up conversations with Dongguk officials and its IT personnel to assure that all relevant documents were, in fact, being preserved. During this time, to ensure that all relevant emails were preserved, Dongguk's IT personnel created an archive of all potential custodians' emails that were sent or received between January 2005 through March 2008, regardless of the emails' subject matter. The archive was created by taking an image of all emails contained in each custodian's email account that was sent or received between January 2005 and March 2008.

On March 13, 2008, I sent a second more specifically written litigation hold notice to Dongguk officials, reiterating the obligation to preserve potentially relevant information. The March 14, 2008 letter is attached hereto as Exhibit B. Notably, because of the broader litigation hold notice sent in January 2008 and because, as discussed above, Dongguk does not have a general email or document retention policy that automatically deletes ESI, there was no threat that relevant ESI had been destroyed between January and March 2008.

The March 13 notice included a list of twenty-five individuals and Dongguk departments that McDermott had specifically identified as having information potentially relevant to the litigation, along with a data retention and preservation notice with specific instructions to the custodians. Dongguk officials circulated the data retention and preservation notice to all identified custodians and departments.

Felix J. Springer, Esq.
March 16, 2010
Page 3

After receiving your April 1, 2008 letter regarding document preservation, on April 3, 2008, I sent Dongguk's officials another document preservation request, specifically requesting that Dongguk preserve all the documents that you had requested in "Schedule A" to its letter. The April 3, 2008 letter is attached hereto as Exhibit C. McDermott also confirmed with Dongguk officials that all such documents and ESI, to the extent they existed, were being preserved.

In short, Dongguk fully complied with its document preservations obligations.

### Consent From Custodians

As we have previously advised you, Korean law precludes Dongguk from accessing an individual's ESI (including emails) without his or her consent.

After Dongguk received Yale's Document Requests in early March 2009, Dongguk, in consultation with McDermott, went through each request to determine what individuals and/or departments at Dongguk, in addition to those previously identified, if any, would have information potentially relevant to each request. In my September 21, 2009 letter ("September 21 letter") that I sent to you, I attached the complete list of all potential custodians identified. The only changes to the March 2008 custodian list were (i) the addition of the names of individuals identified as having information regarding Dongguk's donations, grants, and student applications, rather than just the general departments, and (ii) the removal of any individuals that Dongguk determined it had no control over or who did not have potentially relevant information.

Because of the Korean privacy laws, Dongguk could access the ESI of only those custodians who provided written consent. Dongguk, in consultation with McDermott and Lee & Ko, Dongguk's outside Korean counsel, drafted an extensive and detailed consent form. Specially, the consent form explained Dongguk's discovery obligations under U.S. laws, the custodian's rights under Korean privacy laws, and what would occur with regard to the custodian's ESI should the custodian provided consent to Dongguk and its attorney. A copy of the consent form is attached hereto as Exhibit D.

The September 21 letter identifies the 37 individuals from whom Dongguk sought consent. Of the 37 custodians, 35 custodians provided consent for Dongguk to access their ESI. Only two individuals, Won Sang Cho and No Sung Kwak, did not provide their consent. However, Mr. Cho (a retired administrative staff employee) and Mr. Kwak (a former manager in the donations department) informed McDermott that they do not have any documents or ESI responsive to Yale's requests.

### Custodians

Dongguk searched and collected potentially relevant hard copy documents and ESI from the following individuals, which includes all of the individuals that were identified on the list in your February 25 letter:

Felix J. Springer, Esq.
March 16, 2010
Page 4

- Hyung Taik Ahn
- Minwoo Byun
- Euiyon Cho
- Soon Sik Cho
- Moon Gyu Choi
- Woo Thak Chung
- Ye Kyung Chung
- Jin Soo Han
- Ki Sam Hong
- Sung Jo Hong
- Jong Yeong Hwang
- Jo Kyung Im

- Yong Taik Im[2]
- Byoung Geon Jeon
- Hyeok Jin Jin
- Dong Hyun Jung
- Hyung Seok Kang
- Bong Hyun Kim
- Byung Ho Kim
- Hae Dukk Kim
- Hyung Bae Kim
- Jiwoo Kim
- Juntae Kim
- Kyung Hee Kim

- Sang Il Lee
- Sun In Lee
- Young Myun Lee
- Won Bae Oh
- Young Kyo Oh
- Myung Kwan Park
- Jongtae Rhee
- Ik Sup Shim
- Sung Woong Yang
- Jin Yoo
- Seuck Cheun Yoo

For the reasons set forth below, the following individuals' ESI was not searched:

- Chung Ky Hwang: Mr. Hwang is a Dongguk University Foundation Board of Director. Because he was not a Dongguk employee during the relevant time periods, he did not have a Dongguk email address, did not save documents to Dongguk's university-wide shared database, and did not have a Dongguk-issued computer.

- Gye Hyon Kim: Mr. Kim was an employee of the Dongguk University Foundation Board of Directors during the relevant time periods. Because he was not a Dongguk employee during the relevant time periods, he did not have a Dongguk email address, did not save documents to Dongguk's university-wide shared database, and did not have a Dongguk-issued computer.

- Jang Yoon: Mr. Yoon is a former Dongguk University Foundation Board of Director. Because he was not a Dongguk employee during the relevant time periods, he did not

---

[2] Because Mr. Im is not a Dongguk employee, he does not have a Dongguk email address, does not save documents to Dongguk's university-wide shared database, and does not have a Dongguk-issued computer.

Felix J. Springer, Esq.
March 16, 2010
Page 5

        have a Dongguk email address, did not save documents to Dongguk's university-wide
        shared database, and did not have a Dongguk-issued computer.

- <u>All members of Dongguk University Foundation Board of Directors in 2005 and
  2007</u>: Because members of the Dongguk University Foundation Board of Directors
  are not Dongguk employees, they do not have Dongguk email addresses, do not save
  documents to Dongguk's university-wide shared database, and do not have Dongguk-
  issued computers.

       As a separate matter, we were surprised to see Byeong Wook Oh and Kwang Ho Yu on
your list. Because neither individual was directly involved in the Shin incident, they were not
included as custodians and we have no reason to believe that they possess responsive emails or
other ESI. However, if Yale would like to provide additional information about why it believes
that these two individuals would possess responsive emails and other ESI, we will endeavor to
obtain their written consent to access their emails and other ESI.

       We also note that, while Jeong Ah Shin was employed by Dongguk, she never used her
Dongguk University email account.

### Collection and Review

       Because of the concerns regarding Korean privacy laws, Dongguk, in consultation with
McDermott and Lee & Ko, implemented the following collection and search protocol:

1. As discussed in detail above, Dongguk first created a refined custodian list and then
   obtained the necessary consent from the identified custodians.

2. Dongguk first collected the previously archived emails, consisting of the custodians'
   emails that were sent or received between January 2005 through March 2008
   regardless of relevancy or subject matter. The emails were collected in PST format.
   This process was supervised by McDermott and Lee & Ko attorneys and Dongguk's
   IT personnel.

3. After identifying custodians, McDermott interviewed each custodian to locate all
   potentially relevant ESI and hard copy documents. During the interviews, custodians
   informed McDermott: (i) where they stored potentially relevant ESI on the
   university-wide shared database, (ii) if they had stored any additional potentially
   relevant ESI on their local computer hard-drives and/or other storage devices and
   specifically where those documents were stored, if any, and (iii) where potentially
   relevant hard copy documents were located.

4. Based on the information provided by the custodians, Dongguk collected any
   potentially relevant ESI that had been stored on Dongguk's university-wide shared
   database by the custodians. The electronic documents were collected in native

Felix J. Springer, Esq.
March 16, 2010
Page 6

format, with all metadata preserved.  This process was supervised by McDermott and Lee & Ko attorneys and Dongguk's IT personnel.

5. Dongguk also collected any potentially relevant ESI that was located on custodians' local computer hard-drives and other storage devices.  All electronic folders and/or documents identified by the custodian as potentially relevant to the case were collected in native format, with all metadata preserved.  This process was supervised by McDermott and Lee & Ko attorneys and Dongguk's IT personnel.

6. In addition, Dongguk collected all potentially responsive hard copy documents.  The collected hard copy documents were scanned, as they had been kept by the custodians in the ordinary course of business, into electronic format for review.  This process was supervised by McDermott and Lee & Ko attorneys and Dongguk's IT personnel.

7. In April 2009, McDermott provided Yale with an extensive proposed search term list based upon McDermott's knowledge of the case and Yale's specific Document Requests.  During a May 1, 2009 teleconference, Yale's counsel provided comments and suggestions to that list, which Dongguk incorporated into its final search term list.[3]  A copy of Dongguk's final search term list is attached hereto as Exhibit E.

8. With the ESI that had been collected, Dongguk's IT personnel then created a general pool of ESI to be searched.  The initial pool of ESI contained: (i) the previously archived emails, (ii) any potentially relevant ESI that had been stored on Dongguk's university-wide shared database by the custodians, and (iii) any potentially relevant ESI collected from the custodians' local computer hard-drives and other storage devices.

9. Dongguk then ran a computer-operated search using the search term list over the general pool of ESI to generate an output of potentially responsive ESI.  This process was supervised by McDermott and Lee & Ko attorneys and Dongguk's IT personnel.

10. The collected/scanned documents and ESI were then reviewed by McDermott and Lee & Ko for responsiveness, privilege, and confidentiality.  All responsive non-privileged documents requested by Yale were produced.

\*       \*       \*       \*

---

[3]  By contrast, Yale refused to use search terms and instead "left it up to each custodian to apply the search method that was most likely to uncover all potentially relevant ESI." (April 23, 2009 e-mail from Howard Fetner to Andrew Kratenstein.)  In Jean Bae's May 5, 2009 letter to Mr. Fetner, we indicated our concern about Yale's approach and requested that "Yale run search terms over each and every custodian's e-mail account and other local or network locations reasonably likely to contain responsive ESI."  Yale has not confirmed whether it complied with this request.

Felix J. Springer, Esq.
March 16, 2010
Page 7


  Now that we have provided you with all the information that you have requested regarding Dongguk's preservation, collection, and review protocol, we look forward to receiving the information that we have requested from Yale.

          Sincerely yours,

          Robert A. Weiner

cc: Ira Grudberg, Esq.
 Howard Fetner, Esq.
 Andrew Kratenstein, Esq.
 Audrey Lu, Esq.


NYK 1287158-4,081817.0011

# EXHIBIT A

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Robert A. Weiner
Attorney at law
rweiner@mwe.com
212.547.5408

January 23, 2008

VIA CERTIFIED MAIL

Jin Soo Han, Ph. D.
Vice President
Dongguk University
26 3 Pil-dong Chung-gu Seoul 100-715 Korea

Dear Mr. Han:

In the United States, parties to a lawsuit are required to disclose and provide to each other any documents in their possession, custody or control that are potentially relevant to the litigation, as long as they are not subject to attorney-client privilege or any other privileges recognized under U.S. law. These documents include not only paper documents, but also documents, emails, and any other data that are stored and maintained electronically.

Recently, courts have sanctioned parties for failing to preserve all electronically stored information that was potentially relevant to the case. It is therefore becoming increasingly important for a party to a lawsuit to ensure the retention of electronic information at an early stage of the litigation. Accordingly, McDermott Will & Emery LLP has created a standard letter that it sends to its clients regarding the preservation of electronically stored information, a copy of which is enclosed.

As you can see, the enclosed letter provides you with a list of certain steps that we generally request our client to take at the beginning of a litigation in order to preserve any relevant electronic information. The specific steps that are necessary for each case may differ from those listed in the enclosed letter, depending on the particular facts of each case, the manner in which each party maintains his/her electronic information, and each party's retention policies.

We would like to discuss this matter with you when we visit Dongguk University on February 4-5, 2008, so that we can develop an electronic document retention method that is tailored to your needs. If you have any questions or concerns, feel free to contact me at anytime.

Very truly yours,

*Robert A. Weiner*

Robert A. Weiner

# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

January 23, 2008

Jin Soo Han, Ph. D.
Vice President
Dongguk University
26 3 Pil-dong Chung-gu Seoul 100-715 Korea

Re:     Preservation of Electronically Stored Information

Dear Mr. Han:

As a party to a lawsuit, you may soon be required to provide document discovery or make
disclosures of documents that are potentially relevant to the litigation.  In our electronic age,
increased attention is being placed on discovery not only of paper documents, but also of
documents, correspondence (e.g., e-mails) and other data that is stored electronically.  In general,
a party's obligation to provide discovery or make disclosures does not depend on the form in
which the information is kept, and encompasses both electronically stored information and
information that is in a more tangible form.  While the retention of paper documents, which is
equally important, is relatively straightforward, the retention of electronic information is more
complicated and its importance is frequently overlooked.

The obligation to provide discovery of electronically stored information carries with it the
obligation to preserve it.  Failure to preserve electronically stored information that is later
determined to be of potential importance to pending or threatened litigation can result in a range
of sanctions, including in extreme cases the sanction of an adverse judgment and an order
requiring a company's officers to pay substantial amounts of money.  Electronic evidence may
also turn out to be critical to your ability to prove facts that are supportive of your position in the
case, or to disprove facts that your opponent relies on.  It is therefore important that you take
appropriate steps now to ensure that all electronically stored information that may be relevant is
retained and not lost, deleted or destroyed.

Enclosed with this letter is a checklist of some steps you should take immediately to preserve
electronic evidence.  The specific manner in which you ensure the preservation of electronic
evidence will depend on the particular facts of your case and the manner in which you store and
maintain electronic information.  Towards that end, we would like to set up a meeting at the
earliest opportunity with your IT Department or other computer support staff to establish a plan
for the preservation of electronic evidence that is tailored to your needs.  We also would like to
retain on your behalf a computer forensics consultant who will assist us in identifying the

January 23, 2008
Page 2

measures you should be taking now to meet your obligations to preserve all potentially relevant evidence, including potentially relevant electronically stored information.

Please call me at your earliest convenience to discuss these issues further.

## Immediate Steps Required to Preserve Electronically Stored Information

The following are the immediate steps that should be taken to preserve electronically stored information. These are minimum guidelines. Additional steps may be required depending on the particular needs and technology of your company. Until an independent computer forensics consultant is retained, please consult with your IT department or computer support personnel to determine what additional steps may be required to avoid the loss of potentially relevant information.

1.  Review the Company's electronically stored information deletion protocol. For example, how often are files deleted or overwritten? Are the processes for deleting or overwriting files automatic? How often is such deletion or overwriting necessary based on data storage limitations?

2.  Suspend the Company's electronically stored information deletion protocol with respect to all files that could reasonably be expected to contain potentially relevant information. If data storage limitations render the long-term suspension of such protocols impractical, temporarily suspend such protocols until the Company has a sufficient opportunity to review its needs with an experienced computer forensics consultant (see item 5 below).

3.  Identify all employees who may reasonably be expected to have information that is potentially relevant to the litigation. Circulate a memorandum to all such employees advising them to preserve all documents that may have a bearing on the subject matter of the litigation, and that they are not to delete or alter any e-mails, databases or any other computer files pending further notice. In selecting the employees to receive the memorandum, you should err on the side of over-inclusion. We would like to meet with you at your earliest opportunity to determine what electronic information and other materials should be preserved and which employees should be included in this retention effort.

4.  Inventory the workstations, laptops, home computers, personal digital assistants, floppy disks, and other potential sources of relevant electronic data for each of the employees identified pursuant to number 3 above.

5.  Through counsel, engage an experienced computer forensics consultant to review the Company's information systems and to advise the Company concerning the most effective and efficient means to identify and preserve potentially relevant data.

# EXHIBIT B

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Robert A. Weiner
Attorney at Law
212-547-5408
rweiner@mwe.com

*Privileged & Confidential*
*Attorney Work Product*

March 13, 2008

Re:    Preservation of Electronically Stored Information

Dear Mr. Han:

As a party to a lawsuit, Dongguk University may soon be required to provide document discovery or make disclosures of documents that are potentially relevant to the litigation. A party's obligation to provide discovery or make disclosures does not depend on the form in which the information is kept, and encompasses both electronically stored information and information that is in a more tangible form. It is therefore important that Dongguk University take appropriate steps now to ensure that all electronically stored information that may be relevant is retained and not lost, deleted or destroyed.

Attached to this letter is a checklist of some steps you should take immediately to preserve electronic evidence. As we discussed earlier, we would like to retain on Dongguk University's behalf a computer forensics consultant who will assist us in identifying the measures Dongguk University should be taking now to meet Dongguk University's obligations to preserve all potentially relevant evidence, including potentially relevant electronically stored information. We will soon provide you with the information on computer forensics consultants who have experience in collecting electronic data in Korea for your consideration.

Because we are asserting damages in the amount equal to at least $50 million and the damages are based, among other things, upon a decrease in the amount of corporate contribution, alumni contribution, and government grants provided to Dongguk University every year, any electronic or hard-copy documents that contain this information may come within the scope of discovery under the U.S. law. In order to prepare for the upcoming discovery, we need to identify the departments within Dongguk University that possess these documents. Please provide us with the names of the departments that are involved with soliciting and receiving corporate donations, alumni donations and/or government grants as well as the names of the directors of those departments.

Finally, please ensure that the electronic or hard-copy documents relevant to this litigation are preserved irrespective of whether the custodians identified in the attachment still work for Dongguk University. As to Ms. Jeong Ah Shin, it is extremely important that all electronic or

U.S. practice conducted through McDermott Will & Emery LLP.

340 Madison Avenue  New York, New York  10173-1922  Telephone: 212.547.5400  Facsimile: 212.547.5444  www.mwe.com

March 13, 2008
Page 2

hard-copy documents that used to be in her possession irrespective of the subject matter be
identified and preserved.

If you have any other questions, please give me or Jin Yung Bae a call.  In any event, I will be in
contact with you to discuss these issues further.

Very truly yours,

Robert A. Weiner

*Privileged & Confidential*
*Attorney Work Product*

## Immediate Steps Required to Preserve Electronically Stored Information

The following are the immediate steps that should be taken to preserve electronically stored information. These are minimum guidelines. Additional steps may be required depending on the particular needs and technology of the university. Until an independent computer forensics consultant is retained, please consult with your IT department or computer support personnel to determine what additional steps may be required to avoid the loss of potentially relevant information.

1.    Circulate the enclosed litigation hold notice to all employees who may reasonably be expected to have information that is potentially relevant to the litigation. We have attached a list of employees that should receive this notice and preserve all hard-copy and electronic documents that are relevant to the case. Please update this list with any additional individuals that should be included. In selecting the employees to receive the memorandum, you should err on the side of over-inclusion. Please include former employees in the list as well, to the extent that the information relating to those employees is relevant to the litigation.

2.    Inventory the workstations, laptops, home computers, personal digital assistants, floppy disks, and other potential sources of relevant electronic data for each of the employees identified pursuant to number 1 above. Please emphasize to the employees the importance of their cooperation in data preservation with regard with the current lawsuit in the United States. We understand that there may be difficulties in accessing these data sources due to the privacy law in Korea. Please contact us if you have any problems during the process. We will seek a legal advice from a Korean counsel and find a solution to any problems we encounter.

3.    Through counsel, engage an experienced computer forensics consultant to review the university's information systems and to advise the university concerning the most effective and efficient means to identify and preserve potentially relevant data.

*Privileged & Confidential*
*Attorney Work Product*

## List of Potential Custodians of Information Relevant to the Dispute

|  | Name | Importance |
|---|---|---|
| 1 | Jeong Ah Shin | The person who allegedly forged her resume as well as diploma and certification letter from Yale. |
| 2 | Woo Taik Jung | Professor & Chairman of the Art History Department. Accepted Shin as a new faculty member in his department. |
| 3 | Ye Kyung Jung | Professor of Art History. Signed the recommendation form for Shin together with Woo Taik Jung. |
| 4 | Won Bae Oh* | Professor of Arts. Whistle-blower who first brought up the issue of Shin's potential falsification of her educational background. |
| 5 | Hyung Taik Ahn* | Professor of Economics and Manager of Administration Team. Sent a verification request to Yale. |
| 6 | Ki Sam Hong | Former President of the University. First recommended Shin to the University. |
| 7 | Seok Cheon Yoo | Former Dean of Academic Affairs. In charge of Shin's hiring process. |
| 8 | Il Seop Shim | Former Dean of Academic Affairs. In charge of the degree verification process. |
| 9 | Sung Woong Yang* | Administrative staff. Handled the degree verification process |
| 10 | Jo Kyung Lim | Administrative staff. Handled the degree verification process |
| 11 | Soon Shik Cho | Administrative staff. Handled the degree verification process |
| 12 | Joon Tae Kim | Administrative staff. Handled the degree verification process |
| 13 | Yoon Kil Seo | Administrative staff. Handled the degree verification process |
| 14 | Youngkyo Oh* | President of the University. Participated in the internal investigation of Shin's educational background. Held a press conference. |
| 15 | Jin Soo Han* | Vice President of the University. Chairman of the Internal Investigation Committee. Held a press conference. |
| 16 | Euiyon Cho* | Member of the Internal Investigation Committee. A main correspondent in the university's communication with Yale. Held a press conference. |
| 17 | Byungho Kim | Member of the Internal Investigation Committee. Held a press conference. |
| 18 | Sang Il Lee | Former Dean of Academic Affairs. Member of the Internal Investigation Committee. Held a press conference. |
| 19 | Won Sang Cho | Member of the Internal Investigation Committee. |
| 20 | Myung Kwan Park | Member of the Internal Investigation Committee. |
| 21 | Hyunhae | Former Chairman of the Board of Directors. Involved in Shin's hiring. |
| 22 | Yong Taek Im | Chairman of the Board of Directors. Involved throughout the |

*Privileged & Confidential*
*Attorney Work Product*

| | | |
|---|---|---|
| | | hiring, verification and investigation process with regard to Shin. |
| 23 | Yoon Jang | Member of the Board of Directors.  Raised the issue of Shin's educational background at a Board meeting. |
| 24 | Youngdam | Member of the Board of Directors.  Privately investigated Shin's educational background. |
| 25 | Employees in the departments dealing with corporate/alumni donation, government grants and student application | Goes to damages. |

*Privileged & Confidential*
*Attorney Work Product*

## DATA RETENTION AND PRESERVATION NOTICE

March ___, 2008

As you may know, there is a dispute between Yale University ("Yale"), and Dongguk University Foundation and Dongguk University ("Dongguk") about Yale's incorrect verification of the academic credentials of Jeong Ah Shin, a then-faculty-member of Dongguk, via fax transmittal to Dongguk in 2005 and Yale's subsequent denial of the authenticity of the 2005 fax via numerous public statements in 2007 (the "Dispute").  Dongguk will likely be required to produce documents in connection with the Dispute.

You have been identified as being someone that has sent, received or stored information concerning Yale or the Dispute.  **Effective immediately, you and everyone who reports to you must preserve and retain (*i.e.*, must <u>not</u> alter, delete or otherwise modify) any and all data that is in any way related to Yale or the Dispute.**

In identifying and preserving data, please keep in mind that "data" includes any form of communication, including, without limitation, hard copy, printed, hand-written, recorded, electronic, mechanical, magnetic or computerized information such as electronic mail, voicemail, word processing and other user files.  "Data" includes information stored by any means, whether on a computer network or computer device, on a tape, or on a hard, floppy or micro-floppy disk or diskette.  You should not, for example, delete from your computer or laptop any emails, files or other documents relating to Yale or the Dispute, even if those documents are drafts or are in some preliminary or less-than-complete form.  **All data that is or may be relevant to Yale or Dispute must be preserved in the form that it now exists.**

In identifying the data that you must preserve and not destroy, you should examine all of the locations where such data might be found, including the following locations:

- File cabinets, binders, and any areas within your local work space which may house "hard copy" (i.e. paper) documents.

- Any off site storage facilities housing hard copy documents.

- All e-mail files housed on your local work computer.

- All e-mail files housed on external or personal e-mail accounts.

- All electronic files (Microsoft Office Suite documents or other electronic formats) housed on your local work computer.

- All electronic files (Microsoft Office Suite documents or other electronic formats) housed on external drives, including any network drives.

- All electronic files (Microsoft Office Suite documents or other electronic formats) housed on your personal home computer or any other personal external devices.

- All electronic files (Microsoft Office Suite documents or other electronic formats) housed on Dongguk University's document management system.

- Your voicemail "inbox" and other places where voice recordings may be stored.

Any question you may have as to the relevance of a particular document, file, email or other electronic data compilation should be resolved in favor of preservation and retention. **You should not screen the documents to determine relevancy or whether they might be protected by the attorney-client privilege or other privilege status. Failure to preserve relevant information could result in significant penalties against Dongguk and its executives.**

Over the next several weeks, someone at Dongguk will be contacting you to organize and collect any data, including hard copy files, electronic files and e-mails, that you have that relate to Yale or the Dispute. In the meantime, do not destroy any documents that are or may be relevant to Yale or Dispute, and contact Mr. Jin Soo Han, at 02-2260-3294, or Mr. Sang Kook Moon, at 02-2260-3903, if you have any questions.

Your cooperation is appreciated. To confirm you received this notice, please sign a copy of this notice below and send it to Mr. Jin Soo Han, no later than March 14, 2008.

_____

Employee Signature

_____

Date

- 2 -

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Robert A. Weiner
Attorney at Law
(212) 547-5406
rweiner@mwe.com

2008 년 3 월 13 일

*Privileged & Confidential*
*Attorney Work Product*

Re:    전자 문서 보존에 관하여(Preservation of Electronically Stored Information)

동국대학교 한진수 부총장님께

앞으로 진행될 소송의 당사자로서, 동국대는 본 소송에 연관될 가능성이 있는 자료들을 공개하고 그 사본을 상대방 피고인에게 전달할 의무가 있습니다. 소송 당사자가 자료를 제출할 의무는 정보가 보관되어 있는 형태에 관계없이 전자문서와 일반 종이문서를 모두 포괄합니다. 따라서 동국대 측에서 현 사건에 관련된 모든 전자정보를 잘 보존하고 이를 잃어버리거나 삭제하거나 변경하는 일이 없도록 적절한 조치를 지금 즉시 취하는 것이 중요합니다.

이 편지와 함께 동봉되어 있는 체크 리스트를 봐주십시오. 이 리스트는 동국대가 지금 즉시 취해야 할 조치를 단계별로 나열하고 있습니다. 이전에 말씀 드린 대로 동국대가 관련 가능성이 있는 모든 자료(전자자료 포함)를 보존하는 의무를 이행하는 데에 있어 보조 역할을 할 수 있는 제 3 자 전자문서수집 전문업체를 고용하고자 합니다. 동국대가 업체를 선정하는 데에 도움이 될 수 있도록 한국에서 전자데이터수집경험이 있는 전문업체들에 관한 정보를 곧 보내드리도록 하겠습니다.

동국대가 본 소송에서 요구하는 5 천만 달러의 손해배상청구액은 매년 동국대가 받는 기업 혹은 동문으로부터의 기부와 정부 보조금의 감소에 일부 근거하고 있기 때문에 예일대 측이 이러한 정보가 담긴 전자 혹은 종이 자료들을 요구할 가능성이 많습니다. 이에 대비하기 위해서는 이러한 업무를 담당하는 동국대 부서가 어디인지를 저희가 미리 파악하는 것이 중요합니다. 따라서 저희에게 업체 기부금, 동문 기부금, 정부 보조금의 관리를 담당하는 부서의 명칭과 부서 담당자의 성함을 알려주시면 감사하겠습니다.

첨부되어 있는 리스트에 기재되어 있는 소송 관련인들 소유의 본 소송과 관련된 전자 혹은 종이 문서는 이들이 동국대에 근무하고 있는지의 여부에 관계없이 반드시 보존하도록 해주십시오. 특히 신정아씨 소유의 전자 혹은 종이 문서는 내용에 상관없이 전부 수집하여 보관하도록 해주십시오.

U.S. practice conducted through McDermott Will & Emery LLP.

340 Madison Avenue  New York, New York 10173-1922  Telephone: 212.547.5400  Facsimile: 212.547.5444  www.mwe.com

2008 년 3 월 13 일
Page 2


　　질문 사항이 있으시면 저나 배진영 양에게 전화 연락을 주십시오.  저 또한
부총장님께 연락하여 본 사항에 관해 의논 드리도록 하겠습니다.


　　　　　　　　　　　　로버트 위너

*Privileged & Confidential*
*Attorney Work Product*

## 전자 방식으로 저장된 정보를 보존하는 데에 필요한 단계들

다음은 전자 방식으로 저장된 정보를 보존하는 데에 있어 동국대 측이 즉시 취해야 할 조치를 단계별로 나열한 것입니다. 이는 최소한으로 필요한 조치만을 기재한 것으로, 동국대의 테크놀로지와 필요 사항에 따라 추가적인 단계가 요구될 수 있습니다. 제 3 자의 중립적인 전자 정보 수집 전문 업체가 고용될 때까지 동국대의 IT 팀과 컴퓨터 보조 담당자들과 상의하여 현 사건에 관련될 가능성이 있는 정보 손실을 막기 위해 필요한 추가적 조치를 취해 주십시오.

1.  본 소송과 관련된 정보를 보관하고 있을 가능성이 있는 모든 동국대 현직원 혹은 전직원들을 선정해 주십시오. 이 편지에는 제가 만든 관련인 리스트가 첨부되어 있습니다. 혹시 리스트에 첨가할 직원이 있으시면 알려주십시오. 관련인 선정 이후 리스트에 기재된 모두에게 현 소송과 관련될 가능성이 있는 모든 자료들을 보관하도록 하고 이메일, 데이터베이스, 컴퓨터 파일의 삭제나 변경을 추후 공지가 있을 때까지 일절 금하도록 명하는 공문 (이 또한 이 편지에 첨부되어 있습니다)을 보내주십시오. 공문을 받을 관련인을 선정하는 과정에 있어 되도록 많이 선정하는 쪽으로 하여 모든 관련인을 포괄할 수 있도록 해주십시오. 또한 동국대에서 더 이상 근무하지 않는 직원 또한 소송 관련 여부가 있을 경우 리스트에 포함하도록 해주십시오.

2.  단계 1 의 과정을 통해 선정된 직원들의 학교 컴퓨터, 노트북, 집 컴퓨터, 개인적인 전자 도구 (예를 들어 PDA), 플로피 디스크, 그 외에 관련된 전자 정보가 수록되어 있을 가능성이 있는 모든 기기를 복사 수집해 주십시오. 직원들에게 본 소송과 관련하여 미국 법 체계에서 데이터 보존이 가지는 의미와 직원들의 협조의 중요성에 대해 강조해 주십시오. 저희는 한국 사생활보호법 상 이러한 기기에 수록된 자료를 수집하는 데에 어려움이 있다는 것을 인지하고 있습니다. 수집 과정에서 문제가 있으시면 저희에게 연락 주십시오. 한국 변호사와의 법률상담을 통해 해결책을 찾아드리도록 하겠습니다.

3.  동국대 측에서 저희를 통하여 경험이 많은 전자 정보 수집 전문업체를 고용하도록 해주십시오. 고용된 업체가 동국대의 전자 시스템을 검토하고 관련 데이터를 수집하고 보존할 수 있는 가장 효율적이고 효과적인 방법을 제시할 수 있도록 협조해주시고 이를 시행하도록 해 주십시오.

*Privileged & Confidential*
*Attorney Work Product*

## 본 소송 관련 정보를 가지고 있으리라 예상되는 인물들

|  | 이름 | 중요한 이유 |
|---|---|---|
| 1 | 신정아 | 예일대로부터 받았다고 주장한 박사학위 관련 문서들을 위조한 것으로 보임 |
| 2 | 정우택 | 미술사학과 학과장. 신씨를 미술사학과 조교수로 추천. |
| 3 | 정예경 | 미술사학과 교수. 신씨를 미술사학과 조교수로 추천. |
| 4 | 오원배 | 미술학과 교수. 신씨의 학위가 거짓이라고 처음 알린 인물 |
| 5 | 안형택 | 경제학과 교수 겸 2005년 당시 교무팀 과장. 예일대에 학위검증을 의뢰하는 공문을 보낸 당사자. |
| 6 | 홍기삼 | 동국대 전 총장. 신씨를 처음 추천한 인물. |
| 7 | 유석천 | 전 기획처장. 신씨 채용 과정 담당자. |
| 8 | 심일섭. | 전 기획처장. 신씨 학력조회 과정 일부 담당. |
| 9 | 양성웅 | 교무팀. 신씨 학위검증 과정 담당자 |
| 10 | 임조경 | 교무팀. 신씨 학위검증 과정 담당자 |
| 11 | 조순식 | 교무팀. 신씨 학위검증 과정 담당자 |
| 12 | 김준태 | 교무팀. 신씨 학위검증 과정 담당자 |
| 13 | 서윤길 | 교무팀. 신씨 학위검증 과정 담당자 |
| 14 | 오영교 | 동국대 총장. 신씨 학위위조 진상조사 참여. 기자회견 참여. |
| 15 | 한진수 | 동국대 부총장. 신씨 학위위조 진상조사 참여. 기자회견 참여. |
| 16 | 조의연 | 진상조사위원회 위원. 예일대와 이메일 서신 주고 받은 담당자. 기자회견 참여. |
| 17 | 김병호 | 진상조사위원회 위원. 기자회견 참여. |
| 18 | 이상일 | 전 기획처장. 진상조상위원회 위원. 기자회견 참여 |
| 19 | 조원상 | 진상조사위원회 위원 |
| 20 | 박명관 | 진상조사위원회 위원 |
| 21 | 현해 스님 | 전 동국대 이사장. 신씨 채용 과정 이사회 개입 당시 이사장. |
| 22 | 임용택 (영배 스님) | 동국대 이사장. 신씨 채용, 학위검증, 진상조사 과정에 참여. |
| 23 | 장윤 스님 | 동국대 이사. 신씨 학력 의혹 제기. |
| 24 | 영담 스님 | 동국대 이사. 신씨 학위 검증 개인적 참여. |
| 25 | 기업 기부금, 동문 기부금, 정부 보조금 담당자들 | 소송 손해보상요구액을 증명하는 데에 필요 |

*Privileged & Confidential*
*Attorney Work Product*

<u>정보 수집과 보존에 관한 공문</u>

2008 년 3 월 __일

　　현재 동국대학교는 신정아씨의 학력위조와 관련하여 예일대에서 2005 년에 박사학위를 받았다고 잘못 확인하는 팩스를 보낸 것, 2007 년에 팩스를 보낸 적이 없고 동국대로부터 박사학위검증의뢰를 받은 적 또한 없다고 주장한 것에 대항하여 미국에서 소송을 준비하고 있습니다.  미국법상 소송 당사자들은 사건과 관련된 자료를 본인이 직접 수집하고 제출할 의무를 지게 되며 동국대 또한 이러한 의무를 곧 이행하게 될 것입니다.

　　귀하께서는 예일대 혹은 본 소송에 관련된 정보를 송신, 수신 혹은 저장하신 적이 있으신 것으로 알고 있습니다. <u>지금 이 순간부터 귀하와 귀하께 보고하는 사람들 모두에게 예일대 혹은 본 소송에 어떠한 식으로라도 연관될 수 있는 자료들을 모두 수집하고 보존하도록 (즉 자료를 삭제하거나 변경하는 일이 없도록) 할 의무가 부여됨을 알려드립니다.</u>

　　관련 정보를 선정 보관하는 데에 있어 여기에서 말하는 "자료"는 종이 혹은 다른 매체에 프린트된 자료, 직접 필기한 자료, 녹음 수취한 자료, 전자 문서 자료, PDA 와 같은 기계에 저장되는 정보, 이메일, 음성 메일, 워드 프로세싱 파일, 유저 파일 등 모든 정보와 자료를 포괄한다는 점에 주의해 주십시오.  여기에서 말하는 "자료"는 컴퓨터 네트워크나 컴퓨터 기기, 테이프, 하드 디스크, 플로피 디스크, 마이크로 플로피 디스크 등 어떠한 형태로 보관된 자료든지 다 포함됩니다.  예를 들어 개인의 PC 컴퓨터나 노트북 컴퓨터에 보관되어 있는 이메일 혹은 핸드폰에 보관된 문자라도 예일대 혹은 본 소송에 관련된 경우 이를 삭제해서는 안됩니다. <u>예일대나 본 소송에 관련될 가능성이 있는 모든 자료는 현재 보관되어 있는 형태 그대로 보존되어야 합니다.</u>

　　보존할 자료를 찾고 수집할 때에 다음의 장소를 포함 자료가 보관되어 있을 가능성이 있는 모든 곳을 확인해 주십시오.

- 문서 정리함 (캐비넷), 폴더, 그 외에 문서가 있을 수 있는 사무실 내 모든 장소들

- 사무실 외부 혹은 대학 캠퍼스 외부에 있는 문서 보관실

- 사무용 PC 에 저장되어 있는 모든 이메일

- 학교 외부 혹은 개인 이메일 주소에 저장된 모든 이메일

- 사무용 PC 에 저장된 모든 전자문서 파일 (마이크로 소프트 오피스 문서파일 혹은 다른 포맷으로 된 문서 파일)

- 네트워크나 외부 드라이브에 저장된 모든 전자문서 파일 (마이크로 소프트 오피스 문서파일 혹은 다른 포맷으로 된 문서 파일)

*Privileged & Confidential*
*Attorney Work Product*

- 개인 PC 나 외장 하드 드라이브에 저장된 모든 전자 문서 파일 (마이크로 소프트 오피스 문서파일 혹은 다른 포맷으로 된 문서 파일)

- 동국대 문서 저장 시스템에 저장된 모든 전자 문서 파일 (마이크로 소프트 오피스 문서파일 혹은 다른 포맷으로 된 문서 파일)

- 사무용 전화, 집 전화, 핸드폰에 음성 사서함이 있는 경우 사서함에 저장된 모든 음성 메일

특정 문서, 파일, 이메일 등의 전자 데이터가 본 소송에 관련이 있는지에 관해 의문이 있으시면 일단 보관하는 쪽으로 조치를 취하도록 해주십시오. 문서의 연관성이나 변호사 의뢰인간 비밀 유지 특권 혹은 다른 비밀 유지 특권의 적용 여부 등에 관해 직접 결정을 내리고 문서를 선정해서는 안됩니다. 소송에 관련된 정보를 제대로 보존하지 못한 경우 동국대와 동국대 임원들에게 엄중한 처벌이 가해질 수 있습니다.

앞으로 몇 주 동안 동국대에서 문서, 전자 문서 파일과 이메일 등의 데이터를 분류하고 수집하기 위해 연락을 취할 것입니다. 연락이 올 때까지 에일대나 본 소송에 관련이 있을 수 있는 어떠한 자료도 파기 또는 변경하지 않도록 해주십시오. 의문 사항이 있으시면 한진수 부총장님이나 문상국 국장님을 통해 연락 주시면 성실히 답변해 드리겠습니다.

협조해 주셔서 감사합니다. 본 공고를 받았다는 것을 확인하는 의미에서 아래에 서명해주시고 한진수 부총장님께 3 월 13 일까지 돌려주시기 바랍니다.


서명란

이름:_____

날짜:_____

# EXHIBIT C

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  Houston  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Robert A. Weiner
Attorney at Law
rweiner@mwe.com
212.547.5406

April 3, 2008

Jin Soo Han
Vice President, Dongguk University
26, 3 Pil-dong, Chung-gu, Seoul Korea 100-715
82-2-2260-3294
jshan@dongguk.edu

Re:    Document Preservation Request from Yale University

Dear Mr. Han:

   Attached is a letter dated April 1, 2008, from Day Pitney LLP, the law firm that has been retained to represent Yale University in our case.  In the letter, Yale requests that Dongguk University preserve all documents mentioned in "Schedule A," which is attached to the letter as a list.

   We believe that Yale's request is objectionable and a number of the categories of documents Yale seeks in this letter should not be produced.  Nevertheless, irrespective of whether we produce the documents or not, we have an obligation to preserve these documents under U.S. law.  To the extent you have any documents that fall into the categories mentioned in Schedule A, please do not alter, modify or destroy them.

   Should you have any inquiries or concerns, please feel free to contact me or Ms. Bae at any time.

                                        Very truly yours,

                                        Robert A. Weiner

                                        Robert A. Weiner

APR. 1. 2008  3:44PM    203-752-5001                    NO. 4731   P. 1/5

Fax ID: 78527

Time In                                                 Time Delivered

# FAX TRANSMISSION
## DAY PITNEY LLP
242 Trumbull Street
Hartford, Connecticut 06103
(860) 275 0100
Fax: (860) 275 0343

| | | | |
|---|---|---|---|
| **From:** | Felix J. Springer | **Phone #:** | (860) 275 0184 |
| **Date:** | April 1, 2008 | **Pages:** | 5  page(s), including cover page |
| **Subject:** | Dongguk University v. Yale University | | |

| ATTORNEY NAME | COMPANY | PHONE | FAX NUMBER |
|---|---|---|---|
| Ira B. Grudberg, Esq. | Jacobs, Grudbergf, Belt, Dow & Katz, P.C. | 772-1691 | 772-311 |
| Robert A. Weiner, Esq. | McDermott, Will & Emery LLC | (212) 547-5444 | (212) 547-5408 |

## MEMO  SEE ATTACHED

If there is any problem during transmission
please call
(860) 275 0344

*This Facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

Rev. 12/01/04
TimeKeeper No.   0195                  Client/Matter No.   199124.000124
Return To:   Felix J. Springer



# DAY PITNEY LLP

BOSTON   CONNECTICUT   NEW JERSEY   NEW YORK   WASHINGTON, DC

FELIX J. SPRINGER
Attorney at Law

242 Trumbull Street
Hartford, CT 06103

T: (860) 275 0184 F: (860) 881 2462
fjspringer@daypitney.com

April 1, 2008

## VIA FACSIMILE AND REGULAR MAIL

Ira Grudberg
Jacobs, Grudberg, Belt, Dow & Katz P.C.
350 Orange Street
New Haven, CT 06511

      Re:   <u>Dongguk University v. Yale University</u>

Dear Attorney Grudberg:

      Please be advised that this firm has been retained to represent Yale University ("Yale") in the above-referenced litigation (the "Litigation"). I am writing to advise you that Yale expects your client to meet all the mandatory information preservation and production obligations imposed by the Federal Rules of Civil Procedure and other applicable law. Because your client is a foreign entity and may be unfamiliar with American litigation, we request that you instruct Dongguk University ("Dongguk") to preserve all information relating in any way to its claims, in whatever medium that information might be stored, including computer backup tapes and all other forms of electronically stored data. Given the allegations that you have made regarding Dongguk's reputation prior to 2007 and the supposed effect of Yale's statements on that reputation, Yale's discovery in this matter will be broad, and, as a result, Dongguk is obligated to act now to preserve a broad array of information. I have attached here, as Schedule A, a list of topics about which Yale will seek discovery. This list is not meant to be exhaustive, and Yale will certainly supplement this list should the litigation proceed to discovery.

      Thank you for your attention to this matter.

                                 Sincerely,

                                 Felix J. Springer

cc:    Robert A. Weiner

## Schedule A

1.      all documents mentioned in the complaint in Dongguk University v. Yale University, No. 3:08-cv-00441 (RNC) (the "Complaint"), and all documents relating to any such documents;

2.      all documents relating to Jeong Ah Shin ("Shin"), including but not limited to all personnel and investigation records and all documents relating to Dongguk University's ("Dongguk") hiring, employment, or firing of Shin;

3.      all documents relating to any documents that Shin submitted to Dongguk in connection with her application for a faculty position;

4.      all documents relating to any review or verification of Shin's purported academic degrees, dissertation, work experience, or other credentials;

5.      all documents relating to any criminal investigations of, or criminal charges brought against, Shin, including but not limited to all contacts or communications with prosecutors or government officials relating to such investigations or charges;

6.      all documents relating to the information that Dongguk allegedly received raising questions regarding Shin's academic credentials, as alleged in Paragraph 59 of the Complaint;

7.      all documents relating to any contacts or communications with the source or sources of the information that Dongguk received raising questions regarding Shin's academic credentials, as alleged in Paragraph 59 of the Complaint;

8.      all documents relating to the suggestion that Shin had not written a dissertation titled "Guillaume Apollinaire: Catalyst for Primitivism For Picabia and Duchamp" and that her dissertation had been plagiarized, as alleged in Paragraph 67 of the Complaint;

9.      all documents relating to any contacts or communications with the source or sources of any documents suggesting that Shin had not written a dissertation titled "Guillaume Apollinaire: Catalyst for Primitivism For Picabia and Duchamp" and that her dissertation had been plagiarized, as alleged in Paragraph 67 of the Complaint;

10.     all documents relating to any criminal investigations of, or criminal charges brought against, Byeon Yang-kyun, including but not limited to all contacts or communications with prosecutors or government officials relating to such investigations or charges;

11.     all documents relating to Byeon Yang-kyun in the past 10 years, including but not limited to all documents relating to the Heungdeok Temple or to Shin;

12.     all documents relating to the Heungdeok Temple in the past 10 years, including but not limited to all documents relating to the Ministry of Government Administration and Home Affairs' subsidy relating to the Heungdeok Temple;

13.     all documents relating to the Woljeong Temple in the past 10 years, including but not limited to all documents relating to government subsidies relating to the Woljeong Temple;

14.     all documents relating to any contacts or communications by or with the Dongguk University Foundation's Board of Directors or any of its members relating to the subject matter of the litigation titled Dongguk University v. Yale University, No. 3:08-cv-00441 (RNC) (the "Litigation") or any aspects of "Shin-gate"[1];

---

[1] "Shin-gate" is defined as the controversy relating to Shin's purported academic credentials, Dongguk's hiring, employment, and firing of Shin, Shin's relationship with Byeon Yang-kyun, the Heungdeok Temple, the Woljeong Temple, the Gwanju Biennale, and the subjects of the criminal investigations and prosecutions of Shin and Byeon Yang-kyun.

15.    all documents relating to the organizational structure of Dongguk, the Dongguk University Foundation's Board of Directors, the Dongguk University Professors Association, and the relationships among those three entities;

16.    all documents relating to the by-laws, charters, mission statements, or any similar documents of Dongguk, the Dongguk University Foundation's Board of Directors, and the Dongguk University Professors Association;

17.    all documents relating to any civil or criminal legal proceedings or regulatory or administrative proceedings by or against Dongguk or any member of its faculty, administration, or Board of Directors, in the last 10 years;

18.    all documents relating to the forging, or suspected forging, of academic degrees or other credentials by any persons holding faculty, teaching, or research positions, including adjunct and visiting appointments and "special hiring candidates," at Dongguk, at any time;

19.    all documents relating to plagiarism committed, or suspected to have been committed, by any persons holding faculty, teaching, or research positions, including adjunct and visiting appointments and "special hiring candidates," at Dongguk, at any time;

20.    all documents relating to Dongguk's policies or procedures regarding the hiring of persons for faculty, teaching, or research positions, including adjunct and visiting appointments, from January 2002 to the present;

21.    all documents relating to Dongguk's policies or procedures regarding the promotion of any persons holding academic, faculty, teaching, or research positions, from January 2002 to the present;

22.    all documents relating to Dongguk's policies or procedures regarding the periodic or regular review of persons holding academic, faculty, teaching, or research positions, including adjunct and visiting appointments, from January 2002 to the present;

23.    all documents relating to Dongguk's policies or procedures regarding the hiring or promotion of "special hiring candidates," from January 2002 to the present;

24.    all documents relating to the personnel records of any "special hiring candidates" hired or considered by Dongguk from 2002 to the present;

25.    all documents relating to Dongguk's policies or procedures for verifying students' or faculty members' academic credentials, from January 2002 to the present;

26.    all documents relating to any plans to expand Dongguk's cultural and art history academic offerings, from January 2002 to present;

27.    all documents relating to donations, gifts, or bequests relating to cultural academic offerings, to art history academic offerings, or to Shin, for the past 10 years;

28.    all documents relating to Dongguk's policies or procedures relating to donations, gifts, or bequests, for the past 10 years;

29.    all documents relating to student applications for admission to Dongguk in the past 10 years, including all documents relating to statistics regarding such applications;

30.    all documents relating to Dongguk's policies and procedures relating to student applications for the past 10 years;

31.    all documents relating to any contacts or communications between the press (including but not limited to the Korea Times, Joong Ang Ilbo, the Chosun Ilbo, the Kukmin Ilbo, and the Munhwa Broadcasting Corporation) and Dongguk or any of its administrators, faculty members, or employees; between the press and the Dongguk University Foundation's Board of Directors or any of its members; or between the press and Jeong Ah Shin, Lim Yong-taek (Ven. Yeongbae), Youngkyo Oh, Ki Sam Hong, Hyung Taik Ahn, or Euiyon Cho, relating to Shin or Shin-gate;

-2-

32.   all documents relating to any contacts or communications between any government or regulatory officials and Dongguk or any of its administrators, faculty members, or employees; between any government or regulatory officials and the Dongguk University Foundation's Board of Directors or any of its members; or between any government or regulatory officials and Jeong Ah Shin, Lim Yong-taek (Ven. Yeongbae), Youngkyo Oh, Ki Sam Hong, Hyung Taik Ahn, or Buiyon Cho, relating to Shin or Shin-gate;

33.   all documents relating to any contacts or communications between Dongguk or any of its administrators, faculty members, or employees and Yale University ("Yale") relating to Shin or Shin-gate;

34.   all documents relating to any contacts or communications between Dongguk or any of its administrators, faculty members, or employees and the University of Kansas relating to Shin or Shin-gate;

35.   all documents relating to any contacts or communications between Dongguk or any of its administrators, faculty members, or employees, or any member of the Dongguk University Foundation's Board of Directors, and Myoung Lee relating to Shin or Shin-gate;

36.   all documents relating to any contacts or communications between Dongguk or any of its administrators, faculty members, or employees and the United States Postal Service relating to Shin or Shin-gate;

37.   all documents relating to any contacts or communications between Dongguk or any of its administrators, faculty members, or employees and the Dongguk University Professors Association relating to Shin or Shin-gate;

38.   all documents relating to any contacts or communications between Dongguk or any of its administrators, faculty members, or employees and the Jogye Order relating to Shin or Shin-gate;

39.   all documents relating to any contacts or communications between Dongguk or any of its administrators, faculty members, or employees and KMAC relating to Shin or Shin-gate;

40.   all documents relating to any contacts or communications between Dongguk or any of its administrators, faculty members, or employees and the Sungkok Art Museum, Kumho Art Museum, Hongik University, Hanyang University, Chung-Ang University, Kukmin University, Ihwa Women's University, or Sangmyung University relating to Shin or Shin-gate;

41.   all documents relating to the personnel records of any Dongguk personnel who lost their positions as alleged in Paragraph 170 of the Complaint;

42.   all documents relating to alumni and corporate donations to Dongguk in the past 10 years;

43.   all documents relating to government grants made to Dongguk in the past 10 years;

44.   all documents relating to any plans by Dongguk to open a "U.S. style" law school in the past 10 years;

45.   all documents relating to any communications with the Korean government relating to the list of academic institutions permitted to open a "U.S. style" law school in the past 10 years,

-3-

# EXHIBIT D

*Privileged & Confidential*
*Attorney Work Product*

### DECLARATION OF CONSENT

I, _____, herewith declare:

나, _____, 은/는 다음과 같이 선언합니다.

I have been informed that Dongguk University has filed a lawsuit against Yale University in the United States (the "Lawsuit").

나는 동국대학교가 미국에서 예일대학교를 대상으로 소송 (이하 총칭하여 "소송")을 제기하였다는 사실을 알고 있습니다.

I have read the attached Memorandum and understand that Dongguk University is required under U.S. law to collect any and all Documents that may be potentially relevant to the Lawsuit.

나는 본 동의서에 첨부된 공문을 숙독하였으며 동국대학교가 미국 법에 의하여 본건 소송에 연관되어 있을 가능성이 있는 모든 문서를 수집해야 할 의무가 있음을 인지하고 있습니다.

I am also aware that any Documents and my Personal Information therein may be (i) reviewed, copied, and/or used only in relation to the Lawsuit, (ii) produced for discovery purposes under U.S. law in the Lawsuit to counsel for Yale University, and (iii) produced to the court as evidence and kept by the court for the purpose of the Lawsuit.

나는 문서 및 개인정보가 (1) 본건 소송과 관련하여서만 열람, 복사, 사용된다는 점, (2) 미국 소송의 개시절차 (discovery)를 위한 목적으로 상대방 변호인단에게 제공될 수 있다는 점, (3) 증거자료로 법원에 제출되어 소송목적으로 보관될 수 있다는 점을 알고 있습니다.

"Documents" means any information in any form created, sent, received, and/or stored, including, but not limited to, hard copy, print, hand-written, recorded, aural, electronic, mechanical, magnetic, or computerized information (*e.g.*, emails, instant messaging files, metadata, Excel or PowerPoint files, and voicemails).

여기서 "문서"는 어떠한 형태로든 생성, 송부, 수신, 또는 저장된 모든 정보를 의미하며, 하드카피에 저장된 정보, 프린트된 정보, 손으로 필기한 정보, 녹화 또는 녹음한 정보, 전자, 기계, 필름 또는 컴퓨터에 저장된 정보 (예를 들어 이메일, 메신저 파일, 원시데이터, 엑셀파일, 파워포인트파일, 음성사서함 편지 등) 등이 모두 포함됩니다.

"Personal Information" means information concerning an individual included in the Documents, including without limitation, personal identifiable information such as, names, addresses, phone numbers, resident registration numbers, etc., (including information that does not by itself make it possible to identify a specific person but that enables to identify a specific person easily if combined with any other information) and other potentially sensitive personal information (such as, grades, personal statements, recommendation letters, resumes, illness/disease, etc.).

*Privileged & Confidential*
*Attorney Work Product*

또한 여기서 "개인정보"는 문서 내에 있는 개인에 관련된 정보를 의미하며, 예컨대, 성명, 주소, 전화번호, 주민등록번호 등의 개인식별정보(다른 정보와 용이하게 결합하여 개인을 식별할 수 있는 기타 개인정보 포함) 및 기타 개인의 성적, 자기소개서, 추천서, 경력, 질병정보 등 개인의 민감한 사적 정보를 포함합니다.

I am aware that a snapshot of my electronically stored information ("ESI") (*e.g.*, emails, instant messaging files, metadata, Excel or PowerPoint files, and voicemails) has been taken for the purposes of preservation necessary for the U.S. discovery process in relation to the Lawsuit, and I agree that I will not for any reason whatsoever delete or remove any ESI from my computer.

나는 내가 소장하거나 관리하는 전자적으로 저장된 정보 ("ESI 자료")가 미국에서 본건 소송의 개시 절차(discovery)를 위한 보존을 목적으로 하여 카피본이 따로 저장될 것이라는 것을 알고 있으며어떠한 이유로든 ESI 자료를 삭제하지 않을 것에 동의합니다.

I am also aware that I have the right to prohibit review and disclosure of my Documents under the privacy laws of Korea, including the Criminal Law of the Republic of Korea, the Communication Secrecy Protection Law of the Republic of Korea, the Act on Promotion of Use of Information and Communications Network and Protection of Information, etc. of Korea.

나는 또한 한국 형법, 통신비밀보호법, 정보 통신망 이용 촉진 및 정보 보호 등에 관한 법률, 그 외에 사생활 보호에 관련된 한국의 모든 법률에 의거하여 내 문서의 열람이나 공개를 금지할 권리가 있다는 것을 인지하고 있습니다.

I understand that I am unrestricted in my freedom to decide whether to grant access to my Documents and that refusal to do so would have no adverse consequences in the context of my employment relationship with Dongguk University or otherwise.

나는 내 문서에 접근하는 것을 허락할 지의 여부에 대해 결정할 수 있는 절대적인 자유가 있으며 접근을 거부한다고 해서 동국대학교와의 노사관계에 있어, 혹은 다른 관계에 있어 이로 인한 불이익을 당하지 않을 것이라는 것을 인지하고 있습니다.

With the full understanding of my rights, I grant Dongguk University, and its counsel, permission, for the sole purpose of the Lawsuit, to access, search, review, and/or produce any potentially relevant Documents (including ESI) stored in any storage location (*e.g.*, any location that is under Dongguk's control, including, but not limited to, cabinets, binders, or any other area within my local work space that may house hard copy or soft copy documents, on or off-site storage facilities, computer networks, local computer devices, tapes, hard disks, floppy disks, micro-floppy disks, USB devices, PDAs, cell phones, office phones, home phones, email files housed on local computers, email files housed on external or personal email accounts).

나는 내 권리에 대한 완전한 이해를 바탕으로 동국대학교와 그 변호인단이 본건 소송에 대한 목적에 한하여 동국대학교가 관리하는 모든 장소에 저장되어 있는 소송에 관련될 가능성을 가진

*Privileged & Confidential*
*Attorney Work Product*

모든 문서 (ESI 자료 포함) 에 접근하여 이를 검색, 열람하고 상대방 변호인단 혹은 법정에 제공하는 것을 허락합니다. 여기서 모든 장소는 예컨대 캐비닛, 바인더 등 하드카피나 전자 파일로 문서가 보관되어 있는 사무실 내의 모든 장소를 포함하며 동국대 캠퍼스 내외에 있는 문서 창고, 네트워크, 내 컴퓨터 내의 로칼 드라이브, 테이프, 하드 디스크, 플로피 디스크, 마이크로 플로피 디스크, USB 드라이브 (플래시 드라이브), PDA, 핸드폰, 사무실 전화, 집 전화, 로칼 드라이브에 저장된 이메일, 외부 네트워크나 인터넷에 저장된 이메일, 개인 이메일 계정에 저장된 이메일 등을 포함합니다.

Additionally, I waive any right that I may have against Dongguk University or its agents (including its counsel) under the Criminal Law of the Republic of Korea, the Communication Secrecy Protection Law of the Republic of Korea, the Act on Promotion of Use of Information and Communication Network and Protection Information, or any other laws in connection with Dongguk University's review, search, collection, and/or production of any Documents or Personal Information in connection with the Lawsuit.

이와 더불어 나는 동국대학교와 변호인단을 포함한 그 대리인이 본건 소송과 관련하여 다큐먼트와 개인정보를 검토, 검색, 수집, 제출하는 것에 대해 내가 누리는 한국 형법, 통신비밀보호법, 정보 통신망 이용 촉진 및 정보 보호 등에 관한 법률, 그 외 모든 법률에 의한 제 권리를 일체 포기 철회합니다.

Signature: _____

Name: _____

Date: _____


Please provide us with your email ID and password so that we may access your email account.

동국대학교 측에서 이메일 계정에 로그인할 수 있도록 당신의 이메일 아이디와 패스워드를 기재해 주십시오.

아이디: _____

패스워드: _____

Please submit the executed copy of the consent form to Mr. Byoung-Geon Jeon, the Manager of the Strategic Planning Team.

서명하신 동의서는 전병건 전략예산팀 과장님께 보내주시기 바랍니다.

*Privileged & Confidential*
*Attorney Work Product*

## Memorandum On Employee's Rights To Protect Information Within His or Her Possession

### 개인 근로자가 누리는 자기 소유 정보 보호 권리에 관련된 공문

**1.    Introduction**

**1.    서두**

Dongguk University ("Dongguk") has filed a lawsuit against Yale University ("Yale") in the United States District Court for the District of Connecticut, seeking damages for Yale's failure to provide accurate information to Dongguk and the media regarding verification of the academic credentials of Jeong Ah Shin, a then-faculty-member of Dongguk (the "Lawsuit").

동국대학교는 미국 코네티컷 주 연방법원에서 예일대학교를 대상으로 당시 예일대가 동국대학교 교수였던 신정아씨의 학력조회에 관해 동국대와 언론에 잘못된 정보를 제공한 것에 관해 피해보상을 요구하는 소송을 제기하였습니다 (이하 총칭하여 "소송").

Dongguk is required under U.S. law to produce Documents in its possession, custody, or control that are potentially relevant to the Lawsuit as long as those Documents are not subject to the attorney-client privilege or any other privilege recognized under U.S. law. Documents that must be produced typically include any and all relevant hard copy (*e.g.*, paper documents, handwritten notes, written telephone messages) and electronically stored information ("ESI") (*e.g.*, emails, instant messaging files, metadata, Excel or PowerPoint files, and voicemails) (collectively, "Documents").

동국대학교는 미국 법에 의하여 변호사-의뢰인 기밀유지 특권이나 다른 기밀유지 특권에 저촉되지 않는 이상 동국대학교가 소지, 보유 혹은 관리하고 있는 문서 중 본건 소송에 관련될 가능성이 있는 모든 문서를 제공해야 할 의무를 지니고 있습니다. 동국대학교가 제공해야 하는 "문서"에는 예컨대 종이에 프린트되거나 수필된 문서, 전화 통화 관련 메시지를 적은 노트와 같은 모든 관련 하드카피 문서를 비롯하여 이메일, 메신저 파일, 원시 데이터, 엑셀 파일, 파워포인트 파일, 음성사서함 파일 등과 같은 전자적으로 저장된 정보 (이하 총칭하여 "ESI 자료")가 모두 포함됩니다.

You have been identified as being someone that has sent, received, or stored information potentially relevant to the Lawsuit. Dongguk seeks your permission to access and/or obtain copies of those Documents for review and potential production to Yale for the purpose of this Lawsuit.

당신은 소송과 관련될 가능성이 있는 정보를 송신, 수신 혹은 저장한 적이 있는 사람으로 지목되었습니다. 동국대학교는 이에 따라 당신에게 이러한 문서를 열람하고 필요한 경우

*Privileged & Confidential*
*Attorney Work Product*

예일대학교에 소송목적으로 제공하기 위해 접근하여 수집 복사하는 것을 허락해주실 것을 부탁드립니다.

This memorandum summarizes your rights concerning Documents in your possession under Korean law.  This memorandum also explains the measures that will be taken in the Lawsuit to protect your privacy to the extent possible under U.S. law, should you consent to disclose any of your Documents to Dongguk for the purpose of this Lawsuit.

본 공문을 통해 저희는 당신이 소지하고 있는 문서에 대해 한국 법에 의하여 당신이 누리는 권한에 대해 요약설명하고, 만약 당신이 본 건 소송을 목적으로 하여 동국대학교에 문서를 공개하는 데에 동의할 경우 당신의 개인정보 보호를 위해 마련된 대책 방안에 대해 설명할 것입니다.

## 2.    **Your Rights Under Korean Law**

2.    한국법에 의한 당신의 권리

Under Article 3(1) of the Communications Privacy Protection Act, email messages and other electronic information in the course of transmission may not be wiretapped without your consent and the other party thereto. Under  Article 49 of the Act on Promotion of Use of Information and Communications Network and Protection of Information, etc., any Documents kept secret by you and of which transmission is completed may not be invaded, misappropriated or divulged without your consent.  Under Article 316(1) of the Criminal Act, the contents of special media records (such as, electronic documents, email, etc.) of which security is protected by means of passwords, ID, etc., may not be detected by use of any technical means without your consent.

한국 통신비밀보호법 제 3 조 제 1 항에 의거하여 송수신 중인 당신의 이메일 등은 귀하 및 상대방의 동의 없이는 그 누구도 감청할 수 없습니다. 또한 정보통신망 이용 촉진 및 정보보호 등에 관한 법률 제 49 조에 의하여 귀하가 보관하고 있는 송수신이 완료된 비밀서류는 귀하의 동의 없이는 침해, 도용, 누설될 수 없고, 패스워드, ID 등에 의하여 비밀장치되어 있는 특수매체기록(전자문서, 이메일 등 포함) 역시 형법 제 316 조 제 1 항에 의하여 귀하의 동의 없이는 그 누구도 기술적 수단을 이용하여 그 내용을 알아 낼 수 없습니다.

Unless you consent, no one may provide to a third party, or cause a third party to collect or use, your personal identifiable information (including your name, address, phone number, resident registration number, etc., or other personal information that enables to identify a specific person easily if combined with any other information) and your potentially sensitive personal information (e.g., grades, personal statements, recommendation letters, career history, information on illness/disease, etc.) (collectively, "Personal Information").

또한 귀하의 동의 없이는 그 누구도 귀하의 개인식별정보(이름, 주소, 전화번호, 주민등록번호 등 포함하며, 다른 정보와 용이하게 결합하여 개인을 식별할 수 있는 기타 개인정보 포함) 및 Documents 에 포함되어 있는 귀하의 민감한 사적인 정보(예컨대, 성적, 자기소개서, 추천서, 경력, 질병정보 등)(이하 총칭하여 " 개인정보" )를 제 3 자로 하여금 수집, 이용하도록 하거나, 제공할 수 없습니다.

In relation to the Lawsuit, Dongguk and its counsel will access, search, and potentially provide the Documents and Personal Information to Yale and/or the court for the purposes as set out in the Declaration of Consent, and you are being asked to waive all of your rights under the afore-mentioned laws and any other laws or legal principles for these limited purposes.

본건 소송과 관련해서 동국대학교와 그 변호인단은 첨부된 동의서에 기재된 목적 성취를 위해 당신의 문서와 개인정보에 접근하여 이를 검색하고 예일대학교 혹은 법원에 제공하게 될 것입니다. 이에 따라 동국대학교는 당신이 위 법 혹은 다른 법 상 내지 법 원칙상의 권리를 이러한 목적에 한해 철회할 것을 부탁 드립니다.

## 3.    Confidentiality Stipulation

If you decide to allow Dongguk to access Documents in your possession, custody or control, your Documents will be reviewed, produced, and used for the purpose of this Lawsuit.

만약 동국대학교에 당신이 소유, 보유 혹은 관리하는 문서에 접근하는 것을 허락하실 경우, 당신의 문서는 본건 소송을 목적으로 열람, 제공, 사용될 것입니다.

The parties to the Lawsuit have are negotiating a confidentiality stipulation that will limit the scope of disclosure of your Documents (the "Confidentiality Stipulation"). Under the Confidentiality Stipulation, the parties will be permitted to designate any Documents that contain proprietary information (such as trade secrets) or sensitive personal information (such as personal identification numbers) as "confidential." Information properly designated as "confidential" will be made available only to the parties, their counsel, or agents, and the court and its agents. Such Documents will not be made public and can be used only for the purpose of the Lawsuit. Documents that do not contain trade secrets or sensitive personal information (including information that is merely potentially embarrassing, damaging to one's reputation, or private) will not receive any confidentiality designation.

현재 본 소송 당사자들은 당신 문서의 공개 범위를 제한하는 기밀 유지 약정의 내용을 교섭 중에 있습니다. 본 기밀 유지 약정에 따르면 소송 당사자들은 업무 상의 비밀 등과 같은 동국대의 독점 소유 정보나 개인식별번호와 같은 민감한 개인정보가 포함되어 있는 문서는 모두 "비밀문서"로 지정할 수 있게 됩니다. "비밀문서"로 적합하게 지정된 정보는 소송 당사자, 변호인, 대리인 그리고 법원과 법원 대리인만이 볼 수 있습니다. 그러한 문서는 외부에 공개될 수 없으며

*Privileged & Confidential*
*Attorney Work Product*

소송목적에 한해서만 사용될 수 있습니다.  동국대의 독점 소유 정보와 민감한 개인정보가 포함되어 있지 않은 문서는 민망할 수 있는 내용이 있거나 명예훼손의 우려가 있거나 사적일 수 있는 내용이 담겨있다 하더라도 비밀문서로 지정될 수 없습니다.

# EXHIBIT E

4/15/2009

## Dongguk v. Yale: Proposed Search Term List for Dongguk's ESI

| English | Korean |
|---|---|
| "Shin Jeong Ah" or "Jeong Ah Shin" or "Shin Jeong-Ah" or "Jeong-Ah Shin"<br><br>"Jeong Ah" "or Jeong-Ah"<br><br>"Professor Shin"<br><br>shindarc@hanmail.net | 신정아<br><br>정아<br><br>신 교수<br><br>shindarc@hanmail.net |
| Yale | 예일 |
| Kansas | 캔자스 |
| Myoung Lee | 이명 |
| Schirmeister or Schirmeistr | 셔마이스터 |
| Carney | 카니 |
| Reinstein | 라인스틴 or 라인스타인 |
| Levin | 레빈 |
| Emerson | 에머슨 |
| Butler | 버틀러 |
| Barnaby | 바나비 |
| Mehring | 메링 |
| Ostroff | 오스트로프 |
| "Byeon Yang Kyun" or "Yang Kyun Byeon" or "Byeon Yang-Kyun" or "Yang-Kyun Byeon"<br><br>"Yang Kyun" or "Yang-Kyun" | 변양균<br><br>양균 |
| "Lim Yong Taek" or "Yong Taek Lim" or | 임용택 |

| | |
|---|---|
| "Lim Yong-Taek" or "Yong-Taek Lim" or "Im Yong-Taik" or "Yong-Taik Im"<br><br>"Yong Taek"or  "Yong-Taek" or "Yong-Taik" "Im Yong Taik" or "Yong Taik Im" or "Yong Taik"<br><br>"Young Bae" | 용택<br><br><br><br><br>영배 |
| "Hong Ki Sam" or "Ki Sam Hong" or "Hong Ki-Sam" or "Ki-Sam Hong"<br><br>"Ki Sam" or "Ki-Sam" | 홍기삼<br><br><br>기삼 |
| "Jang Yoon" or "Yoon Jang" or "Chang Yoon" or "Yoon Chang" | 장윤 |
| (degree or credential or Ph.D.) and (forge or forgery or fake or falsify or falsification) | (학위 or 학력 or 박사) and (위조 or 날조 or 허위 or 거짓) |
| (dissertation or thesis) and (plagiarize or plagiarism) | 논문 and 표절 |
| "Guillaume Apollinaire: Catalyst for Primitivism, for Picabia and Duchamp" | "기욤 아폴리네르:원시주의, 피카비아와 뒤샹을 위한 촉매"or "기욤 아폴리네르: 피카비아와 뒤샹을 위한 원시주의의 촉매" |