# EXHIBIT 1

# McDermott Will&Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Andrew B. Kratenstein
Attorney at Law
akratenstein@mwe.com
+1 212 547 5695

April 9, 2009

<u>VIA E-MAIL AND FIRST CLASS MAIL</u>

Howard Fetner, Esq.
Day Pitney LLP
242 Trumbull Street
Hartford, Connecticut 06103

Re:   <u>Dongguk University v. Yale University, Case No. 3:08-CV-0441 (RNC)</u>

Dear Howie:

I write to confirm the matters we discussed during our telephone conference on April 7, 2009.

### A.   Production Format

I proposed that the parties produce documents as they are kept in the ordinary course of business, rather than identify the range of documents responsive to each document request by production numbers. I noted that this will likely alleviate the logistical burden on both parties of categorizing the potentially large volume of documents to be produced in this case. You responded that, because most of the documents produced by Dongguk will likely be in Korean, it would greatly facilitate your review of Dongguk's documents if Dongguk identifies the substantive categories of documents in each production.

We therefore agreed to revisit this issue after the parties have collected their respective documents and ascertained how burdensome identifying documents by category will be. We also agreed to discuss exchanging custodian lists so that each party knows from which custodian's files the opposing party's documents were produced.

I requested that you produce Yale's documents as single-page TIFFs with an IPRO LFP and Concordance load file with boundaries and text or document-level text files. You agreed to investigate and inform me of whether you can comply with my request. I offered, to the extent possible, to produce Dongguk's documents in a format that was most convenient for Yale's review system. You agreed to investigate the issue and notify me of the document format that Yale prefers.

Howard Fetner, Esq.
April 9, 2009
Page 2

### B. Search of ESI

I suggested that the parties exchange proposed lists of search terms for the purpose of collecting and reviewing potentially responsive electronically stored information ("ESI"). We agreed that the parties will exchange proposed search term lists by April 15, 2009. Dongguk will provide Yale with the terms that Dongguk proposes using on Dongguk's ESI (with Korean translation) and Yale will propose a list of terms that it intends to use to search Yale's ESI. We will then negotiate over the lists and, after reaching agreement, run the search terms over our clients' respective ESI. If either party has a reason to believe based on the volume of "hits" that a particular term is generating too many false positives, it will advise the other side and attempt to negotiate a reasonable modification to the search term that results in fewer false positives.

### C. Timing of Written Discovery Responses

I advised you that Dongguk will submit written responses and objections to Yale's First Set of Requests for Production and Yale's First Set of Requests for Admission by April 17, 2009. I also stated that Dongguk will serve its responses and objections to Yale's First Set of Interrogatories by the end of April. You agreed to these dates, but requested that I advise you of Dongguk's objections to the interrogatories by April 17, 2009. I took your request under advisement and can now advise you that Dongguk will advise you of its objections to Yale's First Set of Interrogatories by April 17, 2009.

### D. Confidentiality Stipulation

We discussed the nine objections that you raised to Dongguk's draft Confidentiality Stipulation in your email of April 7, 2009.

First, you contended that "confidential information" as defined in Paragraph 1 of the Confidentiality Stipulation should not be limited to "business or financial information." I agreed to broaden definition to include any information that the designating party reasonably and in good faith believes is confidential and which it would not normally reveal to others or would require that others maintain in confidence.

Second, you requested that the permissive uses of "confidential" and "restricted confidential" documents as set forth in Paragraphs 4-5 of the Confidentiality Stipulation be extended to include settlement conferences and appeals. I agreed to modify those provisions as you requested.

Third, you asserted that the Confidentiality Stipulation should allow the parties to share "confidential" and "restricted confidential" documents with external translators. I agreed to include an explicit provision granting such permission.

Your fourth through seventh points all revolve around your objection to having a two-tier Confidentiality Stipulation. I informed you that Dongguk included a heightened level of

Howard Fetner, Esq.
April 9, 2009
Page 3

confidentiality — which is a common feature of confidentiality stipulations — because Yale had requested a vast array of documents containing potentially sensitive personal and/or financial information.

You asserted that Yale's in-house counsel and administrators must be able to review all of Dongguk's documents in order to prepare your case. I therefore proposed to modify the Confidentiality Stipulation to allow the parties' in-house counsel and a limited number of party representatives to review the documents at the office of the parties' outside counsel. You objected, insisting that this was too burdensome for your client.

We agreed to revisit this issue after we meet and confer over the scope of the parties' document requests. Once the parties have a better understanding of what documents they will be producing, we will be in a better position to determine how best to address each party's confidentiality concerns and the extent to which a heightened confidentiality tier is needed.

Eighth, you noted that it was impractical to require objections to confidentiality designations be made within 30 days after production of the confidential material because the length of time necessary for review depends on the volume of documents in each production and the language in which the documents are produced. I therefore agreed to modify the provision to give the parties a reasonable time in which to object.

Ninth, you argued that Yale's employees should not be required to sign an undertaking because you would be signing the Stipulation on behalf of Yale and its employees. Dongguk insists that such undertakings be signed because, for example, the Stipulation may cease to bind Yale's employees should their employment be terminated. We agreed to revisit this issue in connection with issues four through seven.

\* \* \*

Please let me know immediately if my summary of our discussion is inaccurate in any way.

Sincerely,

Andrew B. Kratenstein

cc: Felix Springer, Esq.
    Ira Grudberg, Esq.
    Robert A. Weiner, Esq.
    Jean Bae, Esq.