# EXHIBIT 4

## Weiner, Robert

| | |
|---|---|
| **From:** | Fetner, Howard [hfetner@daypitney.com] |
| **Sent:** | Thursday, April 23, 2009 3:44 PM |
| **To:** | Kratenstein, Andrew |
| **Cc:** | Weiner, Robert; Bae, Jean; Springer, Felix J.; igrudberg@jacobslaw.com |
| **Subject:** | RE: ESI Search Terms |

Andrew,

We appreciate the value of a cooperative discovery process, but we are nevertheless not entirely comfortable with the approach that you have proposed.

With respect to Yale's ESI, search terms only go so far. Like most U.S. universities, Yale has a highly distributed computer system, using various operating systems, e-mail programs, and back-up systems. Individual custodians have their own habits for creating, organizing, and storing documents. This is not an environment that is conducive to a one-size-fits-all search method or a centralized electronic keyword search. We have already instructed all custodians who might have ESI relevant to this case to gather all of that information and provide it to us. Since the individual custodians know their own documents best, we left it up to each custodian to apply the search method that was most likely to uncover all potentially relevant ESI. Because of Yale's highly distributed environment and because the Shin matter involved a relatively brief period of time and an unusual set of circumstances, we believe that this was the most reasonable approach.

With respect to Dongguk's ESI, we are obviously at somewhat of a loss. We don't know anything about Dongguk's computer systems, the types of ESI it possesses, the people who created those documents, the manner in which those documents are stored, or how Dongguk searches for ESI. Therefore, it is difficult to offer meaningful insight into how Dongguk could best locate ESI responsive to Yale's requests. Toward that end, while the search terms you have proposed do not appear designed to locate ESI responsive to Yale's Requests for Production 1-11, 15, 17, 40-41, 48-67, 70-72, 77, 89, 91, 93, 95-97, 99-101, 105, or 114, we are not in the best position to determine how Dongguk might locate such ESI. Based on your superior knowledge, you are in a much better position to do that than we are, and it makes far more sense for you to identify search terms -- or other methodologies -- designed to locate those documents. We expect Dongguk to use its best efforts to locate responsive documents and ESI, and we don't think that simply agreeing to lists of search terms is the best way to do that.

There are also a couple of other discovery-related issues I'd like to address. In reviewing Dongguk's objections to Yale's written discovery requests, we see that Dongguk has objected to many interrogatories and requests for production on the basis of "the privacy laws of the Republic of Korea." Could you send us copies of the privacy laws on which these objections are based? Do you intend to withhold information and documents on the basis of the Korean privacy laws, or will the implementation of a protective order suffice?

As to the protective order, when I last spoke to Jean on the subject she said that Dongguk would agree to a one-tiered confidentiality system, provided that every Yale employee who views documents that Dongguk designates as confidential signs a stipulation agreeing to abide by the terms of the protective order. We cannot agree to that. As I told you when we spoke several weeks ago, an attorney's signing the protective order on behalf of a client should suffice to ensure that the client's employees abide by the order. If you disagree, we would be willing to include in the protective order language requiring counsel for both parties to instruct any employees of their respective clients who view confidential documents to abide by the protective order.

We are, of course, happy to discuss these issues further in order to arrive at the most efficient means of completing discovery.

Howie

-----Original Message-----
**From:** Kratenstein, Andrew [mailto:AKratenstein@mwe.com]
**Sent:** Friday, April 17, 2009 1:15 PM
**To:** Fetner, Howard

1

**Cc:** Weiner, Robert; Bae, Jean; Springer, Felix J.; igrudberg@jacobslaw.com
**Subject:** ESI Search Terms

Howie,

We are reviewing your proposed search term list for Yale's ESI and assume you are doing the same for the search term lists that we proposed for Dongguk's ESI. When do you think you will be in position to exchange proposed revisions to each other's lists?

We have also been thinking more about logistics. It seems to us that, in order to make sure that both side's ESI searches are sufficient, it may be helpful to review each other's hard copy documents because the hard copy documents may lead us to alter our respective search terms. However, we also don't want to delay ESI searches and productions.

So we think the most sensible approach is to: (i) agree on our respective initial search term lists; (ii) run the search terms and, if there are too many false positives for particular terms, negotiate reasonable modifications that result in fewer false positives; (iii) review and produce the responsive, non-privileged ESI; and (iv) reserve the right to make reasonable additions or amendments to the opposing party's search terms based on subsequently discovered information, the opposing party would run the supplemental search terms and then makes a supplemental ESI production.

What do you think?

Andrew


Andrew B. Kratenstein
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173-1922
Phone: (212) 547-5695
Fax: (212) 547-5444

****************************************************************************************************
IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
****************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.