# EXHIBIT 6

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Jean Bae
Associate
jbae@mwe.com
+1 212 547 5754

May 5, 2009

**VIA E-MAIL AND FIRST CLASS MAIL**

Howard Fetner, Esq.
Day Pitney LLP
242 Trumbull Street
Hartford, Connecticut 06103
hfetner@daypitney.com

Re:   <u>Dongguk University v. Yale University, Case No. 3:08-CV-0441 (RNC)</u>

Dear Howie:

I write to confirm the matters we discussed during our telephone conference on May 1, 2009.

A.  **Search and Collection of Electronically Stored Information ("ESI")**

In your e-mail of April 23, 2009, you opposed using search term lists for all custodians and instead suggested that each party follow its own protocol that is customized to each custodian's circumstances. The parties agreed to follow that approach, provided that (i) the parties use their reasonable efforts in searching and collecting all responsive ESI, and (ii) the parties reserve the right to revisit the issues concerning the ESI collection protocol after reviewing the ESI and other documents produced by the opposing party.

In addition, you mentioned that Yale does not intend to run search terms over all of its custodians' ESI and that, in certain cases, Yale plans to rely on each custodian to search and gather his or her own relevant ESI. I am concerned that this approach is insufficient because a custodian may not properly segregate all responsive documents. We request that Yale run search terms over each and every custodian's e-mail account and other local or network locations reasonably likely to contain responsive ESI. This would allow Yale to ensure that it identifies all potentially responsive ESI and hopefully avoid future disputes over the completeness of Yale's ESI search. Please let me know if you will comply with our request.

During the call, Andrew Kratenstein asked you to provide any comments on Dongguk's list of search terms. You noted that Jeong Ah Shin's last name was not included as a separate search term. I explained that this was because "Shin" is a very common last name in Korea and therefore would have generated too many false positives. I further clarified that Korean people typically refer to people by their entire name and would not likely refer to someone merely by

Howard Fetner, Esq.
May 5, 2009
Page 2

last name without a title such as "professor." If you have any further comments on Dongguk's search term list, please let me know as soon as possible, as we intend to begin running the search terms next week, and as Andrew advised you, we do not intend to incur the burden and expense of re-running searches.

Attached to this letter is a list of our comments and suggestions on Yale's ESI search terms (see Exhibit A). Please let us know if you have any questions or concerns about the list, and whether you will implement our suggestions.

### B. Korean Privacy Law Issues

You requested in your April 23 e-mail that Dongguk explain whether it intends to withhold information and/or documents on the basis of Korean privacy laws. During our call on May 1, 2009, Bob Weiner and I explained the specific issues concerning Korean privacy laws that may arise out of the discovery requests made by Yale. Specifically:

- <u>Document Requests or Interrogatories Requesting That Dongguk "Identify" Individuals</u>: You clarified that, to the extent that Dongguk identifies the names and departments of the individuals at issue, Yale does not seek the production of personal information of individuals, such as their addresses and phone numbers. Based on your clarification, Bob said that the Korean privacy law issues likely would be obviated.

- <u>Document Requests No. 16 and 17</u>: Bob noted that Dongguk was still in the process of determining whether there are any documents that are potentially responsive to these requests. The parties agreed to revisit the issue if Dongguk finds any responsive documents and Korean privacy laws become an issue in producing those documents.

- <u>Document Requests No. 50, 51, 52, 53, 54, 56, 59, 60, 61 and 62</u>: You stated that, to the extent that Dongguk produces documents that provide the statistical data requested by Yale, Yale does not intend to seek the production of documents pertaining to each individual's personal information, such as student application forms, Dongguk's admission or rejection letters, and job offer letters received by the students. Based on your clarification, Bob stated that the Korean privacy law issues likely would be obviated.

- <u>Document Requests No. 55 and 58</u>: Bob raised concerns that Korean privacy laws may preclude Dongguk from producing letters or other types of documents submitted by individual students or faculty members under Korean privacy laws. You proposed that Dongguk redact from those documents any personal information that is protected under Korean privacy laws. Bob agreed to discuss the possibility with Dongguk's Korean counsel during Bob's trip to Korea next week.

Howard Fetner, Esq.
May 5, 2009
Page 3

- <u>Document Request No. 75</u>: You clarified that "documents that Euiyon Cho received on June 4, 2007" refer only to the documents specified in Paragraph 67 of the Complaint. Based on your clarification, Bob stated that the Korean privacy law issues likely would be obviated.

- <u>Document Request No. 9</u>: To the extent that Request No. 9, as well as any other requests, cover individual faculty members' e-mails and other personal communications, Bob and Andrew explained that Korean privacy laws prohibit anyone, including an individual's employer, from accessing that individual's ESI without the individual's consent, regardless of who owns the storage or electronic database in which the ESI resides. They further explained that, while Dongguk is attempting to obtain consent from each potential custodian, Dongguk will likely be precluded from collecting ESI in the possession of the individuals who refuse to sign the consent forms. The parties agreed to revisit the issue after Dongguk collects the consent forms and determines how many potential custodians refuse to consent.

- <u>Document Requests No. 71 and 72</u>: Bob explained that Dongguk may not be able to produce the resumes received from individuals without their consent under Korean privacy laws. Bob further noted the practical difficulty of obtaining consents from these individuals, because many of them were not hired by the university and will be difficult to locate. Bob suggested that Yale limit the scope of Request No. 72 to only those individuals who applied for the same position as Jeong Ah Shin's. You agreed to consider Bob's suggestion and advise him of your position before his trip to Korea on May 8, 2009.

- <u>Document Request No. 15</u>: Bob objected to Request No. 5 on the ground that it was overbroad and unduly burdensome and on the ground that such documents will likely contain sensitive personal information of individual employees, students and faculty members. You explained that this request is intended to determine whether there have been any prosecutor's investigation of Dongguk other than the one relating to Shin. You claimed that, to the extent such investigation exists, it would negate Dongguk's argument that the prosecutor's investigation in connection with the Shin incident had a negative impact on Dongguk's reputation. Bob suggested that Yale limit the scope of the request to public proceedings, because only those proceedings would likely have had any impact on Dongguk's reputation. You agreed to consider Bob's suggestion and let him know of your position before his trip to Korea on May 8, 2009.

C. **Confidentiality Stipulation**

In your April 23 e-mail, you objected to Dongguk's proposal that every individual employee who has access to any document that the opposing party designates as Confidential sign an undertaking agreeing to abide by the Confidentiality Stipulation ("Stipulation"). You asserted that Yale's counsel will be signing the Stipulation on behalf of Yale and its employees

Howard Fetner, Esq.
May 5, 2009
Page 4

and that counsel's instruction to Yale's individual employees will be sufficient to protect Dongguk's Confidential information. You further argued that such protection was unnecessary in this case because it does not involve trade secrets.

Bob explained that individual employees must be required to sign undertakings so that they can be held personally responsible in the event that they breach the Stipulation. Bob further explained that, by signing an undertaking, the individual employee who had access to information designated as Confidential will be bound even after the employee is no longer employed by Yale.

Bob also stated that Yale did not have to identify the individuals who signed undertakings. Bob noted, however, that, in the event that the Stipulation was breached and the need for investigation arose, he would then seek to determine which employee violated the terms of the Stipulation.

You agreed to discuss this issue with your client and get back to me. If possible, please advise us of your position by the end of this week so that we can discuss this matter with our client.

### D. Deposition Scheduling

We agreed to discuss the deposition schedule during the next meet and confer.

Please let me know immediately if my summary of our discussion is inaccurate in any way.

Sincerely,

Jin Yung Bae

cc: Felix Springer, Esq.
    Ira Grudberg, Esq.
    Robert A. Weiner, Esq.

## Dongguk's Suggestions to Yale's ESI Search Term List as of May 5, 2009[1]

- Dongguk
- Shin
- **"Jeong Ah"**
- **"Jeong-Ah"**
- shindarc@hanmail.net
- **Guillaume Apollinaire**
- **Catalyst for Primitivism**
- Youngkyo
- **"President Oh"**
- Myoung
- **"Professor Lee"**
- **"Mr. Lee"**
- **"Hyung Taik"**
- Ahn
- Euiyon
- Cho
- Chosun
- Donga
- Hankook
- JoongAng
- joins.com
- Maeil
- mk.co.kr
- **Munhwa**
- **MBC**
- Byeon
- **"Yang Kyun"**
- **"Yang-kyun"**
- Lim
- **"Yong Taek"**
- **"Yong-Taek"**
- Seoul
- Korea
- investigation and date (September 2005)
- investigation and date (June 2007- January 2008)
- investigate and date (September 2005)
- investigate and date (June 2007-January 2008)
- prosecutor and date (September 2007- January 2008)
- prosecution and date (September 2007- January 2008)
- subpoena and date (September 2007- January 2008)
- (degree or credential or Ph.D.) and (forge or forgery or fake or falsify or falsification)
- **"Hurricane Katrina"**

---

[1] The phrases in bold are the search terms that Dongguk suggest be added or modified.