# EXHIBIT 14

# ♆ DAY PITNEY LLP

BOSTON   CONNECTICUT   NEW JERSEY   NEW YORK   WASHINGTON, DC

**HOWARD FETNER**
Attorney at Law

One Audubon Street
New Haven, CT  06511
T: (203) 752 5012 F: (203) 752 5001
hfetner@daypitney.com

August 26, 2009

<u>VIA E-MAIL AND OVERNIGHT DELIVERY</u>

Robert A. Weiner, Esq.
McDermott Will & Emery
340 Madison Avenue
New York, NY 10173

Re:   <u>Dongguk University v. Yale University, No. 3:08-CV-00441 (RNC)</u>

Dear Bob:

    This letter replies to your letter of August 6, 2009 and further addresses the many deficiencies in Dongguk's responses to Yale's First Set of Requests for Production. Once you have had an opportunity to review this letter, we would be happy to discuss any outstanding issues in a meet and confer.

**I.     <u>Dongguk's Responses to Yale's Interrogatories</u>**

**<u>Interrogatory 1</u>**

    You *still* have not answered the simple, straightforward question that I asked in my June 12 and July 8 letters to Jean Bae: has Dongguk either sought or obtained information and documents from the Dongguk University Foundation? In any event, as explained in my July 8 letter, Dongguk's obligation to obtain such information and documents could not be clearer. Your refusal to state whether you have even attempted to satisfy this fundamental obligation of all parties to United States District Court litigation compels the conclusion that you have not done so.

**<u>Interrogatory 5</u>**

    You *still* have not answered the question asked in my June 12 and July 8 letters to Jean Bae: before March 2006, what efforts had Dongguk made to obtain Jeong Ah Shin's transcripts? In your August 6 letter, you assert that Dongguk's original answer to Interrogatory 5 stated that "as part of the hiring process, Dongguk requested that Shin submit her transcripts, and continued to do so." Dongguk's answer to Interrogatory 5, however, did not state that. If Dongguk in fact

# ▉ DAY PITNEY LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 2

requested that Shin submit her transcripts as part of the hiring process, please supplement your response to Interrogatory 5 to so state. In addition, please supplement your response to Interrogatory 5 to identify all persons who requested that Shin submit her transcripts, the dates of all such requests, the form of all such requests, and the content of all such requests.

### Interrogatories 7 and 21

You *still* have not answered the simple, straightforward questions that I asked in my June 12 and July 8 letters to Jean Bae: does Dongguk have any information concerning Shin's tendered resignation; and has Dongguk either sought or obtained information and documents from Ki Sam Hong? In any event, as explained in my July 8 letter, Dongguk's obligation to obtain such information and documents could not be clearer. In addition to Ki Sam Hong, you also have not indicated whether you have obtained relevant information and documents from the many other individuals who also testified under oath to the Korean prosecutors that they have knowledge of Shin's tendered 2005 resignation: Euiyon Cho, Hyung Taik Ahn, Soon Sik Cho, Cho Kyung Im, and Jong Yeon Hwang. Your failure to obtain basic information and documents from numerous Dongguk witnesses raises serious questions about Dongguk's willingness to comply with the basic rules that apply to all parties to litigation in the United States.

### Interrogatories 11 and 14

You still have not explained your objections to these Interrogatories. We will discuss them in a meet and confer.

### Interrogatory 15

You *still* have not answered this Interrogatory, to which you have interposed no specific objection. In your Complaint, you allege the following: "Further, as a direct result of the public criticism aimed at Dongguk University by reason of Yale University's public misstatements, Dongguk University was humiliated and shamed and, as a consequence, several of its personnel lost their positions." (Compl. ¶ 170.) Interrogatory 15 asks you to identify all of the people to whom Paragraph 170 refers. Your continued failure to identify any such people demonstrates that, contrary to Paragraph 170 of the Complaint, no Dongguk personnel lost their positions.[1] Please supplement your response to Interrogatory 5 accordingly.

### Interrogatories 23-24

---

[1] By your own admission, Ki Sam Hong did not lose his position as alleged in Paragraph 170, since he retains his "professor emeritus" title, and you contend that, at the relevant time, Mr. Hong was not even an employee of Dongguk University.

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 3

You *still* have not answered these crucial Interrogatories. As explained in my July 8 letter, Audrey Lu's June 25 letter did not provide the information requested in Interrogatories 23 and 24. In any event, even if Ms. Lu's June 25 letter had complied with Dongguk's obligation to identify the documents it produced, that letter still would not suffice to answer Interrogatories 23 and 24. "The interrogatories seek facts, not documents or tangible objects, and the proper form of response is a narrative answer, not a reference to documents or objects where the answers might be found." Lagace v. New England Cent. R.R., No. 3:06CV1317, 2007 U.S. Dist. LEXIS 72540, at *18 (D. Conn. Sept. 28, 2007) (citation and quotation marks omitted); see also, e.g., New Colt Holding Corp. v. RJG Holdings of Fla., No. 3:02cv173, 2003 U.S. Dist. LEXIS 18039 at *5 n.2 (D. Conn. June 16, 2003) ("A party may not simply point to prior production and refuse to answer a discovery request absent some showing that identified prior production identifies the responsive information.").[2] If you do not respond in full to Interrogatories 23 and 24, providing all of the information requested in both Interrogatories, we will have to raise these issues with the Court.

### Interrogatories 3, 4, 5, 6, 8, 10, 15, 17, and 18

You have not supplemented Dongguk's responses to these Interrogatories to identify the addresses of all individuals identified. Since Judge Chatigny entered the parties' agreed-upon protective order on July 23, there is a court-ordered mechanism in place to protect the confidentiality of information that requires such protection, and no basis for Dongguk's refusing to provide information on the basis of "privacy" concerns. Please supplement Dongguk's Interrogatory responses to identify the addresses of all individuals identified.

### II.    Dongguk's Responses to Yale's Requests to Admit

### Requests to Admit 24-26

As I explained in my July 2 letter to Jean Bae, Dongguk must have knowledge of the criminal convictions of its Board Chairman, its professor, and their co-defendant. It appears that we will have to raise these issues with the Court.

---

[2] Federal Rule of Civil Procedure 33(d) does not apply here because nearly all of the relevant documents are in Korean, and therefore "the burden of deriving or ascertaining the answer" would not "be substantially the same for either party." Fed. R. Civ. P. 33(d). In any event, even if Rule 33(d) did apply, which, to reiterate, it does not here, you have not complied with that Rule because you have not "specif[ied]" the relevant documents "in sufficient detail." Fed. R. Civ. P. 33(d)(1).

**DAY PITNEY** ᴸᴸᴾ

Robert A. Weiner, Esq.
August 26, 2009
Page 4

### III.   Dongguk's Responses to Yale's Requests for Production

#### Dongguk's Responses Generally

Before addressing the many particular deficiencies with Dongguk's responses to Yale's
First Set of Requests for Production, I would like to address several general problems that
pervade Dongguk's responses.

First, with few exceptions, you have not identified which of the hundreds of thousands of
pages of documents that you have produced are responsive to which of Yale's Requests for
Production. This failure is particularly consequential because nearly all of the documents that
you have produced are in Korean. As you know, since nearly all of the documents that you have
produced are in Korean, it is extremely burdensome for us to determine what each document is.
For that reason, we requested that you identify which documents respond to which Requests, and
you agreed to do so. You have not lived up to your agreement, or, indeed, to your obligation
under the Federal Rules of Civil Procedure.

For example, in your first document production, you described the same thousands of
pages of documents as responsive to 24 different Requests for Production. (Letter from Lu to
Fetner of 6/25/09 at 1.) Having reviewed these documents, we can confirm our initial suspicion
that they are not all responsive to all 24 Requests that you identified. Similarly, in your second
document production, you described the same thousands of pages of documents as responsive to
25 different Requests for a wide variety of documents on many different subjects. (Letter from
Kelley to Fetner of 7/24/09 at 1.) While we have not yet been able to review all of these
documents, it is apparent that all of the identified documents do not respond to all of the
identified Requests for Production. To take just one example of many, the document numbered
DONGGUK0073953, which describes a 1999 interview for a position at the nursing school,
clearly is not responsive to Request 19 ("All documents concerning Jeong Ah Shin's temporary
leave of absence from Dongguk University in 2005."), Request 20 ("All documents concerning
Jeong Ah Shin's resignation from Dongguk University in 2007."), or any other identified
Request. Indeed, as discussed in more detail below, a great many of the documents that you
have produced do not appear to respond to *any* of the identified Requests for Production, and
appear to be irrelevant to this case altogether. To be sure, the examples discussed in this
paragraph are merely examples; the same deficiency pervades nearly your entire document
production to date.

Second, as discussed above, Dongguk's responses to Yale's Interrogatories and Requests
for Production demonstrate that Dongguk has not obtained, or apparently even sought, relevant
documents from numerous sources, including but by no means limited to Ki Sam Hong and
Dongguk's Board of Directors. Having invoked the jurisdiction of the United States District

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 5

Court for the District of Connecticut, Dongguk must comply with that court's discovery rules. Dongguk's responses and objections raise serious questions about its willingness to do so.

Third, although you have had Yale's First Set of Requests for Production for nearly six months, you still have not produced any documents in response to many of Yale's Requests, despite having indicated an intention to do so, nor have you offered any explanation for your failure to respond to these Requests. The particular Requests are identified below.

Fourth, your responses to many other Requests, to which you have responded in part, are clearly inadequate. That is, many obviously relevant and responsive documents are simply absent from your production, without any explanation. The particular Requests are identified below.

Fifth, your invocation of "Korean privacy laws" in response to many of Yale's Requests is troubling. During our May 1 telephone conversation, you said that, in light of "Korean privacy laws," Dongguk might not obtain and produce relevant e-mails and other documents from many of its faculty members, other employees, and applicants for faculty positions. You said that you would attempt to avoid this obvious problem by obtaining consent from all relevant people, and that you would let us know if any custodians of potentially relevant information or documents refused to give their consent. You have not done so. In order to determine whether you have searched and produced relevant documents from all potential custodians, please identify, as soon as possible: (a) every person from whom you have sought consent; (b) every person who provided consent; and (c) every person who did not provide consent.

Sixth, it is apparent from even the preliminary review that we have been able to conduct so far that many of the documents you have produced are irrelevant to this case and do not respond to any of Yale's Requests for Production. For example, contrary to the assertion in Nathanael Kelley's July 24, 2009 letter that all of the documents within the range DONGGUK0072849A – DONGGUK0084100 are responsive to 25 different Requests for Production, those documents – more than 11,000 pages' worth – are not responsive to *any* of the listed Requests. For example, none of those 11,000 pages of documents relate to Jeong Ah Shin's temporary leave of absence (Request 19), resignation (Request 20), or documents that Dongguk received from Shin on July 18, 2007 (Request 21). Instead, these thousands of documents all seem to relate to Dongguk's hiring of various individuals with no connection whatsoever to this case, going back more than a decade. These documents certainly do not respond to Requests for Production 53 and 54, which requested only documents concerning the *numbers* of people who applied for faculty positions and accepted or rejected Dongguk's offers of faculty positions. When we spoke on May 1, I told you that Requests for Production 53 and 54 did not seek documents such as the thousands you have produced, and Jean Bae acknowledged as much in her May 5 letter to me. The many thousands of unresponsive and irrelevant documents that you have produced make it all the more essential that you identify the particular Requests for Production to which you contend each document responds.

# DAY PITNEY LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 6

Seventh, and finally, as required by D. Conn. L. Civ. R. 26(e), please produce a log of all documents withheld or redacted based on any claim of privilege or work product protection.

## Requests for Production 7, 16-17, 31, 39, 75-76, 97, 101-02, 106, 110, 114-15

Although you stated that you would produce documents responsive to these Requests, you have not done so. Please respond in full to Yale's First Set of Requests for Production as soon as possible.

## Requests for Production 3-4, 8-10, 13, 19-26, 35, 38, 42, 50-54, 63-66, 70-74, 95, 98-100, 103, 107-08

We are still reviewing the documents that you produced on July 24, ostensibly in response to these Requests. We will reserve comment on that production until our review is complete.

## Requests for Production 1-2, 5-6, 67, 105

We have not yet been able to review the documents that you produced on August 18, ostensibly in response to these and other Requests. We will reserve comment on that production until our review is complete.

## Requests for Production 11-12, 14, 32, 46, 77[3]

Your responses to these Requests stated that you were "in the process of determining whether there are documents responsive to [these] Document Request[s] in the possession of a third party" and that you would produce responsive documents if you can obtain them from the third party. You have not produced any documents responsive to these Requests, you have not stated whether Dongguk has any responsive documents, you have not stated whether "third parties" have any responsive documents, you have not stated whether Dongguk is able to obtain documents from "third parties," and you have not explained who the relevant "third parties" are or why Dongguk would be unable to obtain documents from them. Based on the substance of these Requests, it appears that responsive documents must be in the possession of Dongguk's

---

[3] In Dongguk's April 17, 2009 Response to Request 77, you stated that "no [July 2, 2007] press conference was held by Dongguk University," that "Dongguk does not have any documents responsive to this Document Request," and that Dongguk was "in the process of determining whether there are documents responsive to this Document Request in the possession of a third party," yet Audrey Lu's June 25 letter stated that Dongguk was producing thousands of pages of documents responsive to this Request. Having reviewed those documents, it is apparent that they do not respond to this Request.

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 7

own Board of Directors and the Dongguk University Professors' Association, not any "third party." Please produce and identify all responsive documents as soon as possible.

### Request for Production 15

You have not produced any documents responsive to this Request, and your objections clearly lack merit. Since Dongguk's Complaint put its alleged 100-year reputation for "morality" at issue (see, e.g., Compl. ¶ 159), Yale is entitled to obtain discovery concerning that alleged reputation, including whether legal, regulatory, or administrative proceedings may have damaged Dongguk's alleged reputation. In a May 1 telephone conference, you acknowledged the relevance of this Request, and asked that we limit its scope to proceedings that could have impacted Dongguk's reputation. In a subsequent letter to Jean Bae, I agreed to limit Request 15 to documents that could have impacted Dongguk's reputation, but I explained that I saw no basis for distinguishing proceedings that could have impacted Dongguk's reputation from those that could not have done so. I asked Jean to provide a basis for such a distinction if she was able to do so, but she never responded. Since the documents sought by this Request are undoubtedly discoverable, please produce and identify all responsive documents as soon as possible.

### Request for Production 18

As explained in the context of Dongguk's responses to Interrogatories 7 and 21 above, numerous Dongguk witnesses have knowledge of the resignation that Jeong Ah Shin tendered in 2005, and have acknowledged as much in sworn statements to Korean prosecutors. These witnesses include, at a minimum, Ki Sam Hong, Euiyon Cho, Hyung Taik Ahn, Soon Sik Cho, Cho Kyung Im, and Jong Yeon Hwang. Your failure to obtain documents from these witnesses raises serious questions about Dongguk's willingness to comply with the basic rules that apply to all parties to United States District Court litigation. Please produce and identify all responsive documents as soon as possible.

### Request for Production 23

In Dongguk's April 17, 2009 Responses and Objections to Yale's First Set of Requests for Production, you stated that Dongguk "does not have any documents responsive to this Document Request," yet Nathanael Kelley's July 24 letter stated that Dongguk was producing many thousands of pages of documents responsive to this Request. Please explain the discrepancy between Dongguk's Responses and Objections and Mr. Kelley's letter.

### Request for Production 28

In Dongguk's April 17, 2009 Response to this Request, you stated that Dongguk "will identify the bates numbers of [all responsive, non-privileged] documents at the time of production," yet you have not done so. Instead, you merely stated that documents responsive to

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 8

this Request could be found somewhere among thousands of pages of documents responsive to
23 other Requests. While Dongguk's failure to identify the documents responsive to many of
Yale's Requests for Production is problematic, Dongguk's failure to identify the documents
responsive to this Request is particularly significant. As you know, Dongguk's allegation that
Yale made false statements about Dongguk is at the heart of this case. In order to defend
Dongguk's claims, which are based on that allegation, Yale needs to know which documents
Dongguk contends support that allegation. As you agreed to do, please identify all documents
responsive to this Request.

### Request for Production 30

In Dongguk's April 17, 2009 Response to this Request, you stated that Dongguk "will
identify the bates numbers of [all responsive, non-privileged] documents at the time of
production," yet you have not done so. Instead, you merely stated that documents responsive to
this Request could be found somewhere among thousands of pages of documents responsive to
23 other Requests. While Dongguk's failure to identify the documents responsive to many of
Yale's Requests for Production is problematic, Dongguk's failure to identify the documents
responsive to this Request is particularly significant. As you know, Dongguk's allegation that
various media reported that Dongguk had failed to verify Shin's credentials is at the heart of this
case. In order to defend Dongguk's claims, which are based on that allegation, Yale needs to
know which documents Dongguk contends support that allegation. As you agreed to do, please
identify all documents responsive to this Request.

### Requests for Production 33 and 34

You have objected to these Requests, and apparently have not produced any responsive
documents. In light of Dongguk's many allegations about its communications with Yale, and the
similar importance of any communications between Dongguk and the University of Kansas,
from which Jeong Ah Shin claimed to have received two degrees, Dongguk's objections to these
Requests are clearly unwarranted. Please produce and identify all documents responsive to these
Requests as soon as possible.

### Request for Production 41

You have not produced any documents responsive to this Request, and your objections
clearly lack merit. Since Dongguk's Complaint put its alleged 100-year reputation for
"morality" at issue (see, e.g., Compl. ¶ 159), Yale is entitled to obtain discovery concerning that
alleged reputation, including whether criminal investigations or criminal charges may have
damaged Dongguk's alleged reputation. Since the documents sought by this Request are
undoubtedly discoverable, please produce and identify all responsive documents as soon as
possible.

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 9

### Requests for Production 43 and 44

Dongguk's objections to these Requests clearly lack merit. Since Dongguk's Complaint put its alleged 100-year reputation for "morality" at issue (see, e.g., Compl. ¶ 159), Yale is entitled to obtain discovery concerning that alleged reputation, including documents concerning the criminal case that culminated in the convictions of a Dongguk professor and the Chairman of Dongguk's Board. In light of the many Dongguk witnesses who provided evidence to the prosecutors and testified in that case, and in light of the fact that Dongguk's own Chairman of the Board was a party to the proceeding, your assertion that Dongguk "does not have any documents" responsive to these Requests raises serious questions about Dongguk's willingness to comply with the basic rules that apply to all parties to United States District Court litigation. Please produce and identify all responsive documents as soon as possible.

### Request for Production 55

Your response to this Request, which seeks all documents concerning students' satisfaction with Dongguk since 1998, is incomplete. While you have produced some documents concerning students' satisfaction with Dongguk for 2007 and 2008, you have not produced any documents concerning students' satisfaction with Dongguk for 1998-2006 or 2009. Please produce and identify all responsive documents as soon as possible.

### Request for Production 56

Your response to this Request, which seeks all documents concerning the employment opportunities available to Dongguk students since 1998, is incomplete. You have not produced any documents concerning undergraduates' job placement rates for 1998-2001, 2004, or 2009; you have not produced any documents concerning graduate students' job placement rates for 1998-2004 or 2007-2009; and you have not produced other recruiting-related documents for 1998-2004 or 2009. Please produce and identify all responsive documents as soon as possible.

### Request for Production 57

Your response to this Request, which seeks all documents concerning job fairs conducted by Dongguk since 1998, is incomplete. You have not produced any documents concerning any job fairs conducted by Dongguk in 1998-2007 or 2009. Please produce and identify all responsive documents as soon as possible.

### Request for Production 58

Your response to this Request, which seeks all documents concerning faculty members' perceptions of Dongguk since 1998, is incomplete. You have not produced any documents

**DAY PITNEY LLP**

Robert A. Weiner, Esq.
August 26, 2009
Page 10

concerning faculty members' perceptions of Dongguk for 1998-2006 or 2009. Please produce and identify all responsive documents as soon as possible.

### Request for Production 59

Your response to this Request, which seeks all documents concerning any donations, gifts, or bequests to Dongguk concerning cultural academic offerings, art history academic offerings, or Jeong Ah Shin since 1998, is incomplete. You have not produced any documents concerning any donations, gifts of bequests to Dongguk for 2007-2009. Please produce and identify all responsive documents as soon as possible.

### Request for Production 60-62

Your responses to these Requests, which seek all documents concerning the number or amount of alumni, corporate, and other donations to Dongguk since 1998, are incomplete. You have not produced any documents concerning donations to Dongguk for 2007-2009. Please produce and identify all responsive documents as soon as possible.

### Request for Production 99

We are still reviewing the documents that you produced on July 24 and will reserve comment on that production until our review is complete. We have reviewed the documents that you produced on June 25, however, and they are grossly inadequate. While that production included various documents concerning Dongguk's public relations or marketing activities prior to 2007, it included no documents concerning Dongguk's public relations or marketing activities since 2007, the period for which such activities would be most significant to this lawsuit.

### Requests for Production 109 and 111

We will discuss these Requests in a meet and confer in conjunction with our discussion of Interrogatories 11 and 14.

### Request for Production 113

Please see the discussion of Interrogatories 7 and 21 above.

IV.    **Yale's Responses to Dongguk's Interrogatories**

**Interrogatories 1-2**

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 11

As explained in my July 8 letter to Jean Bae, Yale's response to Interrogatory 1 includes all requested information, and Interrogatory 3 includes additional information that Jean requested in her June 29 letter to me (which Interrogatory 1 did not even request).

As I also explained in my July 8 letter to Jean, any request for information concerning schools other than the Graduate School of Arts and Sciences ("GSAS") is both irrelevant and unduly burdensome. Your contention that Dongguk's breach of contract claim is based on the conduct and practices of schools other than GSAS is untrue, as the only "breach" that Dongguk has alleged is "sending Dongguk University the September 22 Fax." (See Compl. ¶¶ 195, 63 (alleging that Associate Dean of GSAS sent September 22 Fax).) Moreover, your contention that the scope of discovery on Dongguk's breach of contract claim is broader than the scope of discovery on Dongguk's other claims is belied by Dongguk's own admission, while opposing Yale's motion to stay discovery, that the scope of discovery would be the same on each of Dongguk's claims. (See Surreply Mem. in Opp'n to Mot. to Stay Discovery at 3 ("the same discovery is needed for each of the four claims").)

**Interrogatories 4 and 6**

You have not explained why the additional information that you seek is reasonably calculated to lead to the discovery of admissible evidence, nor have you explained what purpose would be served by requiring Yale to incur the burden of providing that information. Moreover, in addition to being irrelevant, it is impossible for Yale to identify every person who had knowledge about the September 5 Registered Letter or the September 22 Fax at any time between September 2005 and December 31, 2007 because information about both documents was published in the Yale Daily News and elsewhere.

With respect to your request about Michael Moore, Yale's answer to Interrogatory 4 is self-explanatory: Yale's only information about whether Moore received, reviewed, responded to, or otherwise had knowledge about the September 5 Letter came from Dongguk.

Finally, as I explained in my July 8 letter to Jean Bae, your request for a supplemental Interrogatory answer regarding searches of Pamela Schirmeister's files – which you have simply reiterated without explanation – is a non sequitur, because neither Interrogatory 4 nor Interrogatory 6 requested that information, or anything like it.

**Interrogatory 8**

As I explained in my July 8 letter to Jean Bae, Yale has answered this Interrogatory in sufficient detail. Requiring Yale to provide any more information in response to this Interrogatory would impose an undue burden and serve no discernible purpose. Additional information would be more appropriately through other means of discovery.

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 12

### Interrogatories 9-10

Yale's responses to these Interrogatories are complete. We do not understand what additional information you could want.

### Interrogatories 16-19

Please see the explanation in my July 8 letter to Jean Bae.


**V.    Yale's Responses to Dongguk's Requests for Admission**

### Requests for Admission 22, 25-27, 30-31, 38, 41-42, 51-53, 56-58, 61-62

You seem to have misunderstood both my July 8 letter to Jean Bae and Dongguk's own Requests for Admission. Contrary to your August 6 letter, I did not state that Gila Reinstein "does not remember whether she made statements to the media." Rather, I explained that Reinstein does not recall if she made the particular statements attributed to her in the articles upon which these Requests are based, which is what Dongguk asked Yale to admit. (See, e.g., Request for Admission 25 ("Reinstein made the statements attributed to her in the July 12 Article.").)

### Requests for Admission 24, 29, 40, 45, 50, 55, 60

We agree that parties may ask one another to admit the content of documents, but that is beside the point. We have not contended that these Requests are an improper use of Rule 36. Rather, as I have explained, Yale cannot admit these Requests because it does not have knowledge of the accuracy of Dongguk's translations. While you assert that you "are not asking Yale to seek the opinion of a third party in answering these Requests," you then proceed to ask Yale to hire -- and, presumably, pay -- a translator in order to determine whether Dongguk's translations of various documents are accurate. Rule 36 does not require Yale to do so.


**VI.    Yale's Responses to Dongguk's Requests for Production**

### Yale's Responses Generally

First, I do not understand what problem you could possibly have with our identification of the documents we have produced to date. Felix Springer's July 6, 2009 letter to Jean Bae organized and labeled the documents produced on that date to correspond to the categories in Dongguk's Requests for Production, just as the Federal Rules require. See Fed. R. Civ. P.

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 13

34(b)(2)(E)(i). Moreover, I am surprised that you would take issue with the extent of our labeling of the categories to which our documents correspond, since our organization and labeling of the documents we have produced provides more, and more valuable, information than Dongguk's merely lumping together, without description or explanation, thousands of documents allegedly responsive to dozens of unrelated Requests. Moreover, since nearly all of the documents that we have produced are in English, unlike the Korean documents Dongguk has produced, it should be readily apparent to you what each document is, even without our labeling of the categories to which the documents correspond.

Second, documents numbered YALE00002124 – YALE00005964 respond to Requests for Production 6 and 7.

Third, please see the enclosed privilege logs.

Fourth, the documents that we produced on July 6, 2009 were merely an initial production, which should have been clear from Felix Springer's July 6 letter to Jean Bae ("Enclosed please find Yale's first set of responses . . . ."). That production did not encompass Yale's entire response to Dongguk's Requests for Production. Toward that end, an additional production of documents is enclosed with this letter. This production should resolve many of the issues identified in your August 6 letter.

Fifth, your "concerns" about Yale's production of electronically stored information are completely unwarranted and have no basis in fact. As explained in more detail below, many of the documents that you apparently expected to find in Yale's initial production are included in the production enclosed with this letter, and many more simply do not exist, and never did. Your insinuations that Yale may have destroyed documents are similarly baseless. The only documents that you even allege to have been "lost" were, according to your own allegation, dated many months before Yale had any reason whatsoever to suspect potential litigation.

**Request for Production 1**

As explained above and in my July 8 letter to Jean Bae, any request for documents concerning the protocols, procedures, policies, or rules of schools other than GSAS is both irrelevant and unduly burdensome. Your contention that Dongguk's breach of contract claim is based on the conduct and practices of schools other than GSAS is untrue, as the only "breach" that Dongguk has alleged is "sending Dongguk University the September 22 Fax." (See Compl. ¶¶ 195, 63 (alleging that Associate Dean of GSAS sent September 22 Fax).) Moreover, your contention that the scope of discovery on Dongguk's breach of contract claim is broader than the scope of discovery on Dongguk's other claims is belied by Dongguk's own admission, in opposition to Yale's motion to stay discovery, that the scope of discovery would be the same on each of Dongguk's claims. (See Surreply Mem. in Opp'n to Mot. to Stay Discovery at 3 ("the same discovery is needed for each of the four claims").)

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 14

With respect to your contention that Yale's initial production in response to Request for Production 1 was "deficient," see the additional document production enclosed with this letter.[4] We are not aware of any additional documents, but if we locate any, we will produce them.

<u>**Request for Production 2**</u>

As explained above, any request for documents concerning schools other than GSAS is irrelevant and unduly burdensome. With respect to your contention that Yale's initial production in response to Request for Production 2 was "deficient," we are not aware of any additional documents, but if we locate any, we will produce them.

<u>**Request for Production 3**</u>

As explained above, any request for documents concerning schools other than GSAS is irrelevant and unduly burdensome. As properly limited to GSAS, Yale has no responsive documents. As in a number of other areas, your expectation of what documents Yale should possess is incorrect, as the various documents described in your August 6 letter simply do not exist.

<u>**Request for Production 4**</u>

As explained above, any request for documents concerning schools other than GSAS is irrelevant and unduly burdensome. As properly limited to GSAS, Yale has no responsive documents. As in a number of other areas, your expectation of what documents Yale should possess is incorrect, as the various documents described in your August 6 letter simply do not exist.

<u>**Request for Production 5**</u>

Even if, as you assert, documents concerning degree-verification inquiries were "relevant to establishing the general procedure employed by the GSAS in processing such inquiries," you have not explained why that "general procedure" for any time other than September 2005 is relevant to this case. Nor do we see why GSAS's "general procedure" for processing degree-verification inquiries is relevant at all. In any event, to the extent GSAS's "general procedure" for responding to degree-verification inquiries is relevant, see documents numbered YALE00005973 – YALE00006682.

---

[4] Schedule A to this letter identifies the categories of Dongguk's First Set of Requests for Production to which the enclosed documents respond.

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 15

With respect to your request that Yale produce additional documents in response to Request for Production 5, we are not aware of any additional documents, but if we locate any, we will produce them.

<u>**Request for Production 6**</u>

We do not see how an entire month's worth of correspondence sent and received by every employee of GSAS could possibly have any connection to this case, and assembling and producing such correspondence would obviously impose an undue burden. Indeed, it is not clear to us how an entire month's worth of correspondence sent and received by Pamela Schirmeister, Edward Barnaby, and Alicia Grendziszewski has any connection to this case, but we nevertheless produced those documents in the spirit of cooperation.

In seeking correspondence "with which the September 5, 2005 registered letter could have been confused," you seem to have misread Susan Carney's January 31, 2008 letter, which stated that Schirmeister committed an error because of "the press of business and the effectiveness of the fraudulent document." In any event, if the purpose of Request for Production 6 is to locate documents with which Schirmeister could have confused the September 5, 2005 registered letter, then the Request is clearly overbroad: any correspondence sent or received by anyone other than Schirmeister would be irrelevant, as would any correspondence sent by Schirmeister herself.

With respect to your request that Yale produce additional documents in response to Request for Production 6, we are not aware of any additional documents, but if we locate any, we will produce them.

<u>**Request for Production 7**</u>

What possible relevance could the efforts of GSAS employees other than Schirmeister to assist victims of Hurricane Katrina have to this case? To the extent Schirmeister's efforts to assist victims of Hurricane Katrina in September 2005 are relevant, it is because they demonstrate the "press of business" that facilitated the success of Shin's fraud. The activities of other GSAS employees, in contrast, have no bearing on Schirmeister's response to Dongguk's September 6 letter. In addition to being irrelevant, it would be unduly burdensome to gather, review, and produce such documents from every employee of GSAS, as you apparently want Yale to do.

Your further contention that Yale's response to this Request is "deficient" because it includes "incomplete e-mail chains" is incorrect. You have alleged that two documents produced by Yale were "incomplete," but our July 6 production included additional e-mail correspondence related to both of those documents: the e-mail chain begun in YALE00002210 continues in YALE00002218 and YALE00003083, and the e-mail chain begun

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 16

YALE00002367 continues in YALE00002326.  As in a number of other areas, your expectation of what documents Yale should possess is incorrect, as the various documents described in your August 6 letter simply do not exist.

### Request for Production 8

See the additional document production enclosed with this letter.

### Request for Production 9

We have produced all documents responsive to this Request.

### Request for Production 11

We have produced all documents responsive to this Request.  As in a number of other areas, your expectation of what documents Yale should possess is incorrect, as the various documents described in your August 6 letter simply do not exist.

### Request for Production 12

With respect to your contention that Yale's initial production in response to Request for Production 12 was "deficient," see the additional document production enclosed with this letter. We are not aware of any additional documents, but if we locate any, we will produce them.

### Requests for Production 13-22

See the additional document production enclosed with this letter.

### Request for Production 23

With respect to your contention that Yale's initial production in response to Request for Production 23 was "deficient," we are not aware of any additional documents, but if we locate any, we will produce them.  The particular documents that you mention, such as "employee manuals," are not responsive to this Request and are irrelevant to this case.  Indeed, it is not apparent how any of the documents sought by this Request are relevant to this case, but we have nevertheless produced them in the spirit of cooperation.

### Request for Production 24

It is not apparent how documents sought by this Request would be relevant to this case. In any event, please see the additional document production enclosed with this letter.  We are not aware of any additional documents, but if we locate any, we will produce them.

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 17

### Request for Production 25

See the additional document production enclosed with this letter.

### Request for Production 26

See the additional document production enclosed with this letter.

### Request for Production 27

See the additional document production enclosed with this letter.  We are not aware of any additional documents, but if we locate any, we will produce them.

### Requests for Production 28-35

See the additional document production enclosed with this letter.

### Request for Production 36

Yale has no documents responsive to this Request.  As in a number of other areas, your expectation of what documents Yale should possess is incorrect, as the various documents described in your August 6 letter simply do not exist.

### Request for Production 37

See the additional document production enclosed with this letter.  We are not aware of any additional documents, but if we locate any, we will produce them.

### Request for Production 38

Yale has no additional documents responsive to this Request.  As in a number of other areas, your expectation of what documents Yale should possess is incorrect, as the various documents described in your August 6 letter simply do not exist.

### Request for Production 41

Your "demand that these documents be produced" is misplaced, as Yale has already produced the requested documents.  They are numbered YALE00001282 – YALE00001331.

### Requests for Production 42, 44-45

As explained in my July 8 letter to Jean Bae, the circumstances of how a party obtained documents are irrelevant and beyond the scope of permissible discovery.  *See, e.g., Marubeni*

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
August 26, 2009
Page 18

Am. Corp. v. Tenneco Resins, Inc., No. 82 Civ. 7548, 1984 U.S. Dist. LEXIS 15493, at *3-4
(S.D.N.Y. June 27, 1984) (manner of obtaining documents is irrelevant to admissibility in civil
action; facts and circumstances surrounding acquisition of evidence are beyond scope of
discovery); Honeycutt v. Aetna Ins. Co., 510 F.2d 340, 348-49 (7th Cir. 1975) ("It has long been
settled that the Fourth Amendment protection against unlawful searches and seizures applies
only to governmental action. We have found no other rule, constitutional, statutory or judicial,
which would compel the rejection of logically relevant evidence obtained by a private person
through an unauthorized search and seizure.").

### Requests for Production 46-66

As discussed above, Felix Springer's July 6, 2009 letter to Jean Bae provided all of the
information required by Fed. R. Civ. P. 34(b)(2)(E)(i), and more information than you could
possibly need to "assess Yale's production." Since the documents that Yale has produced, unlike
the documents that Dongguk has produced, are in English, we do not understand what additional
information you could possibly require in order to review Yale's production.

Sincerely,

Howard Fetner

Enclosures

cc:     Felix J. Springer, Esq.
        Ira Grudberg, Esq.
        Nathanael Kelley, Esq.
        Audrey Lu, Esq.

## Schedule A

The enclosed documents, numbered YALE00006873 – YALE00007906, correspond to the categories in Dongguk's First Set of Requests for Production as follows:

- documents numbered YALE00006941 – YALE00006942, YALE00006947 – YALE00006948, YALE00007019 – YALE00007034, YALE00007036, YALE00007051 – YALE00007052, YALE00007207 – YALE00007210, YALE00007215 – YALE00007217, YALE00007224 – YALE00007270, YALE00007306 – YALE00007308, YALE00007315 – YALE00007321, YALE00007667 – YALE00007683, YALE00007723 – YALE00007730, YALE00007734 – YALE00007740, YALE00007762 – YALE00007778, and YALE00007844 – YALE00007885 are internal communications about Jeong Ah Shin or Dongguk;

- documents numbered YALE00006873 – YALE00006877, YALE00006884 – YALE00006894, YALE00006927 – YALE00006940, YALE00006943 – YALE00006946, YALE00006949 – YALE00006953, YALE00007017 – YALE00007018, YALE00007035, YALE00007037 – YALE00007050, YALE00007053 – YALE00007203, YALE00007218 – YALE00007219, YALE00007309 – YALE00007314, YALE00007322 – YALE00007328, YALE00007368 – YALE00007369, YALE00007384 – YALE00007387, YALE00007390 – YALE00007391, YALE00007398 – YALE00007400, YALE00007421 – YALE00007425, YALE00007436 – YALE00007438, YALE00007452 – YALE00007454, YALE00007533 – YALE00007620, YALE00007652 – YALE00007654, YALE00007661 – YALE00007666, YALE00007886 – YALE00007899, and YALE00007901 are communications with the media or with third parties other than Dongguk, press statements, news articles, and internal communications about the foregoing;

- documents numbered YALE00006878 – YALE00006883, YALE00006954 – YALE00007016, YALE00007204 – YALE00007206, YALE00007211 – YALE00007214, YALE00007329 – 7367, YALE00007370 – YALE00007383, YALE00007388 – YALE00007389, YALE00007392 – YALE00007397, YALE00007401 – YALE00007420, YALE00007426 – YALE00007435, YALE00007439 – YALE00007451, YALE00007455 – YALE00007529, YALE00007532, YALE00007621 – YALE00007651, YALE00007655 – YALE00007660, YALE00007684 – YALE00007722, YALE00007731 – YALE00007733, YALE00007741 – YALE00007761, YALE00007779 – YALE00007793, and YALE00007902 - YALE00007904 concern what you have dubbed the "Carney Investigation" and Yale's communications with Dongguk;

- documents numbered YALE00007220 – YALE00007223 and YALE00007530 – YALE00007531 concern Yale's discovery of the September 5, 2005 letter and the September 22, 2005 fax;

- documents numbered YALE00007794 – YALE00007843 are September 2005 communications to and from Pamela Schirmeister, Edward Barnaby, and Alicia Grendziszewski;

- documents numbered YALE00006895 – YALE00006926 and YALE00007271 – YALE00007305 concern the verification of degrees; and

- document number YALE00007900 concerns the Office of Public Affairs.