# EXHIBIT 18

# DAY PITNEY LLP

BOSTON  CONNECTICUT  NEW JERSEY  NEW YORK  WASHINGTON, DC

HOWARD FETNER
Attorney at Law

One Audubon Street
New Haven, CT 06511
T: (203) 752 5012  F: (203) 752 5001
hfetner@daypitney.com

November 9, 2009

**VIA E-MAIL AND REGULAR MAIL**

Robert A. Weiner, Esq.
McDermott Will & Emery
340 Madison Avenue
New York, NY 10173-1922

Re:   Dongguk University v. Yale University, No. 3:08-CV-00441 (RNC)

Dear Bob:

I write in response to your October 19, 2009 letter regarding Yale's document production. The following addresses the issues raised in your October 19 letter, in the order in which you raised them.

First, the documents attached as Exhibits A, B, C, D, and E to your October 19 letter were produced in the form in which they were ordinarily maintained, which is all that the Federal Rules require. Nevertheless, as a courtesy, we will attempt to restore them to an earlier form.

Second, we have reviewed the documents from which you assert that pages are missing. In converting the documents to the format in which you asked us to produce them, a few documents seem to have inadvertently been divided into separate documents. For example, no pages from the document numbered YALE00000711 are "missing"; rather, the document continues at YALE00000712-14. Documents numbered YALE00001034-35 and YALE00001208-09 are complete as produced. We will re-produce each of the other documents identified in Exhibit F as a single document.

Third, we have reviewed the documents from which you assert that attachments are missing. Many of these documents do not have attachments. For those that do have attachments, we will re-produce both the parent documents and the attachments.

Fourth, Yale does not possess most of the e-mails that you contend have not been "independently produced." We will produce the few that it does possess.

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
November 9, 2009
Page 2

Fifth, your arguments regarding our production of e-mail are based on two faulty premises: (1) that Yale possesses a trove of e-mails that have not been produced; and (2) that Yale would be required to produce multiple copies of each e-mail in any event.

On the first point, we have produced all responsive e-mail. When Yale changed its e-mail system and server in 2008, Yale faculty and staff e-mail that was stored on the old server was transferred to the faculty and staff members' hard drives. Therefore, custodians who searched their hard drives for responsive e-mail after the server migration searched the data that had been stored on their hard drives and the applicable server. Those custodians who collected their e-mail before the change to a new server searched any e-mail stored on either their hard drive or the server. Therefore, while Yale retains the old server, there is no need to search it. (The only data that required a search of the legacy server was Michael Moore's e-mail. Mr. Moore was a mailroom employee without a computer workstation. He never accessed his Yale e-mail account, so incoming e-mail built up there and was never transferred to a local hard drive.) We have not searched back-ups because they would not contain any data beyond what has already been searched, and we would have no obligation to collect and search back-up data in any event.

On the second point, Yale has already produced all of the e-mails listed in Exhibit M to your October 19 letter, and it has already produced multiple copies of many of them. Even if Yale possessed all of the additional copies listed in Exhibit M, it would have no obligation to produce duplicate copies of e-mails that it has already produced. See, e.g., Crooker v. United States State Dep't, 628 F.2d 9, 10-11 (D.C. Cir. 1980) (declining to require agency to produce copies of records already produced by another agency); Defenders of Wildlife v. United States Dep't of the Interior, 314 F. Supp. 2d 1, 10 (D.D.C. 2004) ("The search was not inadequate simply because it failed to produce duplicate copies of responsive records."); Nat'l Union Fire Ins. Co. v. Continental Illinois Corp., 116 F.R.D. 78, 85 (N.D. Ill. 1987) (reversing order that would have required party to make "unnecessary delivery . . . of multiple copies of the same documents"). You have not explained, and we cannot imagine, why Dongguk requires multiple copies of the same documents that Yale has already produced. Nor have you explained why the identification of "bcc's" is of any significance. In any event, as you know, we have already produced the senders' copies of many of the e-mails listed in Exhibit M, so you have any "bcc" information for those documents.

Sixth, if you have questions about the authors of certain documents, you may serve interrogatories.

Seventh, no one received blind e-mails addressed to "f\D Group\Dongguk U." That was simply a tool that allowed users to file e-mail in their own e-mail accounts.

Eighth, YALE00000015 is complete.

**DAY PITNEY** LLP

Robert A. Weiner, Esq.
November 9, 2009
Page 3

Ninth, the attachment to YALE00000038 was inadvertently separated from that document and produced as YALE00000846-48. As mentioned in the third point above, we will re-produce both documents. If you have additional questions about YALE00000038, you may serve interrogatories.

Tenth, if you have questions about the Yale Police Department, you may serve interrogatories.

Eleventh, we have produced all responsive documents and ESI from the Office of Public Affairs that are reasonably accessible without undue burden or cost. Because Yale switched its calendar software after the summer of 2007, we cannot search Yale employees' calendars from that period without incurring substantial burden and cost. Moreover, we have no reason to believe that, even if those calendars could be restored, they would contain responsive data.

Twelfth, if you have questions about communications with the media, you may serve interrogatories.

Thirteenth, if you have questions about Gila Reinstein's interview with MBC, you may serve interrogatories.

Fourteenth, I responded to your concerns regarding Yale's privilege logs in an October 29, 2009 letter.

Sincerely,

Howard Fetner

cc: Ira Grudberg, Esq.
Audrey Lu, Esq.
Nathanael Kelley, Esq.
Felix J. Springer, Esq.