# EXHIBIT 28

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Robert A. Weiner
Attorney at Law
rweiner@mwe.com
+1 212 547 5408

March 16, 2010

**VIA E-MAIL AND FIRST CLASS MAIL**

Felix J. Springer, Esq.
Day Pitney LLP
242 Trumbull Street
Hartford, Connecticut 06103

Re: Dongguk University v. Yale University, Case No. 3:08-CV-0441 (RNC)

Dear Felix:

In your February 25, 2010 letter ("February 25 letter"),[1] you state that you have "serious questions about Dongguk's compliance with the most basic discovery requirements" because "Dongguk has produced virtually no email or other documents or electronically stored information ("ESI") reflecting communications among Dongguk personnel concerning Jeong Ah Shin or Yale University." The lack of ESI should not be a surprise because email is not nearly as popular or common a form of communication in Korea as it is in the United States. For example, there is no Blackberry service in Korea.

Nonetheless, you have raised a number of questions regarding the adequacy of the scope of our review and collection procedures. In this regard, I note that you are requesting precisely the same type of information regarding the preservation, collection, and review of hard copy documents, emails, and ESI that we have requested from Yale on several occasions and that Yale has refused to provide to date. Unlike Yale, we will provide you with the information that you are seeking.

As discussed below, Dongguk has more than complied with its "basic discovery requirements." Dongguk, in consultation with its counsel, developed a comprehensive preservation, collection, and review protocol that has resulted in a far more complete document production than Yale's, by far.

### Dongguk's General Document and Email Retention Policies

Dongguk does not have a general document retention policy. Dongguk maintains a university-wide shared database on which individuals can store their electronic documents. The

---

[1] The remaining specific issues raised in your February 25 letter will be discussed under separate cover.

U.S. practice conducted through McDermott Will & Emery LLP.
340 Madison Avenue New York, New York 10173-1922 Telephone: 212.547.5400 Facsimile: 212.547.5444 www.mwe.com

Felix J. Springer, Esq.
March 16, 2010
Page 2

documents are stored on the shared database indefinitely. Once a document is stored on the shared database it cannot be deleted by the individual who created or otherwise saved the document.

Dongguk also does not have a general email retention policy. Dongguk maintains its own internal email servers. Emails are not automatically deleted from the servers. An email can only be completely deleted from Dongguk's email server if the sender and all recipients of the email manually delete their copy of the email from the server. We have seen no evidence that any potentially responsive emails have been deleted.

### Preservation of Documents Relevant to This Litigation

As counsel for Dongguk, McDermott Will & Emery LLP ("McDermott") has made three separate written requests concerning document preservation and has had numerous follow-up conversations with Dongguk officials and Dongguk's IT personnel during the course of this litigation. In all of these communications, McDermott emphasized to Dongguk the importance of preserving any and all paper and electronic data in its possession, custody or control that might be potentially relevant to this litigation.

On January 23, 2008, prior to the commencement of this litigation, in an abundance of caution, I sent a broadly worded litigation hold notice to Dongguk's officials advising them to preserve all hard copy documents and ESI potentially relevant to this litigation. The January 23, 2008 letter is attached hereto as Exhibit A. Within the week, Dongguk's officials informed us that they had notified potential custodians and Dongguk's IT staff of the general litigation hold.

Between the end of January and through March 2008, McDermott had several follow-up conversations with Dongguk officials and its IT personnel to assure that all relevant documents were, in fact, being preserved. During this time, to ensure that all relevant emails were preserved, Dongguk's IT personnel created an archive of all potential custodians' emails that were sent or received between January 2005 through March 2008, regardless of the emails' subject matter. The archive was created by taking an image of all emails contained in each custodian's email account that was sent or received between January 2005 and March 2008.

On March 13, 2008, I sent a second more specifically written litigation hold notice to Dongguk officials, reiterating the obligation to preserve potentially relevant information. The March 14, 2008 letter is attached hereto as Exhibit B. Notably, because of the broader litigation hold notice sent in January 2008 and because, as discussed above, Dongguk does not have a general email or document retention policy that automatically deletes ESI, there was no threat that relevant ESI had been destroyed between January and March 2008.

The March 13 notice included a list of twenty-five individuals and Dongguk departments that McDermott had specifically identified as having information potentially relevant to the litigation, along with a data retention and preservation notice with specific instructions to the custodians. Dongguk officials circulated the data retention and preservation notice to all identified custodians and departments.

Felix J. Springer, Esq.
March 16, 2010
Page 3

After receiving your April 1, 2008 letter regarding document preservation, on April 3, 2008, I sent Dongguk's officials another document preservation request, specifically requesting that Dongguk preserve all the documents that you had requested in "Schedule A" to its letter. The April 3, 2008 letter is attached hereto as Exhibit C. McDermott also confirmed with Dongguk officials that all such documents and ESI, to the extent they existed, were being preserved.

In short, Dongguk fully complied with its document preservations obligations.

### Consent From Custodians

As we have previously advised you, Korean law precludes Dongguk from accessing an individual's ESI (including emails) without his or her consent.

After Dongguk received Yale's Document Requests in early March 2009, Dongguk, in consultation with McDermott, went through each request to determine what individuals and/or departments at Dongguk, in addition to those previously identified, if any, would have information potentially relevant to each request. In my September 21, 2009 letter ("September 21 letter") that I sent to you, I attached the complete list of all potential custodians identified. The only changes to the March 2008 custodian list were (i) the addition of the names of individuals identified as having information regarding Dongguk's donations, grants, and student applications, rather than just the general departments, and (ii) the removal of any individuals that Dongguk determined it had no control over or who did not have potentially relevant information.

Because of the Korean privacy laws, Dongguk could access the ESI of only those custodians who provided written consent. Dongguk, in consultation with McDermott and Lee & Ko, Dongguk's outside Korean counsel, drafted an extensive and detailed consent form. Specially, the consent form explained Dongguk's discovery obligations under U.S. laws, the custodian's rights under Korean privacy laws, and what would occur with regard to the custodian's ESI should the custodian provided consent to Dongguk and its attorney. A copy of the consent form is attached hereto as Exhibit D.

The September 21 letter identifies the 37 individuals from whom Dongguk sought consent. Of the 37 custodians, 35 custodians provided consent for Dongguk to access their ESI. Only two individuals, Won Sang Cho and No Sung Kwak, did not provide their consent. However, Mr. Cho (a retired administrative staff employee) and Mr. Kwak (a former manager in the donations department) informed McDermott that they do not have any documents or ESI responsive to Yale's requests.

### Custodians

Dongguk searched and collected potentially relevant hard copy documents and ESI from the following individuals, which includes all of the individuals that were identified on the list in your February 25 letter:

Felix J. Springer, Esq.
March 16, 2010
Page 4

- Hyung Taik Ahn
- Minwoo Byun
- Euiyon Cho
- Soon Sik Cho
- Moon Gyu Choi
- Woo Thak Chung
- Ye Kyung Chung
- Jin Soo Han
- Ki Sam Hong
- Sung Jo Hong
- Jong Yeong Hwang
- Jo Kyung Im

- Yong Taik Im[2]
- Byoung Geon Jeon
- Hyeok Jin Jin
- Dong Hyun Jung
- Hyung Seok Kang
- Bong Hyun Kim
- Byung Ho Kim
- Hae Dukk Kim
- Hyung Bae Kim
- Jiwoo Kim
- Juntae Kim
- Kyung Hee Kim

- Sang Il Lee
- Sun In Lee
- Young Myun Lee
- Won Bae Oh
- Young Kyo Oh
- Myung Kwan Park
- Jongtae Rhee
- Ik Sup Shim
- Sung Woong Yang
- Jin Yoo
- Seuck Cheun Yoo

For the reasons set forth below, the following individuals' ESI was not searched:

- <u>Chung Ky Hwang</u>: Mr. Hwang is a Dongguk University Foundation Board of Director. Because he was not a Dongguk employee during the relevant time periods, he did not have a Dongguk email address, did not save documents to Dongguk's university-wide shared database, and did not have a Dongguk-issued computer.

- <u>Gye Hyon Kim</u>: Mr. Kim was an employee of the Dongguk University Foundation Board of Directors during the relevant time periods. Because he was not a Dongguk employee during the relevant time periods, he did not have a Dongguk email address, did not save documents to Dongguk's university-wide shared database, and did not have a Dongguk-issued computer.

- <u>Jang Yoon</u>: Mr. Yoon is a former Dongguk University Foundation Board of Director. Because he was not a Dongguk employee during the relevant time periods, he did not

---

[2] Because Mr. Im is not a Dongguk employee, he does not have a Dongguk email address, does not save documents to Dongguk's university-wide shared database, and does not have a Dongguk-issued computer.

have a Dongguk email address, did not save documents to Dongguk's university-wide shared database, and did not have a Dongguk-issued computer.

- <u>All members of Dongguk University Foundation Board of Directors in 2005 and 2007</u>: Because members of the Dongguk University Foundation Board of Directors are not Dongguk employees, they do not have Dongguk email addresses, do not save documents to Dongguk's university-wide shared database, and do not have Dongguk-issued computers.

As a separate matter, we were surprised to see Byeong Wook Oh and Kwang Ho Yu on your list. Because neither individual was directly involved in the Shin incident, they were not included as custodians and we have no reason to believe that they possess responsive emails or other ESI. However, if Yale would like to provide additional information about why it believes that these two individuals would possess responsive emails and other ESI, we will endeavor to obtain their written consent to access their emails and other ESI.

We also note that, while Jeong Ah Shin was employed by Dongguk, she never used her Dongguk University email account.

<u>Collection and Review</u>

Because of the concerns regarding Korean privacy laws, Dongguk, in consultation with McDermott and Lee & Ko, implemented the following collection and search protocol:

1. As discussed in detail above, Dongguk first created a refined custodian list and then obtained the necessary consent from the identified custodians.

2. Dongguk first collected the previously archived emails, consisting of the custodians' emails that were sent or received between January 2005 through March 2008 regardless of relevancy or subject matter. The emails were collected in PST format. This process was supervised by McDermott and Lee & Ko attorneys and Dongguk's IT personnel.

3. After identifying custodians, McDermott interviewed each custodian to locate all potentially relevant ESI and hard copy documents. During the interviews, custodians informed McDermott: (i) where they stored potentially relevant ESI on the university-wide shared database, (ii) if they had stored any additional potentially relevant ESI on their local computer hard-drives and/or other storage devices and specifically where those documents were stored, if any, and (iii) where potentially relevant hard copy documents were located.

4. Based on the information provided by the custodians, Dongguk collected any potentially relevant ESI that had been stored on Dongguk's university-wide shared database by the custodians. The electronic documents were collected in native

Felix J. Springer, Esq.
March 16, 2010
Page 6

   format, with all metadata preserved. This process was supervised by McDermott and Lee & Ko attorneys and Dongguk's IT personnel.

5. Dongguk also collected any potentially relevant ESI that was located on custodians' local computer hard-drives and other storage devices. All electronic folders and/or documents identified by the custodian as potentially relevant to the case were collected in native format, with all metadata preserved. This process was supervised by McDermott and Lee & Ko attorneys and Dongguk's IT personnel.

6. In addition, Dongguk collected all potentially responsive hard copy documents. The collected hard copy documents were scanned, as they had been kept by the custodians in the ordinary course of business, into electronic format for review. This process was supervised by McDermott and Lee & Ko attorneys and Dongguk's IT personnel.

7. In April 2009, McDermott provided Yale with an extensive proposed search term list based upon McDermott's knowledge of the case and Yale's specific Document Requests. During a May 1, 2009 teleconference, Yale's counsel provided comments and suggestions to that list, which Dongguk incorporated into its final search term list.[3] A copy of Dongguk's final search term list is attached hereto as Exhibit E.

8. With the ESI that had been collected, Dongguk's IT personnel then created a general pool of ESI to be searched. The initial pool of ESI contained: (i) the previously archived emails, (ii) any potentially relevant ESI that had been stored on Dongguk's university-wide shared database by the custodians, and (iii) any potentially relevant ESI collected from the custodians' local computer hard-drives and other storage devices.

9. Dongguk then ran a computer-operated search using the search term list over the general pool of ESI to generate an output of potentially responsive ESI. This process was supervised by McDermott and Lee & Ko attorneys and Dongguk's IT personnel.

10. The collected/scanned documents and ESI were then reviewed by McDermott and Lee & Ko for responsiveness, privilege, and confidentiality. All responsive non-privileged documents requested by Yale were produced.

\*   \*   \*   \*

---

[3] By contrast, Yale refused to use search terms and instead "left it up to each custodian to apply the search method that was most likely to uncover all potentially relevant ESI." (April 23, 2009 e-mail from Howard Fetner to Andrew Kratenstein.) In Jean Bae's May 5, 2009 letter to Mr. Fetner, we indicated our concern about Yale's approach and requested that "Yale run search terms over each and every custodian's e-mail account and other local or network locations reasonably likely to contain responsive ESI." Yale has not confirmed whether it complied with this request.

Felix J. Springer, Esq.
March 16, 2010
Page 7

    Now that we have provided you with all the information that you have requested regarding Dongguk's preservation, collection, and review protocol, we look forward to receiving the information that we have requested from Yale.

                                   Sincerely yours,

                                   Robert A. Weiner

cc: Ira Grudberg, Esq.
    Howard Fetner, Esq.
    Andrew Kratenstein, Esq.
    Audrey Lu, Esq.

NYK 1287158-4.081817.0011