UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DONGGUK UNIVERSITY            :
                             :
V.                           :    CIV. NO.  3:08CV441(TLM)
                             :
YALE UNIVERSITY              :
                             :

RULING ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER [DOC. #167]

Defendant served a Notice of Deposition of Dongguk Pursuant
to Rule 30(b)(6) of the Federal Rules of Civil Procedure (the
"30(b)(6) Notice") on May 28, 2010.  Dongguk moved for a
protective order quashing portions of Yale's 30(b)(6) notice.
[Doc. # 167].  Yale has objected to plaintiff's Motion. [Doc. #
173].

Background

This action concerns Dongguk's hiring and two-year
employment of an art history professor named Jeong Ah Shin, who
claimed to have earned a Ph.D. at Yale.  (Compl. ¶¶ 43-57, 66).
Dongguk alleges that, after it hired Shin in 2005 as a "special
hiring candidate," it wrote to Yale to verify her Ph.D., and Yale
improperly confirmed that Shin had received a Ph.D. from Yale.
(Id. ¶¶ 44, 58-65).  Dongguk further alleges that, when Shin
attracted attention from the Korean media in 2007, Yale wrongly
told the media that it had not verified her Ph.D. two years
earlier.  (Id. ¶¶ 89-97).  Dongguk alleges that Yale's statements
to the Korean media "[d]estroyed" Dongguk's reputation, "publicly

1

humiliated and deeply shamed" Dongguk, and caused it $50 million in damages. (Id. ¶¶ 179, 190, 196, 204).

On May 28, 2010, Yale served the 30(b)(6) Notice, identifying thirty topics. In a responding letter to Yale dated June 8, 2010, Dongguk divided the topics into four distinct categories, objecting to 18 of the 30: "(i) subject matters to which Dongguk has no objections and will provide a witness; (ii) subject matters to which Dongguk has objections, but will nonetheless will [sic] provide a witness; (iii) subject matters that are unreasonably cumulative and duplicative to which Dongguk will not provide a witness; and (iv) subject matters that are not the proper subject of a Rule 30(b)(6) deposition and Dongguk will not provide a witness." Yale replied by letter dated June 15, 2010. On June 28, 2010, Dongguk filed a motion for a protective order to quash portions of Yale's 30(b)(6) Notice.

Plaintiff argues that Yale is seeking to take 30(b)(6) depositions on thirty overly broad topics, nine of which are "virtually identical to written discovery already provided by Dongguk and are thus unreasonably cumulative or duplicative" and three of which are "topics impermissibly seek[ing] information protected by attorney-client privilege or work product doctrine." [Doc. # 167 at 3]. Accordingly, Dongguk seeks a protective order quashing those 12 topics of Yale's 30(b)(6) Notice.

Defendants respond that "the Rule 30(b)(6) categories that

2

Dongguk seeks to quash concern matters at the heart of the merits of [the] case . . . for the sole reason that Dongguk has responded to interrogatories and requests for production concerning those topics."  [Doc. #173 at 1].

## DISCUSSION

I.    Standard of Review

    A.    Scope of Discovery

Like other forms of discovery, a Rule 30(b)(6) Notice is subject to limitations under Rule 26 of the Federal Rules of Civil Procedure.  As a general proposition, whether something is discoverable under Rule 26 of the Federal Rules of Civil Procedure is determined under a broader standard than that used to determine admissibility at trial.  FDIC v. Wachovia Insur. Servs., 2007 U.S. Dist. LEXIS 62538, *9 (D. Conn. Aug. 27, 2007). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  Thus courts normally allow discovery "to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  Daval Steel Products v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991) (quoting Oppenheimer Fund Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

But there are limits to discovery and the ways in which parties may use particular discovery tools. In particular, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Crawford-El v. Britton, 523 U.S. 574, 598 (1998). Rule 26(b)(1) defines the scope of discovery as reaching all information that is relevant but not privileged. For discovery purposes, courts define relevance broadly, regarding information as relevant if it "bears on" or might reasonably lead to information that "bears on" any material fact or issue in the action. See Openheimer Fund, 437 U.S. at 351; see also El Badrawi v. Dept. of Homeland Sec., 258 F.R.D. 198, 201-02 (D. Conn. 2009). Generally, courts have been reluctant to define discovery relevance in the abstract, instead tending to ground their decisions on the particular facts of the case.

### 1. Limits Based on Proportionality

Rule 26(b)(2)(C) instructs courts to limit discovery to the extent that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). This proportionality consideration was added in 1983 specifically to address the perceived problem of over-discovery. Fed. R. Civ. P. 26 Advisory Committee's Note (1983). Both the Supreme Court and the Federal Rules of Civil Procedure Advisory Committee have emphasized the importance of the 26(b)(2)(C) proportionality

limit on fair and efficient operation of discovery rules.  See

Crawford-El, 523 U.S. at 598-99.  Rule 26(b)(2)(C) lists three

factors for the court to consider:

> (i) the discovery sought is unreasonably
> cumulative or duplicative, or is
> obtained from some other source that is
> more convenient, less burdensome, or
> less expensive; (ii) the party seeking
> discovery has had ample opportunity by
> discovery in the action to obtain the
> information sought; or (iii) the burden
> or expense of the proposed discovery
> outweighs its likely benefit, taking
> into account the needs of the case, the
> amount in controversy, the parties'
> resources, the importance of the issues
> at stake in the litigation, and the
> importance of the proposed discovery in
> resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

However, "it seems that the three provisions of [Rule

26(b)(2)] should not be treated as separate and discrete grounds

to limit discovery so much as indicia of proper use of discovery

mechanisms; they do not call for counsel to undertake complex

analysis."  8 Charles Alan Wright & Arthur R. Miller, Federal

Practice and Procedure § 2008.1 (3d ed. 2010); see also In re

Cooper Tire & Rubber Co., 568 F.3d 1180, 1194 (10th Cir. 2009).

Instead, the court will consider the specific facts of the case

to make a common sense decision about whether or not the

discovery in question goes too far.

2.  Protective orders

Rule 26(c) provides that a court may, for good cause, issue

an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). With regard to the "undue burden and expense" provision, Rule 26(c) operates in tandem with the proportionality limits set forth in Rule 26(b)(2). The text of Rule 26(c) is construed liberally to include a wide range of potential harms not explicitly listed. See Seattle Times Co. V. Rhinehart, 467 U.S. 20, 36 (1984) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."); see also In re Zyprexa Injunction, 474 F.Supp.2d 385, 413 (E.D.N.Y. 2007).

B.    Rule 30(b)(6) Depositions

Rule 30(b)(6) provides in pertinent part:

> A party may in the party's notice and in
> a subpoena name as the deponent a public
> or private corporation . . . and
> describe with reasonable particularity
> the matters on which examination is
> requested.  In that event, the
> organization so named shall designate
> one or more officers, directors, or
> managing agents, or the persons who
> consent to testify on its behalf, and
> may set forth, for each person
> designated, the matters on which the
> person will testify . . . . The persons
> so designated shall testify as to
> matters known or reasonably available to
> the organization.  This subdivision
> (b)(6) does not preclude taking a
> deposition by any other procedure
> authorized in these rules.

Fed. R. Civ. P. 30(b)(6).

Rule 30(b)(6) is meant to serve several purposes:

> reduc[ing] the difficulties . . . encountered
> in determining, prior to the deposition,
> whether a particular employee or agent is a
> 'managing agent'. . . . ; curb[ing] the
> 'bandying' by which officers or managing
> agents of a corporation are deposed in turn
> but each disclaims knowledge of facts that
> are clearly known to persons in the
> organization . . . . ; [and] assist[ing]
> organizations which find that an
> unnecessarily large number of their agents
> are being deposed by a party uncertain of who
> in the organization has knowledge.

S.E.C. v. Morelli, 143 F.R.D. 42, 44-45 (S.D.N.Y 1992)(quoting

Advisory Committee Notes on Rule 30(b)(6)).

Rule 30(b)(6) allows an organization to designate an

individual to "testify on its behalf." State of New Jersey v.

Sprint Corp., 2010 U.S. Dist. LEXIS 14890, at *9 (D. Kan. Feb.

19, 2010). The testimony provided by a corporate representative

at a 30(b)(6) deposition binds the corporation. Id. A party

should not be prevented from questioning a live corporate witness

in a deposition setting just because the topics proposed are

similar to those contained in documents provided or interrogatory

questions answered. Id at *9-10. When information has already

been provided in other forms, a witness may still be useful to

testify as to the interpretation of papers, and "any underlying

factual qualifiers of those documents" (i.e. information which

the defendant knows but is not apparent on the face of the

documents). Beckner v. Bayer CropScience, L.P., 2006 U.S. Dis.

7

LEXIS 44197, *27, 29-30 (D.W.Va. June 28, 2006). A party may also have an interest in getting the corporation's testimony on an issue, rather than the testimony of an individual. In such a case, courts have allowed 30(b)(6) depositions in order to obtain testimony binding on the corporation even though that testimony was likely to essentially duplicate information which had already been stated in an individual deposition. Sprint, 2010 U.S. Dist. LEXIS 14890, at *9-11.

A Rule 30(b)(6) Notice is subject to limitations under Rule 26 which requires that the information sought not be unduly burdensome or duplicative. Courts have found Rule 30(b)(6) notices to be unduly burdensome which merely request the duplication of other information already obtained through other discovery methods. The court in Tri-State also suggested that since depositions are inherently "time-consuming and inefficient," they ought to "be productive and not simply an excuse to seek information that is already known." Tri-State Hosp. Supply Corp., 226 F.R.D. 118, 126 (D.D.C. 2005). Where the notice seeks information which could more easily be obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition. See Gossar v. Soo Line R.R. Co., 2009 U.S. Dist. LEXIS 100931, *16-17 (S.D. Ind. Oct 27, 2009).

A portion of a party's 30(b)(6) notice may also be stricken

if it is overbroad. "The purpose of designating matters for the 30(b)(6) deposition is to give the opposing party notice of the areas of inquiry that will be pursued so that it can identify appropriate deponents and ensure they are prepared for the deposition." <u>Tri-State Hosp. Supply Corp.</u>, 226 F.R.D. at 125. Additionally, the language "including but not limited to" is overbroad when identifying a 30(b)(6) topic and defeats the purpose of giving notice of the topics to be discussed in the deposition. <u>Id.</u>

The burden of proof lies with the party opposing discovery to show good cause to deny the discovery sought. Chamberlain v. Farmington Sav. Bank, 247 F.R.D. 288, 290 (D.Conn. 2007). The party opposing the discovery sought must support its position with a "particular and specific demonstration of fact." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 (1981). It is not enough for the party to merely make conclusory statements. Id.

II. <u>Scope and Limits of Topics 3, 4, 5, 6 , 7, 11, 19, 23 and 24 of the Rule 30(b)(6) Deposition Notice</u>

A. <u>Topic 5</u>

Topic 5 requests testimony concerning:

> Dongguk's 2007 investigation concerning Jeong Ah Shin, including but not limited to the scope of the investigation, each person involved in the investigation and their role in the investigation, the dates the investigation started and ended, all actions taken in connection with the investigation,

> all people interviewed in connection with the
> investigation, all documents generated in
> connection with the investigation, and all
> results of the investigation.

At the July 15, 2010 discovery conference, Dongguk agreed to provide a 30(b)(6) witness concerning the formation of the investigation and why certain information was not covered in the investigation. However, Dongguk argues that asking a 30(b)(6) witness about what actually occurred during the investigation is unreasonably cumulative and duplicative of prior discovery requested by Yale. At the discovery conference, Yale assured Dongguk that Yale would only question a 30(b)(6) witness about the details of the investigation as a point of departure to ask questions about why certain information was not covered in the investigation.

Thus, it appears both parties agree about the outer limits of Topic 5 and Yale is permitted to inquire of the designated witness as to the formation of the investigation and why certain information was not covered in the investigation.

B. Topic 6

Topic 6 requests testimony concerning:

> Dongguk's communications with Yale concerning
> Jeong Ah Shin, including but not limited to
> the dates of all such communications, all
> people in those communications, and the
> reasons for each communication by Dongguk to
> Yale.

Dongguk objects to Topic 6 as unreasonably cumulative and duplicative of prior discovery requested by Yale. [Doc. # 167 at 18]. Dongguk has produced all of its communications with Yale concerning Jeong Ah Shin. These documents include "the dates of all such communications, all people involved in those communications, and the reasons for each communication by Dongguk to Yale." Dongguk maintains that its communications with Yale were entirely document-based and that each document contains an explanation of the purpose of the communication. In addition, Yale has already noticed the depositions of Hyung-Taik Ahn, Euiuon Cho, and President Youngkyo Oh in their individual capacities. Dongguk asserts Mr. Ahn, Mr. Cho, and President Oh are the only Dongguk employees who had communications with Yale. Thus, the documents already produced taken in conjunction with the three planned individual depositions should give ample opportunity to obtain the information sought. Fed. R. Civ. P. 26(b)(2)(C)(ii).

Plaintiff's motion to quash Topic 6 is granted on the current record. If after the depositions of Mr. Ahn, Mr. Cho, and President Oh, Yale still believes it is necessary to conduct a 30(b)(6) deposition concerning this topic, Yale may renew its 30(b)(6) Notice on Topic 6 by way of letter to Plaintiff and the Court, with an explanation of why discovery already taken is inadequate.

11

C.   Topic 7

Topic 7 requests testimony concerning:

> Any communications between or among
> Dongguk and the media concerning Jeong
> Ah Shin, Yang Kyun Byeon or Yale,
> including but not limited to any Dongguk
> press conferences, press releases, or
> public statements concerning Jeong Ah
> Shing, Yang Kyun Byeon or Yale between
> 2005 and the present.

Dongguk objects to Topic 7 as unreasonably cumulative and duplicative of prior discovery requested by Yale. [Doc # 167 at 19]. In response to Requests for Production Nos. 27 and 31, Dongguk has produced all communications between or among Dongguk and the media concerning Shin, Yang Kyun Byeon or Yale, and all press releases and articles concerning those subjects. Thus, information sought in Topic 7 is unreasonably cumulative or duplicative and has already been obtained from some other source that is more convenient and less burdensome. Fed. R. Civ. P. 26(b)(2)(C)(i).

Plaintiff's motion to quash Topic 7 is granted on the current record. If after depositions of Mr. Ahn, Mr. Cho, and President Oh, Yale still believes it necessary to conduct a 30(b)(6) deposition concerning this topic, Yale may renew its 30(b)(6) Notice on Topic 7 by way of letter to Plaintiff and the Court, with an explanation of why discovery already taken is inadequate.

C.   <u>Topic 11</u>

Topic 11 requests testimony concerning:

> Media coverage of Dongguk between 2005 and
> the present and the effect of any such media
> coverage on Dongguk's reputation, including
> but not limited to media coverage on the
> following subjects: the hiring or employment
> of Jeong Ah Shin; Dongguk's failure to follow
> its protocols or procedures with respect to
> the hiring and employment of Jeong Ah Shin;
> the criminal investigation of Dongguk; the
> criminal investigation, indictment, and
> conviction of Jeong Ah Shin, Yang Kyun Byeon,
> and Yong Taek Lim; Jeong Ah Shin's
> relationship with Yang Kyun Byeon; Yang Kyun
> Byeon's influence on Dongguk's hiring and
> employment of Jeong Ah Shin; Dongguk's
> failure to verify Jeong Ah Shin's credentials
> before hiring her; Dongguk's failure to
> contact the University of Kansas concerning
> Jeong Ah Shin; Dongguk's investigation
> concerning Jeong Ah Shing; Dongguk faculty
> members' or other employees' objections to
> hiring Jeong Ah Shin; Dongguk's receipt of
> government funding after hiring Jeong Ah
> Shin; the removal of Jang Yoon from the
> Dongguk University Foundation Board of
> Directors; the receipt of government funding
> by temples associated with members of the
> Dongguk University Foundation Board of
> Directors; lawsuits or criminal
> investigations concerning corruption in
> Dongguk's real estate purchases, hospitals,
> and staff hiring or embezzlement of Dongguk's
> government grants; Professor Jeong-Koo Kang's
> 2005 remarks concerning North Korea; any
> indication or suggestion that Dongguk was
> immoral, dishonest, or incompetent; and any
> statements attributed to Yale or any agent or
> employee of Yale.

During the July 15, 2010 discovery conference, Donnguk

agreed that the witness designated to answer questions concerning

Topic 30 would also be prepared to talk about anything that affected Dongguk's reputation, including media coverage. [1]

Thus, both parties agree that Topic 30, for which Dongguk has already agreed to provide a 30(b)(6) witness, includes the items listed in Topic 11 which would be relevant to Dongguk's claimed damages.

D.   Topic 19

Topic 19 requests testimony concerning:

> Any statements by Dongguk University
> professors Association or any Dongguk agent,
> employee, or alumni demanding the
> resignations of Dongguk officials or members
> of the Dongguk University Foundation Board of
> Directors between 2007 and the present.

Dongguk objects to Topic 19 as is unreasonably cumulative and duplicative of Yale's Request for Production No. 95. [Doc. #167 at 22]. In response to Request for Production No. 95, Dongguk produced all statements by the Dongguk University Professors Association of which Dongguk is aware. At the July 15, 2010 discovery conference, Dongguk agreed to provide a 30(b)(6) witness to answer questions concerning what Dongguk did in response to statements by the Dongguk University Professors Association. However, as Dongguk asserts in its memorandum,

---

[1] Topic 30 seeks a witness to testify as to "Dongguk's reputation between 1906 and the present, including but not limited to Dongguk's reputation for honesty, competence and morality, and the causes of any harm to Dongguk's reputation between 1906 and the present."

"because Dongguk does not control Dongguk University Professors Association, aside from the statements themselves, Dongguk has no knowledge concerning the statements or the preparation behind [sic] the statements." [Doc. #167 at 22]. There is no 30(b)(6) witness that could provide information beyond the documents already provided.

Plaintiff's motion to quash Topic 19 is granted on the current record. If after the deposition concerning what Dongguk did in response to statements made by the Dongguk University Professors, Yale has a good faith basis to renew its 30(b)(6) Notice on Topic 19, it may do so by way of letter to Plaintiff and the Court.

E.     Topics 3 and 23

Topic 23 requests testimony concerning:

> Dongguk's policies, practices, and procedures
> concerning special hiring candidates, and
> whether Dongguk complied with those policies,
> practices, and procedures with respect to
> Jeong Ah Shin.

Topic 3 requests testimony concerning:

> The hiring of Jeong Ah Shin, including but
> not limited to the factual bases for the
> allegations contained in paragraphs 43
> through 57 of the Complaint, the decision to
> expand Dongguk's art history department in
> 2005 by creating a new faculty position, the
> art history department's role in the hiring
> of Jeong Ah Shin, where and when the position
> for which Jeong Ah Shin was hired was posted
> or advertised, the number and identities of
> persons who submitted applications for the
> position for which Jeong Ah Shin was hired

and the contents of those applications, the
role of Yang Kyun Byeon in the hiring of
Jeong Ah Shin, Ki Sam Hong's communications
with Yang Kyun Byeon concerning the hiring of
Jeong Ah Shin, Ki Sam Hong's communications
with Yang Kyun Byeon concerning the hiring of
Jeong Ah Shin, any recommendations that
Dongguk received concerning Jeong Ah Shin
before September 1, 2005, Jeong Ah Shin's
application for employment at Dongguk, any
documents that Dongguk received in connection
with Jeong Ah Shin's application, any
information that Dongguk received before
September 1, 2005 suggesting that Jeong Ah
Shin had not earned or might not have earned
a Ph.D. from Yale or a B.A. or M.B.A. from
the University of Kansas and the source(s) of
that information, the date Jeong Ah Shin was
hired and all reasons that she was hired, any
opposition and/or concerns expressed to the
hiring of Jeong Ah Shin, any efforts made by
Dongguk to verify Jeong Ah Shin's credentials
before she was hired, the role of the
Foundation in the hiring of Jeong Ah Shin,
the documents sent and/or provided to the
Foundation in the hiring of Jeong Ah Shin,
communications between Dongguk and the
Foundation concerning the hiring of Jeong Ah
Shin, and any communications between or among
Dongguk employees or agents concerning the
hiring of Jeong Ah Shin.

Dongguk objects to Topic 3 as unreasonably cumulative and
duplicative of prior discovery requested by Yale.[2] [Doc. # 167 at
10]. Dongguk objects to Topic 23 as unreasonably cumulative and
duplicative of Yale's prior Request for Production No. 3. [Doc.
# 167 at 22]. In response to Requests for Production Nos. 3, 9,

---

[2] The use of the phrase "including but not limited to" within
Topic 3 is overbroad and is accordingly stricken. See Tri-State
Hosp. Supply Corp., 226 F.R.D. at 125.

25, 68, 70, 71, 72, 73, and 74, Dongguk has already produced documents concerning Dongguk's policy or procedure regarding the hiring of persons for faculty, teaching, or research positions, including . . . "special hiring candidates;" Dongguk's plan to increase faculty through special hiring; Dongguk's recruitment of Shin; Shin's application to Dongguk; Dongguk's hiring of Shin; Dongguk's efforts to verify Shin's purported academic degrees and other credentials; and Dongguk's 2007 investigation concerning Shin's hiring, including the comprehensive internal investigation report produced by Dongguk's Internal Investigation Committee regarding the investigation. In addition, Dongguk answered Interrogatory Nos. 2, 3, 4, 6, 11, and 18, which also targeted information sought in Topic 3 and 23.

Through these Interrogatory responses Yale has sufficient evidence describing Dongguk's special hiring policies, practices and procedures. However, to the extent that questions remain unanswered by the interrogatories and documents already produced by Dongguk, Yale is entitled to question a 30(b)(6) witness about the underlying facts and assumptions of the documents and investigations. Specifically, the Court agrees that Yale should not be limited to those questions Dongguk chose to ask during its internal investigation. Although there may not be a witness that Dongguk can designate as having this corporate knowledge, Yale may inquire of those appearing in their individual capacity as

well as those designated as 30(b)(6) witnesses on other topics as to what extent, if any at all, they know whether the policies, practices, and procedures concerning special hiring candidates was followed as to Joen Ah Shin.

Accordingly, plaintiff's motion to quash Topic 3 and 23 is granted in part and denied in part.

F.    Topic 24

Topic 24 requests testimony concerning:

> Dongguk's policies, practices, and procedures
> for verifying academic credentials of
> individuals applying for faculty positions in
> 2005, whether Dongguk complied with those
> policies, practices, and procedures with
> respect to Jeong Ah Shin, and whether Dongguk
> has changed its policies, practices, and
> procedures for verifying academic credentials
> since 2005, and, if so, the reasons for any
> such change(s).

Dongguk objects to Topic 24 as unreasonably duplicative of Request for Production No. 4.  [Doc. # 167 at 24].  In response to Request for Production No. 4, Dongguk produced the relevant policies concerning Dongguk's verification of academic credentials of individuals applying for faculty positions.  Thus, Yale already has sufficient evidence describing Dongguk's policies, practices, and procedures for verifying academic credentials of individuals applying for faculty positions in 2005 making this category in a 30(b)(6) deposition unreasonably cumulative or duplicative.  Fed. R. Civ. P. 26(b)(2)(C)(I).

18

Interrogatory No. 32 asked about "any changes to Dongguk University's faculty hiring process or hiring policies since 1998 and all reasons for any such changes."

While this 30(b)(6) Topic appears duplicative to the court, if questions do in fact remain despite the information already provided in the documents and responses to interrogatories, Yale is entitled to question a 30(b)(6) witness about Dongguk's compliance with its verification policies, practices and procedures during Shin's hiring.

Accordingly, the Court assumes that Yale has a good faith basis for pursing this topic through a 30(b)(6) witness and plaintiff's motion to quash Topic 24 is denied on the current record.

G.   Topic 4

Topic 4 requests testimony concerning:

> Dongguk's employment of Jeong Ah Shin, including but not limited to any letters of resignation that Jeong Ah Shin tendered to Dongguk, any responses by or on behalf of Dongguk to any such letters of resignation, the location of documents concerning the resignation(s) and responses, the grant to Jeong Ah Shin of a leave of absence, the transfer of Jeong Ah Shin to a different department or school, the role of the Foundation in the employment status of Jeong Ah Shin, documents sent and/or provided to the Foundation in connection with the employment status of Jeong Ah Shin, the dismissal of Jeong Ah Shin, and any information that Dongguk received on or after September 1, 2005 suggesting that Jeong Ah Shin had not earned or might not have earned

> a Ph.D. from Yale or a B.A. or M.B.A. from
> the University of Kansas.

Dongguk objects to Topic 4 as unreasonably cumulative and duplicative of prior discovery requested by Yale.[3] [Doc. # 14]. In response to Requests for Production Nos. 18, 19, 20, 21, 22, and 25, Dongguk produced a copy of Shin's 2007 resignation letter and the Internal Investigation Report, as well as documents concerning Shin's 2005 leave of absence from Dongguk, Shin's departmental transfer, Shin's teaching responsibilities at Dongguk, Shin's 2007 resignation from Dongguk, all discipline that Dongguk imposed upon Shin, and the termination of Shin's employment with Dongguk. Dongguk has also provided its investigation report and the documents and interviews on which it was based.

Plaintiff's motion to quash Topic 4 is granted on the current record. If after depositions of Mr. Ahn, Mr. Cho, and President Oh, Yale has a good faith basis to pursue Topic 4 through a 30(b)(6) deposition, Yale may renew its 30(b)(6) Notice on Topic 7 by way of letter to Plaintiff and the Court, with an explanation of why discovery already taken is inadequate.

---

[3] The use of the phrase "including but not limited to" within Topic 4 is overbroad and is accordingly stricken. See Tri-State Hosp. Supply Corp., 226 F.R.D. at 125.

III. <u>The Scope of Discovery for Topics 2, 27, and 28</u>

A.   <u>Topic 2</u>

Topic 2 requests information concerning:

> Dongguk's request for documents concerning
> Jeong Ah Shin from the Foundation, including
> but not limited to which documents were
> requested, when the requests(s) were made,
> who was involved in the communications
> concerning the requests, whether there are
> any documents reflecting the communications
> concerning the requests, which documents were
> provided, whether any requests were refused,
> and the reasons given, if any, for the
> refusal to provide the documents requested.

Plaintiff's counsel represented in his brief and at the July 15 discovery conference that he personally requested from the Foundation "documents concerning Jeong Ah Shin." [Doc. #167].  He further represented that he had no reason to believe that the Foundation withheld requested information.  Accordingly, knowledge of the Foundation is best sought from the Foundation, but not from plaintiff, Dongguk University.  Therefore, defendant's request for a 30(b)(6) witness from Dongguk University is inappropriate.

Since depositions of opposing counsel are disfavored, <u>see United States v. Yonkers Board of Ed.</u>, 946 F.2d 180, 185 (2d Cir. 1991), any additional information regarding the Foundation's productions should be sought directly from the Foundation.[4]

---

[4]Plaintiff's counsel also made clear at the July 15 discovery conference that he has disclosed all of his knowledge regarding information that the Foundation has produced for him.

Plaintiff's counsel agreed to provide opposing counsel with the name of the person with whom he spoke at the Foundation. The Court finds this to be the most appropriate avenue for defendant to pursue their Topic 2 interests.

Accordingly, plaintiff's motion to quash Topic 2 is granted.

B.   Topic 27

Topic 27 requests information concerning:

> Dongguk's decision to sue Yale, including but
> not limited to all people involved in that
> decision and all reasons that Dongguk decided
> to sue Yale.

Plaintiff invokes the attorney-client privilege for communications made between Dongguk and counsel regarding the decision to sue. However, on July 15 defendant clarified its intentions behind Topic 27; Yale does not want to penetrate the attorney-client privilege but rather Yale would like to question a representative of Dongguk based on a Korean magazine article that discussed why Dongguk decided to sue. Yale argues that communications between Dongguk Vice President Jin Soo Han and a Korean magazine regarding the decision to sue are not privileged.

Statements made to the Korean media are best examined in the individual depositions of those who made them. Yale is entitled to depose Vice President Han and ask about statements he made to the media as these statements are clearly not privileged. When

---

Thus a deposition of plaintiff's counsel would likely yield
nothing.

appropriate, Dongguk may invoke the attorney-privilege at the individual depositions.  Should a disagreement arise on the invocation of the attorney-client privilege, the parties are to contact the Court immediately.

      C.   <u>Topic 28</u>

Topic 28 requests testimony regarding:

> Any opinion polls or surveys conducted by
> Dongguk concerning public perceptions of
> Dongguk from 2000 to the present, including
> but not limited to the identity of the
> persons who prepared the poll or survey, the
> reason the poll or survey was prepared, and
> the results of the poll or survey.

Dongguk has made clear that, "No Dongguk representative participated in the administration of the opinion poll or drafting of the opinion poll report."  [Doc. #167].  The person best equipped to answer questions regarding the poll is the expert, whom defendants may depose upon completion of fact discovery.

Dongguk has agreed to provide a 30(b)(6) witness for Topics 20, 21 and 22 "who will be able to provide the underlying facts regarding its damage claim."  [Doc. #167].  Rather than designate an additional corporate witness for topic 28, defendant may depose the 30(b)(6) witness on matters pertaining to the effect of the opinion poll on Dongguk's damage claim, as well as Dongguk's interpretation of the facts and terms used by the expert in the poll.  The opinion poll itself, the expert

testimony, and Dongukk's 30(b)(6) witness for its damage claim should be sufficient to address the issues in Topic 28.

Accordingly, plaintiff's motion to quash Topic 28 is granted.

Defendant's Motion for Fees and Costs

Defendant moves the Court for fees and costs associated with defending plaintiff's Motion to Quash. Defendant argues that, "If the Court denies Dongguk's motion for a protective order, it "must . . . require" Dongguk, its counsel, or both to pay Yale's "reasonable expenses incurred in opposing the motion, including attorney's fees," unless Dongguk's motion was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B); see also D. Conn. L. Civ. R. 37(c). However, the Court find Dongguk's position substantially justified and as such DENIES defendant's Motion for Fees and Costs.


Conclusion

Accordingly, plaintiff's Motion to Quash [Doc. #167] is granted in part and denied in part. For those topics that the Court has identified as subject to renewal, defendants are to do so by way of letter to plaintiff and the Court.

The Court cautions the parties that 30(b)(6) depositions can be used to test theories, challenge facts and fill in information

24

gaps, but they cannot be used to reinvent the wheel by asking questions that have already been completely answered.

Counsel are on notice that failure to comply with court orders may result in sanctions including, but not limited to, costs and fees, preclusion of evidence or causes of action, and other appropriate sanctions up to and including dismissal of the case of entry of default judgment. Fed. R. Civ. P. 37. The Court hopes that counsel can work cooperatively to conduct discovery efficiently and minimize the expense and inconvenience to both parties.

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 17 day of August 2010.

> _____/s/_____
> HOLLY B. FITZSIMMONS
> UNITED STATES MAGISTRATE JUDGE