UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

DONGGUK UNIVERSITY,             .   Case No. 3:08-CV-00441
                                .   (TLM)
               Plaintiff,       .
                                .   Bridgeport, Connecticut
        v.                      .   February 16, 2011
                                .
YALE UNIVERSITY,                .
                                .
               Defendant.       .
. . . . . . . . . . . . . . . .

                         ORAL ARGUMENT
          BEFORE THE HONORABLE HOLLY B. FITZSIMMONS,
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:      McDermott, Will & Emery LLP
                        By:  ROBERT A. WEINER, ESQ.
                        50 Rockefeller Plaza
                        340 Madison Avenue
                        New York, NY 10173


For the Defendants:     Day Pitney, LLP
                        By:  HOWARD FETNER, ESQ.
                             FELIX J. SPRINGER, ESQ.
                        242 Trumbull Street
                        Hartford, CT 06103

_____

```
 1              (Proceedings commenced at 2:00 p.m.)
 2                   THE COURT:  Good afternoon.
 3                   MR. WEINER:  Good afternoon.
 4                   MR. FETNER:  Good afternoon.
 5                   MR. SPRINGER:  Good afternoon.
 6                   THE COURT:  This is Case Number 08-CV-441,
 7      Dongguk v. Yale, a case assigned to Judge Melancon.
 8                   So if Counsel will appear for the record,
 9      I'll be happy hear you on this issue of letters
10      rogatory.
11                   MR. WEINER:  Robert Weiner from McDermott,
12      Will & Emery for Dongguk University.
13                   THE COURT:  And how are you, Mr. Weiner?
14                   MR. WEINER:  Good, thank you.
15                   MR. FETNER:  Howard Fetner of Day Pitney for
16      Yale University.
17                   MR. SPRINGER:  Felix Springer of Day Pitney
18      for Yale University.
19                   Good afternoon, Your Honor.
20                   THE COURT:  Good afternoon.
21                   Mr. Fetner and Mr. Springer, how are you
22      today?
23                   MR. FETNER:  Good.
24                   MR. SPRINGER:  Very good.
25                   THE COURT:  Well, the matter has been, it
```

1    seems to me, well and extensively briefed, so if I can

2    just direct a few questions to counsel, then I'll be

3    happy to hear whatever else you would like to say.

4          Since it's my understanding that the letters

5    rogatory is a request from court to court, or a judge

6    to judge, I'm wondering why it wouldn't be appropriate

7    for what the Court issues to seek whatever it is that

8    Counsel on both sides think they're going to need in

9    order to try the case appropriately, and if so, and if

10   there's a problem with that, I would like to know what

11   it is.

12         Mr. Fetner?

13         MR. FETNER:  Would you like me to take the

14   podium, Your Honor?

15         THE COURT:  Wherever you're comfortable

16   speaking from as long as you're within shouting

17   distance of a microphone.

18         MR. FETNER:  I'm happy to stick around here

19   then.

20         I think Yale's fundamental position on that

21   issue is that it does not object to the Court's

22   requesting from the Korean authority, whatever

23   documents Yale would like to obtain, or whatever

24   documents Dongguk what like to obtain.

25         Yale's only objection to the proposal that

1    Dongguk made in its brief is that Dongguk wants to

2    expand Yale's own proposed request to include Dongguk's

3    far broader, more elaborate and (unintelligible) not

4    apparently relevant to this case request.

5           While I understand that issues of breadth,

6    non-specificity are best resolved by a Korean court,

7    it's nevertheless our position that Yale's far more

8    limited and carefully tailored request, which was

9    written with Korean law and, in particular, Korea's

10   Article 23 declaration in mind, should not itself be

11   burdened with Dongguk's request which, to our reading,

12   completely flouts that declaration.

13          And to be as candid as possible, our concern

14   is that a joint request that asks for the particular

15   documents identified in Yale's proposed request, as

16   well as the open-ended categories of documents

17   identified in Dongguk's brief, would be far less likely

18   to be granted by a Korean court.

19          THE COURT:  And when you say -- I mean, does

20   your research indicate that a request which says

21   something along the lines of, "All statements given by

22   Dongguk employees in the course of" however the

23   investigation is described, "all statements given by

24   administrative education employees in connection with

25   the investigation, and all other interviews, and the

1    prosecutor's file relating to this investigation, and

2    this investigation," would be something that would be

3    offensive to the Korean court, in such a way so that

4    they wouldn't give anything?

5            MR. FETNER:  I guess the response to that is

6    twofold.

7            First of all, with respect to Korea's

8    particular interpretation of the declaration, we're not

9    aware of any case law interpreting it.

10           THE COURT:  Okay.

11           MR. FETNER:  So that's somewhat of --

12   basically a best guess on all of our parts, at least as

13   far as we are aware.

14           With respect to the case law on this issue

15   generally, there is also, as far as our research has

16   found, very little of it.  Because these requests are

17   generally pro forma; that is, these requests from the

18   issuing court are --

19           THE COURT:  Uh-huh.

20           MR. FETNER:  -- pro-forma, not to say they're

21   pro forma at the other end, there's very little case

22   law discussing them at all.

23           THE COURT:  Uh-huh.

24           MR. FETNER:  I imagine they're often just

25   granted without even a published opinion whatsoever,

1   and when there is a published opinion, it -- they're

2   not generally extensive, and they don't generally get

3   down from the (unintelligible) of the sort of -- of the

4   issue that your question addresses.

5          So our concern is not that we can cite

6   chapter and verse of a particular case law that holds

7   the Korean court will reject this proposal, simply that

8   based on our reading of the declaration itself, and the

9   way courts have generally interpreted the same sort of

10  declaration suggest that that's a likely result.

11         And to be clear, for the same reasons that we

12  indicated in our brief, that we don't think it would be

13  appropriate for this Court to decline to issue Yale's

14  proposed request based on any particular concern about

15  whether it would be granted in Korea, we think the same

16  is true of any proposed request that Dongguk makes.  We

17  just don't think that request should be joined to

18  Yale's proposed request, and if Dongguk wishes, or if

19  the Court wishes to issue the particular request that

20  Dongguk proposes in its brief, separate and apart from

21  Yale's proposed request, Yale would not object to that,

22  and has not objected to that.

23         And the one caveat I'd add is we would

24  prefer, if the Court winds up taking that path, that

25  both requests; that is, the request proposed by Yale

1    and whatever it is that Dongguk proposes, indicate

2    explicitly, that the Court issues each request

3    independently of any other request, and would expect

4    the reviewing court to resolve each on its own merits,

5    without reference to any other request issued by the

6    Court.

7         (Pause.)

8         MR. FETNER:  I would also add, from the

9    little we've seen of the language that Dongguk proposes

10   that the Court use to request additional documents,

11   aside from the issue of whether it's proper within the

12   scope of Korea's Article 23 declaration, it is not

13   immediately apparent to us that the broad scope of

14   documents that Dongguk apparently would request is even

15   relevant to this case.

16        I -- As I've already indicated, Yale is not

17   objecting to the request on that basis; that is,

18   provided that the request is not related to Yale's, but

19   a request for essentially all documents in connection

20   with an apparent investigation of Dongguk is, to our

21   reading, of no -- has no bearing whatsoever, not just

22   on the documents that Yale has requested, in

23   particular, but on any issue that's before the Court.

24        Dongguk's own 30(b)(6) witness made very

25   clear that to the extent Dongguk was the subject of any

1    prosecutorial investigation at all in 2007, it was

2    unrelated to Dongguk's hiring of Jeong Ah Shin,

3    unrelated to the relationship between Ms. Shin

4    (phonetic) and Yang Kyun Byeon, unrelated to any

5    statements issued by Yale, unrelated to Dongguk's

6    verification of Ms. Shin's Ph.D., and that any Dongguk

7    employees interviewed by prosecutors in connection with

8    such investigation included no questions whatsoever on

9    any of the topics I just mentioned.  So it's not

10   immediately apparent to us, what the relevance of such

11   documents would be.

12           I understand the Court's concern -- or I

13   don't want to put words in the Court's mouth, but

14   apparent concern with a sort of fairness.  Yale has

15   requested certain documents.  Dongguk would like to

16   request certain documents.  Wouldn't be fair to simply

17   request all of them, apart from the issue of whether

18   the request should be made jointly or separately, or

19   even at all.

20           I think it's important to make sure that the

21   Court is aware that the documents that Yale is

22   requesting have nothing to do with any investigation of

23   Dongguk.  Dongguk's suggestion that Yale's request is

24   somehow prejudicial to Dongguk, and should be broadened

25   in a way to make it fair to Dongguk, and include

1   additional material that somehow exonerates Dongguk, is

2   simply contrary to the actual state of events.

3          The documents that Yale is requesting are

4   statements that Yale, excuse me, Dongguk employees

5   voluntarily gave in support of Dongguk's own complaint

6   against Ms. Shin.  The statements themselves made clear

7   that they're a part of the investigation of crimes

8   committed by Ms. Shin.

9          It is, to be charitable, beyond our

10  comprehension how it would somehow be prejudicial to

11  Dongguk to obtain such documents in connection with

12  this litigation, regardless of whether any additional

13  documents are obtained, and to the extent that, again

14  to be perfectly clear, that the Court is inclined to

15  request whatever documents it is that Dongguk would

16  like to request, Yale just sees no reason whatsoever,

17  that the two requests should be joined in any way.

18         If the Court has anymore questions, I'm happy

19  to entertain them.

20         THE COURT:  Thank you.

21         Let me hear what Mr. Weiner has to say about

22  this.

23         MR. WEINER:  I'd like to approach, Your

24  Honor.

25         THE COURT:  You may.

1          MR. WEINER:  I feel like this is Act 2.

2     First motion that we made, to compel, was Act 1, and I

3     would -- just want to remind Your Honor of what you

4     said in your ruling in connection with that motion, and

5     this goes to our point of completeness, which we raised

6     at that point, and the prejudice at not having

7     completeness.

8               And you wrote:

9               "Further, to Dongguk's point, Yale submits

10                   that because of its inability to authenticate

11                   the documents without disclosing their

12                   origin, it wants to obtain the same documents

13                   through the proper channels, but there's no

14                   question about the completeness."

15              That's what you wrote.  They have not only

16     not sought to get all the documents in their

17     possession, they've only cherry-picked a few in their

18     possession.

19              We have been saying, from the very moment

20     this issue arose, that there is a serious issue

21     regarding completeness.  Before I turn to that -- And I

22     want to show you why it is relevant.  In fact, their

23     own reply memorandum makes it clear why it's relevant.

24              I'd like to address this issue about somehow

25     that we are seeking a fishing expedition, Judge, the

1    words that they used, and they cited several cases for

2    the proposition that Your Honor should turn down the

3    two limited categories that we suggested which, by the

4    way, subsume everything they've asked for, two limited

5    categories, and I'd like to hand to Your Honor, the

6    cases, and you'll note that I've tabbed the appendices

7    in each case, and I would like Your Honor to take a

8    look at those tabs.  Those are the requests that were

9    issue -- in issue in those cases.

10           As you can see, Your Honor, they go on for

11   pages.  They are broadly worded.  They are the classic

12   American overstatement of discovery requests, in both

13   those cases.

14           One of them involves Cyprus law, so I'm not

15   sure what the particular relevance is, but the point is

16   the request in those cases have nothing to do with the

17   limited request that we make in this case.

18           We are saying that we need to find out what's

19   in the prosecution files, and I ---Your Honor, I

20   presume you have the reply memorandum before you?

21           THE COURT:  I do.

22           MR. WEINER:  If you turn to page 4 of Yale's

23   reply memorandum --

24           THE COURT:  Four?

25           MR. WEINER:  Four, and at the first full

1    paragraph.

2         And do you see where it says Yong Taek Lin

3    was indicted --

4         THE COURT:  Yes.

5         MR. WEINER:  -- and convicted of seeking and

6    receiving illegal payment, and then it goes on to say

7    that Dongguk's former president, Hong Ki Sam, also was

8    not exonerated, very interesting choice of words, "also

9    was not exonerated," and then they quote a newspaper

10   article from the prosecutor which, by the way, was an

11   exhibit at the depositions of my clients that Yale has

12   been pursuing, and then they argue from this, that you

13   can infer that there is some real evidence behind the

14   investigation.

15        He was not exonerated, and they quote an

16   article that seems to suggest that there was real

17   evidence behind the investigation, and it's that

18   evidence that we say doesn't exist.  In fact, we say

19   the evidence that exists exonerates President Hong,

20   exonerates Dongguk.

21        They have made this whole issue of Mr. Lin

22   (phonetic) or Mr. Lin, as it's pronounced, and vice --

23   and former President Hong, a centerpiece of their

24   defense.  It is been the centerpiece of their defense

25   from the moment they filed their motion to dismiss, and

1    to allow these kinds of innuendo to be used in this

2    case, without getting the underlying evidence, is the

3    issue that we are objecting to.  If you -- the

4    prosecution had something, let's find out what it was.

5            In our view, this is a prosecutor backdown.

6    Prosecutor said, "We're not (unintelligible) but we

7    really have something."  That's backdown.

8            And, in fact, at the trial, and it is

9    intricately involved, if you look at the prosecution's

10   statement, he's talking about John (phonetic), he's

11   talking about Shin, and he's talking about Dongguk and

12   its president.  These are intertwined.  These aren't

13   separate issues, as Yale's counsel would say.  So it is

14   our strong view, Your Honor, in terms of fairness, and

15   need, and appropriateness.

16           We have given Your Honor two requests.  They

17   are very straightforward.  You need do nothing else.

18   Those are the only requests that need to be made

19   because they will pick up what Dongguk wants and what

20   Yale wants.

21           THE COURT:  But what would be the harm in

22   specifying Yale's --

23           MR. WEINER:  Because then you run the risk of

24   rewarding Yale's -- someone's illegal behavior.  Yale

25   is only able to pinpoint specific documents because it

1    illegally obtained them.  We didn't have the luxury of

2    getting the same illegally-obtained documents.  We're

3    not in the position of pointing them any further than

4    we have.

5            So what Yale is really saying to Your Honor

6    is, "Well, maybe let their request be denied, but since

7    we got our documents illegally, and we can identify

8    them, maybe the Korean court will say, 'That's okay.'"

9    Well, that's not okay, that's prejudicial, and they

10   want you to reward them for the illegal act, by

11   allowing them to specify based upon something that they

12   should never have received in the first place.

13           If this had gone in the normal course, in the

14   normal course of discovery using the Hague Convention

15   and letters rogatory, they would be in no different

16   position than I am as I stand here today.  They would

17   say, "We know there are some documents in there.  We

18   don't know what they are specifically, but this is as

19   best we can do to narrow them down."  That's why I

20   think it's very important that the two categories that

21   include both of our requests, and only those two

22   categories, be submitted to the Korean judge.

23           THE COURT:  And the two categories that you

24   have asked for --

25           MR. WEINER:  That's on page 3 and 4.

1            THE COURT:  Three and four.

2            MR. WEINER:  Very straightforward.  One's for

3    statements, the other's for documents.

4            And there's nothing that Yale wants that's

5    not included -- picked up by those two categories.

6            And there's one further thought.  I don't

7    know if Yale's counsel is prepared to stipulate that

8    they won't use the investigation of President Hong or

9    the investigation of Mr. Lin in their case.  If they're

10   willing to stipulate that that's not part of our case

11   going forward, then my request will be moot.

12            THE COURT:  Will not use as statements?

13            MR. WEINER:  Just --

14            THE COURT:  You're asking them to

15   stipulate what?

16            MR. WEINER:  If they want to stipulate that

17   they will not make part of the lawsuit going forward,

18   the investigations into Mr. Lin, the investigation into

19   Dongguk, the investigation into former Present Hong,

20   that not be part of the trial and not be part of this

21   lawsuit going forward, then I would say, "You know

22   what, they can then specify what they want."

23            MR. FETNER:  May I respond, Your Honor?

24            THE COURT:  Of course.

25            MR. FETNER:  I suppose the best place to

1    begin is where Mr. Weiner began, and that is this

2    notion that Yale has somehow backtracked on some sort

3    of promise to alleviate Dongguk's concern about

4    completeness.

5           As I'm sure the Court will remember, when

6    Dongguk raised the word, if not the concern of

7    completeness, in the context of its previous motion to

8    compel, Yale responded very clearly, "If Dongguk is

9    interested in completeness, it should join in Yale's

10   contemplated request for all of the documents in the

11   file of Ms. Shin's criminal case."  So there's no

12   question about completeness of anything.

13          Dongguk's response, and I'd like to read it

14   to you, is:

15              "Suffice it to say Dongguk does not believe

16              that any of the Korean government documents

17              are relevant to this proceeding, and even if

18              they are, it is not Dongguk's obligation to

19              help Yale prove its case."

20          That's page 9 of Dongguk's reply brief on its

21   motion to compel.

22          So it's, at the very least, ironic to hear

23   Mr. Weiner now says that the very documents that

24   Dongguk previously represented as entirely irrelevant

25   to this proceeding are, I'd like to -- are needed, only

1    fairness requires their production, and it would be

2    only appropriate if those documents are requested, as

3    well, and Dongguk would somehow be prejudiced if

4    they're not, all of which I -- and I should have begun

5    here, I apologize, is aside from the point that -- I

6    hope I was clear enough in my previous presentation,

7    but if not I'll make clear now, Yale doesn't object to

8    Dongguk's request.  If Dongguk thinks it would be fair

9    and appropriate to request documents that it wants to

10   request, as I said in the first place, Yale does not

11   object to that request.  Our only concern is that their

12   request not be attached to Yale's own request.

13          And the notion that Yale's request somehow

14   cherry-picked documents is, again, I hope, dealt with

15   appropriately in our brief, but to the extent there's

16   any lingering concern, that's not the case at all.  The

17   documents that Yale has requested, the only documents

18   that Yale is aware of, that it could identify with any

19   specificity.

20          Mr. Weiner's repeated, and I am very

21   surprised to hear it, his repeated assertion that Yale

22   obtained documents illegally baffles me, both because

23   we've already been over this ground and there's

24   absolutely no reason whatsoever to believe that Yale

25   obtained anything illegally.  Regardless, I don't want

1   to re-litigate that issue any more than I suspect Your

2   Honor does.

3           Regardless of that point, it is simply not

4   the case that Yale is only aware of the existence of

5   these documents by virtue of the documents themselves.

6   Dongguk itself has produced documents that it produced,

7   that it created, that identified the Dongguk employees

8   who voluntarily provided statements to the prosecutor

9   in support of Dongguk's complaint against Ms. Shin.

10  They identify the name of each employee.  They identify

11  the date the employee testified to the prosecutor.

12  They identify the subject of the employee's testimony.

13          So it is just -- aside from the issue of

14  illegality, it's simply not true.  Yale is well aware

15  of the Dongguk employees who provided statements,

16  regardless of those documents.

17          Again, Mr. Weiner says, "We need to find out

18  what's in the prosecution's file."  I really don't see

19  why that would be the case, but again, I am happy to

20  reiterate this as many times as it takes.  Yale does

21  not object to Dongguk's requesting whatever it wants

22  about the prosecution file.

23          I do think it's worth pointing out though,

24  that the discussion and the prosecutor's explanation of

25  the evidence against Mr. Hong, and the reasons for not

1   seeking an indictment of Mr. Hong, have nothing to do

2   with what Dongguk seems to characterize in its proposed

3   request as some sort of investigation of Dongguk.

4        The investigation of Dongguk, as Dongguk's

5   own 30(b)(6) witness made clear, had to do with

6   something relating to Dongguk's receipt of grants, and

7   it was very clear in his 30(b)(6) testimony, which I'm

8   happy to provide a copy of to the Court if you would

9   like, there were no questions asked of anyone from

10  Dongguk about the hiring of Shin, the verification of

11  her degree in the communication with Yale, anything

12  said by Yale, or apparently anything to do with Ms.

13  Shin at all.

14        With respect to Mr. Weiner's suggestion that

15  only Dongguk's two requests should (unintelligible) to

16  the Court, I am at somewhat of loss to respond to that

17  now, because Yale's perfectly clear motion and brief

18  have been in Dongguk's possession for several weeks,

19  and despite Dongguk's filing a brief opposing that

20  motion, this is the first Dongguk has even suggested

21  that Yale's requests are somehow inappropriate or

22  shouldn't be granted, and I am not aware of any

23  authority of any kind, legal or factual, for denying

24  Yale's (unintelligible) request, regardless of whether

25  Dongguk wants to make separate requests, and I can't

1    even fathom a basis for that.

2            Finally, with respect to Mr. Weiner's

3    suggestion that the parties now stipulate that any

4    criminal investigation is not part of the case, I'm not

5    quite sure what he would consider to be part of such a

6    stipulation, but I am quite sure that in light of

7    Dongguk's claim that its reputation was somehow damaged

8    by something that Yale did, the criminal act and

9    conviction of Dongguk's chairman will undoubtedly be a

10   part of this case.

11           Moreover, to the extent that anything that

12   any of the Dongguk employees said to the prosecutor

13   contradicts the explanations that Dongguk has provided

14   in this lawsuit, Yale would very much like those

15   statements to be part of the case too, and does not see

16   any sort of fairness in allowing Dongguk to essentially

17   say one thing to the folks in Korea, another thing to

18   the folks in the United States, and hope the two sides

19   never get together, which is, I suspect, what's going

20   on.

21           Beyond that, Your Honor, I can reiterate once

22   more that if the Court is inclined to grant either or

23   both requests (unintelligible) request, only that they

24   not be branded onto each other, and that each be

25   allowed to rise or fall on its own.

1            With respect to the case law that Mr. Weiner

2    handed up to the Court, I have not seen those cases in

3    particular, but I can only say that whatever is in

4    those cases about the breadth or scope of document

5    requests, to me, is a separate issue from Yale's

6    concern.

7            Yale's concern, as, again, I hope I've made

8    clear, is not that Dongguk's proposed request is too

9    broad to be approved by this Court, Yale's concern is

10   that Dongguk's request is too broad to be approved by

11   the Korean court, and I suspect Mr. Weiner did not hand

12   Your Honor case law suggesting that the Korean court

13   would, in fact, approve of that request because I'm

14   simply not aware of any such case law.

15           THE COURT:  Mr. Weiner gave me <u>AstraZeneca v.</u>

16   <u>Ranbaxy Pharmaceuticals</u>, a New Jersey case, 2008 U.S.

17   Dist. Lexis 6337, which has a --

18           MR. WEINER:  It's the cases cited in Yale's

19   briefs, Your Honor.

20           THE COURT:  Yes.

21           MR. FETNER:  But I can be sure that nothing

22   in the --

23           THE COURT:  Yes.

24           MR. FETNER:  -- cases say anything about --

25           THE COURT:  And the other one is <u>Metso</u>

1    Minerals, Inc. against Powerscreen International

2    Distribution, Limited., which is the 2008 U.S. Dist.

3    Lexis 24620.

4            MR. FETNER:  I have nothing further, Your

5    Honor.

6            MR. WEINER:  Your Honor, just quickly.

7            Yale cited four cases.  The two that I handed

8    to Your Honor were the two cases where they talked

9    about a fishing expedition, in particular.  That's why

10   I handed them up to Your Honor, to give you what was

11   involved in those cases.

12           The other case -- One of the other cases was

13   a concurring/dissenting opinion of a Supreme Court

14   decision which, quite frankly, is not controlling on

15   anybody, and really is not pertinent to this particular

16   matter.

17           And the last case supports our position that

18   it's not the Court's duty here, to determine what a

19   foreign court will do.  That's up to the foreign court

20   to determine what it would do.

21           I just want to briefly go back to a couple of

22   factual statements that were just made by Mr. Fetner.

23           Mr. Fetner, you know, refers to Dongguk's

24   chairman, and things like that.  I just want to make it

25   clear on this record, and make sure Your Honor

1    understands, that's Mr. Lin.  Mr. Lin was indicted and

2    he was convicted, and the crime he was indicted and

3    convicted for had to do with his personal

4    (unintelligible).  It had nothing to do with Dongguk

5    Foundation, of which he was the chairman, and which is

6    a separate entity of Dongguk University, and it had

7    nothing to do with Dongguk University, and that's why

8    that we have said from the day -- very first day, his

9    conviction has nothing to do with this case.  It's like

10   saying that since Martha Stewart was convicted of

11   10(b)(5) violations and she sat on the board of several

12   well-known charities, that somehow those charities were

13   implicated because she had a personal crime.  It's not

14   relevant.  We will continue to take that position, that

15   it's not relevant.

16        But to suggest that the investigations of Ms.

17   Shin and Mr. Bjorn and Dongguk were somehow separate is

18   a misreading of even the document they cite in their

19   brief, and when it states, for example, in that quote

20   that I showed you, Your Honor, on page 4, was talking

21   about Mr. Hong.  At the time, Dongguk desperately

22   needed the government funds.  Those are the illegal

23   grants that were supposedly obtained that -- in

24   connection -- as the quid pro quo for hiring Ms. Shin.

25   There is no evidence of that.

1          The actual claim the was asserted, which was

2    a bribery claim, there was -- was thrown out for lack

3    of evidence, but it was these kinds of articles, quite

4    frankly, that caused the type of damage that Dongguk

5    suffered, and it was these articles that were as a

6    result of Yale's misstatements regarding the hiring of

7    Shin.

8          So, I just wanted to correct that, as part of

9    the record.

10         As to what I said earlier, Your Honor, I

11   stand by what I said.  The two document requests, and

12   Mr. Fetner is right, I hadn't thought it through, but

13   when I read his opposition and realized essentially

14   what they wanted to do is cherry-pick their documents,

15   take only a portion of those in their possession, send

16   them off to Korea, and let us just take the risk of

17   having our request denied, as I thought that through,

18   fundamentally unfair.  What's good for the goose is

19   good for the gander.  We should all have the same

20   opportunity to get the same documents.

21         THE COURT:  Well, what basis is there for

22   your thinking that these are not all the documents that

23   Yale has?

24         MR. WEINER:  Because we know what they have.

25   They produced what they have, --

1              THE COURT:  Okay.

2              MR. WEINER:  -- and this wasn't everything

3      that they produced.

4              THE COURT:  All right.

5              And are there documents that they've produced

6      that you would like to get from the Koreans?

7              MR. WEINER:  No, but what we do want -- Those

8      documents they didn't include were the prosecution's

9      notes, and things of that nature.

10             THE COURT:  Uh-huh.

11             MR. WEINER:  What we're looking for are the

12     actual statements of, for example, the government of

13     the administrative education, --

14             THE COURT:  Uh-huh.

15             MR. WEINER:  -- which would support what I

16     said a few moments ago, there was no untoward -- no

17     illegal act in connection with getting the grants that

18     they did get.

19             In fact, as -- if I recall correctly, they --

20     those grants were in place long before the Shin hire.

21             MR. FETNER:  Your Honor, may I respond very

22     briefly?

23             THE COURT:  Yes.

24             MR. FETNER:  And I will indeed be as brief as

25     possible.

1           The first thing I want to make clear, I'm not

2   sure it's relevant to anything before the Court except

3   that it is -- I want the record to be clear, Mr. Weiner

4   has argued, apparently, that the conviction of

5   Dongguk's chairman is somehow irrelevant to this case.

6   Dongguk's 30(b)(6) designee freely admitted in his

7   deposition testimony, that that conviction and the

8   media attention to it harmed Dongguk's reputation at

9   the very time that Dongguk claims some act of Yale

10  harmed its reputation.  So the issue is undoubtedly

11  relevant to the case.

12          Mr. Weiner once again suggests that the

13  investigations of Dongguk, whatever that consisted of,

14  and of Ms. Shin and her co-defendants, were not

15  separate.  I'd like to read from the testimony of a

16  different 30(b)(6) designee at Dongguk.

17              The question is:

18              "MR. CHO: Did Dongguk consider the

19                investigation of the projects by the

20                prosecutors as part of the investigation of

21                Ms. Shin?"

22          And the "projects" refers to grants.

23  "Projects" is the word that Mr. Cho used for the grants

24  that Mr. Weiner has been talking about.

25              "Answer: No."

1          So there doesn't really seem to be any

2     question about that.

3          And with respect to Your Honor's question of

4     Mr. Weiner, as to whether the documents that Yale seeks

5     in its proposed request for all of the documents that

6     Yale has, I want to be very clear.  Mr. Weiner is

7     correct that there are other documents that Yale

8     doesn't seek in this request, and there are two reasons

9     for that.  One is the reason mentioned by Mr. Weiner.

10    Some of those documents are just insignificant, or not

11    relevant in any way, and the other is the rest of these

12    documents are documents whose authenticity Dongguk

13    hasn't contested, or were produced independently by

14    Dongguk in the lawsuit.

15         So even within that set, Yale isn't cherry-

16    picking anything.  It's simply all of the relevant

17    documents that have not independently been

18    authenticated.

19         And again, on the issue of fundamental

20    fairness, I don't -- can't conceive of any way that it

21    would be fundamentally unfair for Yale to go through

22    the proper procedure, as it has said it did, filed the

23    motion with this Court (unintelligible) requests,

24    explained the relevance of the documents requested, and

25    still have heard no objection to the relevance of the

1    documents requested.

2           For that request to be denied simply because

3    Dongguk wants other documents, whose relevance I still

4    have not even heard an argument for, notwithstanding

5    that, there was no objection to Dongguk's request,

6    provided it's separate from Yale's.  I just want to be

7    crystal clear on that because Mr. Weiner seems to be

8    responding to an argument that Yale is trying to

9    prevent Dongguk from doing or requesting something, and

10   that that is simply not the case.

11          That is all.

12          THE COURT:  Have you --

13          MR. WEINER:  Mr. Fetner's position has

14   changed, Your Honor, because his reply papers actually

15   said he doesn't want you to add our request at all.

16          So --

17          MR. FETNER:  As I think I've made very, very

18   clear, Your Honor, we do not want the Court to add

19   Dongguk's request to Yale's request.  I'm surprised I

20   have to find myself saying that yet again.  We

21   absolutely do not want that to happen.

22          What we don't object to is Dongguk's requests

23   being sent separately from Yale's, and again, I think

24   I've said that several times this afternoon, but to the

25   extent there's any remaining doubt, let me restate

1   Yale's position.

2          Yale would like the Court to issue the

3   request that Yale drafted and attached to its motion,

4   as a proposed request.  If Dongguk wants the Court to

5   make additional requests, Yale does not object to any

6   such requests, provided they're not included as part of

7   Yale's own request, and included separately as another

8   request.

9          That's exactly what I've said several times,

10  but if there's any remaining doubt, let that be the

11  last word of Yale's position on that issue.

12          THE COURT:  And have you gotten any guidance

13  from the State Department or otherwise, as to how long

14  you think it might take for there to be compliance with

15  the --

16          MR. WEINER:  It's a new law in Korea, Your

17  Honor, and nobody knows.

18          MR. FETNER:  Yes.  Our understanding is Korea

19  has no experience responding to these sorts of

20  requests, so it's pretty much been anybody's guess.

21          MR. WEINER:  And just so I will make -- My

22  last word is our position is you should just use the

23  two.  If you want to use Yale's as well as the two,

24  single document to the Korean courts.  They'll figure

25  out what they want to give us what they don't want to

1    give us.

2        (Pause.)

3            THE COURT:  All right.  Thank you all.

4            Anything else?

5            MR. SPRINGER:  Your Honor, might I broach

6    another subject with Your Honor?

7            THE COURT:  You may.

8            MR. SPRINGER:  A while back Your Honor had

9    indicated that we should come to you to obviate the

10   need for motions.

11           THE COURT:  Yes.

12           MR. SPRINGER:  I'm not certain there will be

13   such a need, but very recently Dongguk disclosed a

14   Brand (phonetic) rehabilitation consultant.  We had

15   issued interrogatories and requests for production,

16   which are due roughly March 7th, roughly.  I may be off

17   some days.  Their responses are due.

18           When we had submitted a scheduling order to

19   Judge Melancon, we had left open-ended, that particular

20   part of the discovery.  We had indicated fact discovery

21   would otherwise end on February 28th, but that that

22   part would be open-ended.

23           Judge Melancon give us a deadline of March

24   15th for that discovery.

25           THE COURT:  Yes.

1          MR. SPRINGER:  We will hopefully get --

2    obtain Dongguk's responses in a timely fashion.  We

3    imagine there may be some Korean documents that will be

4    -- need to be translated, and then we will need to make

5    a decision as to whether further discovery is

6    necessary, including potentially, the deposition of the

7    consultant, based on what we see.

8          The concern we have is that we -- and Mr.

9    Weiner, with whom we've discussed this, has indicated

10   that that deposition, if we take it, would need to be

11   in Korea.

12         We have -- So there may be some issues,

13   including the late disclosure of this particular

14   consultant.  We're trying to obviate the need to come

15   before this Court again.  I raise this because I want

16   to alert the Court to the fact that we may need to do

17   it on this particular issue because of Judge Melancon's

18   scheduling order, and it may simply be to come, and

19   we'll discuss this, obviously, with Mr. Weiner, it may

20   simply be to push that part of it to the future, if we

21   can get an agreement on further discovery.

22         It is not a major issue.  I say it's not a

23   major issue because I'm hopeful it -- we won't have to

24   come before you, but I do that because I think we'd

25   like to obviate the need for further motions here.

1            There is a little bit of other outstanding

2    discovery.  We hope that doesn't come before the Court

3    as well, but we appear to have worked out a good many

4    things, as Your Honor has seen, from the scheduling

5    order, and so we're hopeful of not imposing ourselves

6    on the Court with regard to these matters, but I did

7    want to alert you to the fact that they may arise.

8            THE COURT:  Well, I will be back in the

9    country by March 7th, and if you need me, call me,

10   because I know that Judge Melancon is devoted to the

11   schedule, and so to the extent that we want to keep you

12   on the path, I'll do whatever I can to make sure that

13   that happens.

14           MR. WEINER:  And we are hopeful of getting

15   this before that March date, so we're working

16   diligently, as well, Your Honor.

17           MR. SPRINGER:  We had asked for rolling

18   discovery, and we --

19           THE COURT:  Oh, great.  Okay.

20           MR. FETNER:  -- so we're hopeful of not

21   bothering Your Honor.

22           MR. WEINER:  Unfortunately, Ms. Lu is on

23   vacation and I'm losing her services for a little bit,

24   but I will -- we're still working on it.

25           THE COURT:  Good.  Thank you very much.

1                    Court will be in recess.

2              (Proceedings concluded at 2:42 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings

in the above-entitled matter.


/s/_____            March 5, 2011

STEPHEN C. BOWLES