# EXHIBIT G



**DAY PITNEY** LLP

BOSTON   CONNECTICUT   NEW JERSEY   NEW YORK   WASHINGTON, DC

FELIX J. SPRINGER
Attorney at Law

242 Trumbull Street
Hartford, CT 06103
T: (860) 275 0184 F: (860) 881 2462
fjspringer@daypitney.com

August 4, 2011

**VIA ECF AND OVERNIGHT DELIVERY**

Hon. Holly B. Fitzsimmons
United States Magistrate Judge
Brien McMahon Federal Building
915 Lafayette Boulevard
Bridgeport, CT 06604

    Re:   <u>Dongguk University v. Yale University, No. 3:08-CV-00441 (TLM)</u>

Dear Judge Fitzsimmons:

    On behalf of Defendant Yale University, I write in response to Audrey Lu's July 25, 2011 letter and Robert Weiner's August 1, 2011 letter, which continue Plaintiff Dongguk University's baseless attacks on Dr. Itamar Simonson, an expert witness disclosed by Yale. In her July 25 letter, Ms. Lu raises two issues concerning Dr. Simonson's expert report. Those two issues are discussed below, followed by a response to Mr. Weiner's letter and a broader response to Dongguk's ongoing campaign to smear Dr. Simonson, which shows no sign of abating. To lay a foundation for that broader response, this letter devotes substantial space to reveal in clear relief the illegitimacy of Dongguk's tactics and attacks on Dr. Simonson.

**I.**    **Footnote 3**

    First, Ms. Lu takes issue with footnote 3 in Dr. Simonson's expert report ("Footnote 3"). Ms. Lu has not requested any relief from the Court in connection with Footnote 3, nor has she explained why she raised this issue with the Court at all. Nevertheless, since Ms. Lu presumably wishes the Court to order Dr. Simonson to delete Footnote 3 from his report, I will explain why such an order is not warranted.

    Ms. Lu suggests that one court's having once taken issue with one small point in one of Dr. Simonson's previous cases warrants "remov[ing] footnote 3 from [Dr. Simonson's] expert report and re-submitting his expert report to [Dongguk]." Before turning to the particular weaknesses of Ms. Lu's discussion of Footnote 3, it is significant that she has cited no Rule, statute, or case law authorizing the Court to order an expert witness to remove material from his expert report and re-submit it to an adverse party. Yale's counsel is aware of no such authority.

**DAY PITNEY LLP**

Hon. Holly B. Fitzsimmons
August 4, 2011
Page 2

Yale has not sought to admit Dr. Simonson's expert report into evidence. Therefore, any objection to Footnote 3 in Dr. Simonson's report is not ripe. See, e.g., United States v. Anthony, No. 09-CR-557, 2010 U.S. Dist. LEXIS 109477, at *2 (E.D.N.Y. Oct. 14, 2010) ("To the extent that Defendant objects to McAlpin's expert testimony on subjects beyond those that the Government has represented McAlpin will address, these objections are not ripe for consideration at this time."). If Ms. Lu is seeking to exclude Footnote 3 from evidence, she should wait until Yale offers Dr. Simonson's testimony into evidence, when Dongguk may file a motion in limine supported by legal authority. If Ms. Lu is not seeking to exclude Footnote 3 from evidence, her discussion of Footnote 3 serves no purpose whatsoever (except, of course, to continue Dongguk's campaign to attempt without warrant to besmirch Dr. Simonson's stellar reputation).

The one case that Ms. Lu has cited confirms that her discussion of Footnote 3 is not ripe. That case, unlike Ms. Lu's letter, did not involve the revision of an expert report; rather, it involved a motion in limine to exclude testimony at trial. See Champagne Louis Roederer v. J. Garcia Carrion, S.A., No. 06-213, 2010 U.S. Dist. LEXIS 9473, at *10-15 (D. Minn. Feb. 4, 2010). Dongguk, of course, has brought no such motion. Unfortunately, Ms. Lu has also misrepresented the Champagne Louis Roederer case in another respect. Contrary to the description in Ms. Lu's letter, that decision did not find any of Dr. Simonson's proposed testimony to be "blatantly inappropriate." Compare Letter from Lu to Judge Fitzsimmons of 7/25/11 at 1 with Champagne Louis Roederer, 2010 U.S. Dist. LEXIS 9473, at *14-15 (denying the bulk of motion in limine, except for proposed testimony that "will not help the Court"). Dongguk's need to misrepresent the case law in order to continue to attack Dr. Simonson is telling.

Apart from the novelty of her desired remedy, the lack of ripeness, and her misrepresentation of case law, Ms. Lu's discussion of Footnote 3 suffers from an even more fundamental flaw. That discussion is premised on the notion that an expert witness may not include in his report any material that is similar to testimony that another court has previously excluded from evidence in another case. The invalidity of that premise should be apparent on its face, but Dongguk's own actions confirm it beyond any doubt. Far beyond a mere footnote, the report produced in this case by Dongguk's proposed survey expert, Jacob Jacoby, includes many of the same fundamental deficiencies for which he has repeatedly been criticized by courts and for which many courts have disregarded his surveys and excluded his testimony. These fundamental deficiencies include Dr. Jacoby's reporting data inaccurately, Dr. Jacoby's using impermissibly leading questions in his surveys, and Dr. Jacoby's failing to use controls in his surveys. See, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc., 525 F. Supp. 2d 558, 569 (S.D.N.Y. 2007) (among its other "significant flaws" and "numerous, fundamental deficiencies," Dr. Jacoby's survey was "not reported in an accurate manner and . . . was not conducted in an objective manner, and is therefore not reliable under Rule 702"); Kargo Global, Inc. v. Advance Magazine Publishers, Inc., No. 06 Civ. 550, 2007 U.S. Dist. LEXIS 57320, at *24 (S.D.N.Y. Aug. 6, 2007) (excluding Dr. Jacoby's survey because it was "impermissibly leading"); NFL

**DAY PITNEY** LLP

Hon. Holly B. Fitzsimmons
August 4, 2011
Page 3

Props., Inc. v. ProStyle, Inc., 57 F. Supp. 2d 665, 668-69 (E.D. Wis. 1999) (excluding evidence concerning Dr. Jacoby's "seriously flawed" survey because it lacked control group or control questions, even though "Jacoby himself has emphasized in both his testimony in other cases and in his academic writing that using a control group in surveys is 'absolutely necessary'"). The survey that Dr. Jacoby conducted for Dongguk contains those flaws and more, as Dr. Simonson has explained. (See Simonson Report ¶¶ 48-64 (Dr. Jacoby used leading questions), 65-68 (Dr. Jacoby failed to use controls), 75 (Dr. Jacoby misreported data) (attached as Ex. A to Letter from Springer to Judge Fitzsimmons of 7/18/11).) If Dongguk truly believes that an expert report may not include any material that is similar to testimony that another court has excluded, it should withdraw Dr. Jacoby's report in its entirety. Needless to say, Dongguk has not done so. Ms. Lu did not even respond when Yale's counsel informed her of that gaping hole in her reasoning. (See E-mail from Fetner to Lu et al. of 7/11/11 (attached hereto as Ex. A).)

## II. Rule 26(a)(2)(B)(i)-(ii)

Second, citing no legal authority, Ms. Lu suggests that Dr. Simonson's expert report does not comply with Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). As with her discussion of Footnote 3, Ms. Lu has not requested any relief from the Court. Presumably, she wishes the Court to order Dr. Simonson to revise his report, although it is not clear in what way or for what reason.

The merits of Ms. Lu's discussion are easily refuted. Dr. Simonson's report obviously includes both "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). At the risk of stating the obvious, pages 1-42 of Dr. Simonson's report identify in painstaking detail Dr. Simonson's opinions and the basis and reasons for them, and Exhibit C to Dr. Simonson's report identifies the facts or data that Dr. Simonson considered in forming his opinions. It is not clear what more Dr. Simonson, or any expert witness, could do to satisfy Ms. Lu.

Ms. Lu suggests that Dr. Simonson's report does not identify "authorities" or "source material." (Letter from Lu to Judge Fitzsimmons of 7/25/11 at 2.) The suggestion is ironic, given Ms. Lu's failure to identify any authority for her own argument. (Id.) Just as significantly, like Dongguk's other attempted criticisms of Dr. Simonson, Ms. Lu's suggestion is also false. In fact, Dr. Simonson's report identifies numerous sources. (See, e.g., Simonson Report at 10 n.3, 10 n.4, 11 n.5, 11 n.6, 11 n.7, 12 n.8, 14 n.9, 14 n.10, 14 n.11, 21-22 n.12, 31 n.15, 33 n.17, 39 n.18.) Dr. Simonson's report also identifies his extremely impressive credentials, which obviously contribute to his knowledge of survey standards. (See Simonson Report ¶¶ 1-10 & Ex. A.) Moreover, Dr. Simonson produced to Dongguk copies of the sources cited in his report, copies of his own academic publications and course syllabi, and, of course, a copy of his curriculum vitae. Once again, Dongguk's need to misrepresent the record in order to continue to attack Dr. Simonson is telling.

**DAY PITNEY LLP**

Hon. Holly B. Fitzsimmons
August 4, 2011
Page 4

The suggestion that Dr. Simonson failed to identify "authorities" or "source material" is especially strange given the nature of Dr. Simonson's expert report. Much of Dr. Simonson's report concerns the many ways in which Dr. Jacoby's survey failed to satisfy the standards that Dr. Jacoby himself has articulated. (See Simonson Report ¶ 23 ("it is useful when assessing the Jacoby Survey to evaluate whether it met the criteria that Dr. Jacoby himself has articulated").) Dr. Simonson cited in his report, and produced to Dongguk, an article written by Dr. Jacoby, explaining, "The survey rules on which Dr. Jacoby relied in that critique are just as applicable to the evaluation of his survey in the present case." (Simonson Report ¶ 23.) Those rules include the avoidance of leading questions, the avoidance of "yea-saying," the avoidance of question order effects, starting with open-ended questions, and the use of filter questions, all of which Dr. Jacoby espoused in his cited article but violated in his survey for Dongguk. (See Simonson Report ¶¶ 24-29, 62.) Thus, despite the absence of authority requiring an expert report to include "authorities" or "source material," Dr. Simonson's report includes both.

Dr. Simonson's report stands in stark contrast to the reports submitted by Dongguk's proposed expert witnesses, Elaine Kim and Jacob Jacoby, but not for the reason that Ms. Lu suggests. Unlike Dr. Simonson's report, the reports submitted by Dr. Jacoby and Dr. Kim do not reference any "authorities" or "source material," and neither Dr. Jacoby nor Dr. Kim produced copies of any "authorities" or "source material" to Yale (with the sole exception of Dr. Jacoby's passing mention of one irrelevant article concerning "the concept of face").

The report submitted by Dr. Kim, whom Dongguk has proffered as an expert in Korean culture, is especially striking. Nearly every paragraph of Dr. Kim's 20-page report contains sweeping generalizations about "Korean culture," "Korean people," "Korean society," "Koreans," "the Korean population," "the Korean public," "Korean students," "Korean parents," "Korean universities," and Korean history, with no reference to any authority of any kind. (See Kim Report ¶¶ 27-98 (attached hereto as Ex. B).) Indeed, the basis for all of Dr. Kim's opinions is a mystery. Ms. Lu cannot possibly believe that Dr. Kim's report satisfies Rule 26 but Dr. Simonson's does not. Requiring Dr. Simonson to revise his report would be especially prejudicial to Yale – and, of course, to Dr. Simonson – in light of Dongguk's own proposed experts' complete failure to satisfy the standard that Ms. Lu would impose on Dr. Simonson.

Apart from its other flaws, Ms. Lu's discussion of Rule 26(a)(2)(B)(i)-(ii), like her discussion of Footnote 3, reflects a fundamental misunderstanding of the role of an expert report. Reading Ms. Lu's letter, one would get the impression that an expert report represents a litigant's entire source of discovery concerning an adversary's expert witness. In reality, Dongguk also served a subpoena on Dr. Simonson, in response to which he produced, among many other documents, "All documents or other materials that you consulted or used in forming your opinions or conclusions in this case, including but not limited to, all websites, articles, studies, or texts upon which you based your opinions." (Subpoena in a Civil Case, Schedule A at 2 (attached hereto as Ex. C).) In addition, of course, Dongguk may take Dr. Simonson's deposition, at which counsel may inquire about Dr. Simonson's opinions, the basis and reasons

**DAY PITNEY LLP**

Hon. Holly B. Fitzsimmons
August 4, 2011
Page 5

for them, and the facts or data that Dr. Simonson considered. Indeed, that is the very purpose of an expert deposition. Dongguk may not skirt the "1 day of 7 hours" limitation on Dr. Simonson's deposition through this back-door discovery request. See Fed. R. Civ. P. 30(d)(1).

### III. Mr. Weiner's Letter

Before we could even respond to Ms. Lu's July 25 letter attacking Dr. Simonson, Mr. Weiner sent another such letter on August 1. As with every other letter that Dongguk's counsel has sent concerning Dr. Simonson, all of Mr. Weiner's charges are baseless.

First, Mr. Weiner wonders why I have responded only to his attacks on Dr. Simonson, and not to his or Bruce Keller's discussion of documents that Del Monte Foods Company and Del Monte Corporation designated as confidential in another case. The answer is simple: Mr. Weiner's attacks on Dr. Simonson are relevant to Yale's defense of this action, while the Del Monte documents are not.

Next, Mr. Weiner denies that he has obtained many of Dr. Simonson's expert reports, affidavits, declarations, and transcripts from other cases. By any reasonable measure, he is incorrect. In fact, Mr. Weiner has obtained a great many such documents. Dr. Simonson himself produced 25 of them to Dongguk, and Dongguk's counsel undoubtedly obtained many more on their own. Certainly, many are available via PACER and the Internet. Having also issued 42 subpoenas to the nation's leading law firms, Dongguk has far more documents concerning Dr. Simonson's previous expert engagements than it could possibly make use of. The documents that Dr. Simonson has produced concerning his previous engagements alone are far more than the prevailing case law would have permitted Dongguk to obtain if Dr. Simonson had not been so cooperative. See, e.g., Dering s. Serv. Experts Alliance LLC, Nos. 1:06-CV-00357-RWS & 1:06-CV-00358-RWS, 2007 U.S. Dist. LEXIS 89972, at *8-9 (N.D. Ga. Dec. 6, 2007) (denying motion to compel compliance with subpoena seeking documents from expert witness's previous cases); Cartier, Inc. v. Four Star Jewelry Creations, Inc., No. 01 Civ. 11295, 2003 U.S. Dist. LEXIS 16887, at *6 (S.D.N.Y. Sept. 26, 2003) ("plaintiffs' request for O'Neill expert reports from all cases in which he was an expert in the last five years is beyond the scope of Rule 26"); Surles v. Air France, No. 00 Civ. 5004, 2001 U.S. Dist. LEXIS 10048, at *20 (S.D.N.Y. July 17, 2001) ("By implication, because [Fed. R. Civ. P. 26(a)(2)(B)] requires only the production of a *list* of the expert's cases, Surles is not entitled to disclosure of the reports in those cases, regardless of their subject matter."); Trunk v. Midwest Rubber & Supply Co., 175 F.R.D. 664, 665 (D. Colo. 1997) ("conclusions and opinions offered in unrelated litigation do not fall within the scope of Rule 26 discovery"). Even the rare case that has permitted document discovery concerning an expert witness's previous engagements has limited such discovery to far fewer documents than Dr. Simonson produced to Dongguk. See Serin v. N. Leasing Sys., Inc., No. 7:06-CV-1625, 2010 U.S. Dist. LEXIS 142711, at *2-3 (S.D.N.Y. Oct. 6, 2010) (limiting discovery of expert's previous engagements to "the production of seven expert reports").

**DAY PITNEY** LLP

Hon. Holly B. Fitzsimmons
August 4, 2011
Page 6

To his discredit, Mr. Weiner also revives his already debunked accusation that Dr. Simonson "cherry-picked" documents and "is refusing to provide all of the requested documents." Our having already shown these accusations to be false and utterly baseless apparently is lost on Mr. Weiner. In fact, as Mr. Weiner knows, Dr. Simonson produced all of the documents requested in Dongguk's subpoena, and, as an unreciprocated courtesy to Dongguk, he did so in advance of the deadline.

Mr. Weiner misrepresents the facts in another way, as well. I do not know why Yale's subpoena of Jacob Jacoby is relevant to the issues before the Court, but if Mr. Weiner is going to discuss that subpoena, he should do so accurately. Unlike Dr. Simonson, who responded in full to Dongguk's subpoena before the return date, Dr. Jacoby has not responded to Yale's subpoena at all. Since Mr. Weiner seeks to obscure this point, I would like to make the record perfectly clear: Dr. Jacoby has produced no documents whatsoever from his previous engagements, 41 of which are identified in his expert report. I do not know what point Mr. Weiner was trying to make by raising the issue of Dr. Jacoby's (lack of) response to Yale's subpoena, but I cannot imagine any that would benefit Dongguk's position.

While Mr. Weiner's August 1 letter contains all of the misrepresentations discussed above, that letter is also significant for what it does not contain. Ostensibly responding to my July 18 letter, Mr. Weiner has completely avoided the sole issue raised in that letter, i.e., the falsity of Mr. Weiner's characterizations of Dr. Simonson and his report in this case. Once again, we have shown Mr. Weiner's baseless attacks to be false, and he simply turns to other, equally baseless attacks.

IV. **Dongguk's Ongoing Campaign of Calumnies Against Dr. Simonson**

Unfortunately, Dongguk's intensive campaign against Dr. Simonson has reached the point that a broader response is required. As the above discussion of Mr. Weiner's August 1 letter demonstrates, refuting each of Dongguk's false attacks on Dr. Simonson, and showing all of them to be completely baseless, has not sufficed to prevent further, equally baseless attacks.

Ms. Lu's July 25 letter and Mr. Weiner's August 1 letter are the fourth and fifth letters that Dongguk's counsel has sent to the Court attacking Dr. Simonson and trying to besmirch his stellar reputation. If past is prologue, more false and baseless attacks will surely follow. They should not be countenanced. When Ms. Lu and Mr. Weiner accuse others, without basis of course, of trying to "poison the well," they obviously know whereof they speak.

Despite all the letters, and all the baseless attacks, Dongguk has not filed a single motion concerning Dr. Simonson. That failure speaks volumes, especially since Dongguk's counsel has filed no fewer than seven other motions during the discovery phase of this case. Without sufficient grounds for filing a motion, which would require a good-faith basis in fact and law, Dongguk's attorneys instead have peppered the Court with baseless letter after baseless letter.

**DAY PITNEY** LLP

Hon. Holly B. Fitzsimmons
August 4, 2011
Page 7

The lack of any legitimate basis for Dongguk's letters concerning Dr. Simonson is apparent from the relief requested in those letters. Apparently unsatisfied with Dr. Simonson's complete and timely response to Dongguk's subpoena, and undeterred by its inability to present any supporting legal or factual authority for its request, Dongguk asked the Court, via letter, to order Dr. Simonson to obtain additional documents from third parties in order to provide them to Dongguk. Now, understandably concerned by Dr. Simonson's detailed, thorough, and absolutely devastating critique of Dr. Jacoby's survey, Dongguk asks the Court, again via letter, to order Dr. Simonson to revise his report in accordance with Dongguk's wishes. Once again, Dongguk is undeterred by its inability to present any supporting legal or factual authority.

In addition to submitting letters that lack the legal and factual authority that a motion would require, Dongguk has also used those letters as stalking horses for remedies that it has not even requested in its letters. For example, Mr. Weiner's June 30, 2011 letter asking the Court to order Dr. Simonson to obtain documents from third parties turned out to be a stalking horse for a more than two-month postponement of Dr. Simonson's deposition. Dongguk should not be permitted to continue to use this tactic. On its face, Ms. Lu's July 25 letter requests no relief at all; read charitably, Ms. Lu presumably wishes the Court to order Dr. Simonson to revise his expert report in two respects. No other relief is even arguably requested, and none should be entertained. While I do not believe that there is any legal authority for ordering Dr. Simonson to revise his report, and I do not believe that an informal letter is the appropriate vehicle for requesting such relief, I am certain that Ms. Lu's letter requests no other relief.

Dongguk's epistolary campaign against Dr. Simonson should be brought to an end immediately. If Dongguk has a good-faith basis for seeking relief from the Court, it should file a motion and present supporting legal and factual authority in a memorandum of law, subject to Rule 11. If Dongguk cannot do that, it should remain silent.

Very truly yours,

Felix J. Springer

Enclosures

cc: Robert A. Weiner, Esq. (via ECF)
Audrey Lu, Esq. (via ECF)
Ira Grudberg, Esq. (via ECF)
Howard Fetner, Esq. (via ECF)
Bruce Keller, Esq. (via e-mail)
Michael Potenza, Esq. (via e-mail)