# EXHIBIT J

### § 32:172 Tests of properly conducted survey—Slanted or leading questions—avoiding leading questions

Survey questions should not be slanted or leading.[1] Some commentators[2] and courts have indicated that it is improperly leading to imply that there could be a business relationship where the respondent may previously have not thought of any such connection. For example, the question: "Do you think that there may or may not be a business connection between Beneficial Capital Corp. and the Beneficial Finance System Companies?" was rejected as a leading question, "not well suited to eliciting an uninfluenced reaction."[3] Similarly, in a secondary meaning survey, it is leading to phrase the

---

[Section 32:172]

[1] Philip Morris, Inc. v. R.J. Reynolds Tobacco Co., 188 U.S.P.Q. 289, 1975 WL 21170 (S.D.N.Y. 1975) (survey held tailored to elicit some brand identification through use of slanted questions in attempt to prove secondary meaning); In re Jockey International, Inc., 192 U.S.P.Q. 579, 1976 WL 21154 (T.T.A.B. 1976) (answers given to choose from held to elicit the desired choice, resulting in "loaded" survey: held probative anyway); WGBH Educational Foundation, Inc. v. Penthouse International, Ltd., 453 F. Supp. 1347, 203 U.S.P.Q. 432 (S.D.N.Y. 1978), aff'd without op., 598 F.2d 610 (2d Cir. 1979) (Defendant's survey question asking what the "word" Nova means rather than what the "name" Nova means held to "seriously undercut whatever validity the survey might otherwise have." "Name" would have focused attention on plaintiff's product, whereas "using the term 'word' diffuses that focus."); American Footwear Corp. v. General Footwear Co., 609 F.2d 655, 204 U.S.P.Q. 609 (2d Cir. 1979), cert. denied, 446 U.S. 951, 63 L. Ed. 2d 787, 100 S. Ct. 1601, 205 U.S.P.Q. 680 (1980) (Phone survey question, "With whom or what do you associate a product labelled Bionic?," held improper as "self-serving." Court said question should have been, "With whom or what do you associate a 'Bionic' boot?"); Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp., 960 F.2d 294, 22 U.S.P.Q.2d 1362, 1367-68 (2d Cir. 1992) (several questions held misleading in false advertising cases, such as: "Based on the commercial you just saw, how do you feel about taking a product for heartburn that contains aluminum and magnesium?").

[2] See Boal, "Techniques for Ascertaining Likelihood of Confusion and the Meaning of Advertising Communications," 73 Trademark Rep. 405, 422 (1983) (A question to the effect of "Do you think these two products are made by the same or different producers?" is not neutral. "[T]he question does strongly suggest a possibility that might not have occurred to the interviewees—that the products are made by the same company.").

[3] Beneficial Corp. v. Beneficial Capital Corp., 529 F. Supp. 445, 213 U.S.P.Q. 1091 (S.D. N.Y. 1982). See Universal City Studios, Inc. v.

question in a way that presumes that the designation identifies some single source.[3.1]

However, other courts have found nothing improperly leading in a question asking if the respondent thinks there is or is not a connection between the owners of the contesting marks.[4]

*Author's Opinion*: In my view, it is not improperly leading

---

Nintendo Co., Ltd., 746 F.2d 112, 223 U.S.P.Q. 1000 (2d Cir. 1984), judgment aff'd, 797 F.2d 70, 230 U.S.P.Q. 409 (2d Cir. 1986) (The following survey question was held improperly leading in that it presented respondents with the connection rather than permitting them to make their own association: "To the best of your knowledge, was the Donkey Kong game made with the approval or under the authority of the people who produce the King Kong movies?") Hutchinson v. Essence Communications, Inc., 769 F. Supp. 541, 564 (S.D. N.Y. 1991) (a question that asks persons to assume that some entity sponsors or promotes or is associated with the junior user and then asks who that entity would most likely be was held to be improperly leading in the context of the facts) Marshall Field & Co. v. Mrs. Fields Cookies, 25 U.S.P.Q.2d 1321, 1334, 1992 WL 421449 (T.T.A.B. 1992) (Asking if the two stores "have a business connection or a business association with one another, or not?" is an improperly leading question that "tends to deliberately plant in the respondent's mind the idea that there is a connection between the stores. . . . Such a question is certainly highly prejudicial to the results." Survey found to be "seriously flawed and the results to be of little probative value.") Riviana Foods Inc. v. Societe Des Produits Nestle S.A., 33 U.S.P.Q.2d 1669, 1994 WL 761242 (S.D. Tex. 1994) (survey question held leading: "Do you think the weight loss product "Sweet Success" and "Success Rice" are more likely made by the same company or more likely made by different companies?").

[3.1]Straumann Co. v. Lifecore Biomedical Inc., 278 F. Supp. 2d 130 (D. Mass. 2003) (the question "What company do you think puts out these products?" is leading because it "presume[s] the existence of the key element in a secondary meaning enquiry, namely the association of the design with a *single* source.").

[4]McGraw-Edison Co. v. Walt Disney Productions, 225 U.S.P.Q. 512, 1984 WL 1394 (N.D. Ill. 1984), judgment rev'd, 787 F.2d 1163, 229 U.S.P.Q. 355, 362 (7th Cir. 1986) (The district court said that presenting respondents with pictures of the two products and asking them if the products were put out by the same or different companies is leading and will always produce high results connecting the two products. The court of appeals disagreed, saying that the district court improperly rejected the 35 percent response that the products were put out by the same company.) Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 58 U.S.P.Q.2d 1881 (9th Cir. 2001) (responses to question: "Do you think that the billiard parlor in these photos [of defendant's operation] is owned or operated by [plaintiff] or do you think that the billiard parlor in the photos is

to present the respondent with a fair and accurate representation of the contesting marks and ask in a neutral manner if the respondent thinks there is or is not some connection, affiliation or sponsorship relation between the owners of the marks - or that the respondent doesn't know. I think that the criticism that this is leading because it suggests that there may be a relationship that the respondent may not have previously thought about is overblown and exaggerated. Any survey questions about genericness, descriptiveness, source confusion or business affiliation necessarily asks ordinary persons about trademark relationships that they probably never thought about before. If the respondent is given a fair opportunity to say "yes," "no," or "I don't know," I fail to see how such a question is so improperly leading that responses should be discounted or ignored. Responses to such questions should be given their fair weight and considered along with other evidence in the case.

It may be improperly leading to expose the surveyed person to a desired response before asking the critical question about a connection between the owners of the contesting marks. <u>Responses were given little weight by the court in a survey where questions twice exposed respondent to both parties' marks before asking the question:</u> "Do you feel that there is some connection between Penta Hotels and Penta Tours or do you feel that there is no connection between these companies?" The Court said that the questions were "designed and placed in such a sequence so as to elicit the intended response."[4.1] Similarly, in a secondary meaning survey, it was held to be improperly leading to phrase the question in a way that presumes that the designation identifies some single source.[4.2]

A critical survey question may be slanted if it has been

---

owned and operated by a different company?" were held to be sufficient proof of infringement to avoid dismissal on summary judgment).

See discussion of "product line-up" surveys at § 32:177.

[4.1]Penta Hotels Ltd. v. Penta Tours, 9 U.S.P.Q.2d 1081, 1988 WL 384940 (D. Conn. 1988).

[4.2]Straumann Co. v. Lifecore Biomedical Inc., 278 F. Supp. 2d 130 (D. Mass. 2003) (the question "What company do you think puts out these products?" is leading because it "presume[s] the existence of the key element in a secondary meaning enquiry, namely the association of the design with a *single* source." In the Author's Opinion, this is an overly rigid and strict criticism of a relatively neutral question.).

preceded by questions which lead the interviewee "along the garden path" to the desired response. For example, a question "What brand do you think of when you hear this slogan?" was held slanted where previous questions had already mentioned the critical brand name.[5] Similar examples include: preceding the critical question by questions which, if correctly answered, elicited the trademark which was a favorable response to the critical question;[6] and presenting respondents with particular similarities between the marks rather than letting persons questioned respond to the marks as a whole.[7] In the same vein is directing a questionnaire to sympathetic retailers, telling them about the pending litigation, and asking them to respond to a question like: "Would it be in your opinion that (sic) the use of the name SLEEX upon girdles for women would import a derogatory effect to slacks sold under the identical trademark for men so that men would not buy the slacks merchandised under that name?" This is obviously a leading question, with a favorable response prompted by the retailers' self-interest. It also asks for a retailer's opinion about the mental reactions of consumers.[8]

Caution must be exercised in evaluating the results of some open-ended survey questions about brands because respondents who merely guess will likely just play back the

---

[5]Ralston Purina Co. v. Quaker Oats Co., 169 U.S.P.Q. 508, 1971 WL 16472 (T.T.A.B. 1971).

[6]Sears, Roebuck & Co. v. Allstate Driving School, Inc., 301 F. Supp. 4, 163 U.S.P.Q. 335 (E.D.N.Y. 1969); Frisch's Restaurants v. Shoney's, Inc., 759 F.2d 1261, 225 U.S.P.Q. 1169 (6th Cir. 1985) (presenting respondents with the desired response six times before asking the critical question gives the results "diminished probative value": survey was discounted as evidence).

[7]Inc. Publishing Corp. v. Manhattan Magazine, Inc., 616 F. Supp. 370, 227 U.S.P.Q. 257 (S.D.N.Y. 1985), aff'd without op., 788 F.2d 3 (2d Cir. 1986)(questions were held leading where they presented respondents with particular similarities or associations rather than permitting respondents to arrive at the association themselves, unaided by prompting; proper questions would be: "Do you think there is any relationship between any of these magazines? Which ones? What is the relationship?").

[8]Esquire Sportswear Mfg. Co. v. Genesco, Inc., 141 U.S.P.Q. 400, 1964 WL 7842 (T.T.A.B. 1964) (likely confusion found, notwithstanding deficient "survey" evidence).

names of the best-known and dominant brands.[9]

### § 32:173 Tests of properly conducted survey—Slanted or leading questions—Aided awareness questioning

As with direct examination of a witness at trial, in framing survey questions one must resist the temptation to lead responses to a desired end or to "help" the witness to reach the "correct" answer. Trial judges have considerable experience in spotting this kind of defect. For example, in one survey, after asking a neutral question about the interviewee's opinion as to products put out under defendant's mark, a further "aided awareness" question asked the interviewee to choose from among various named products, with the desired response featured prominently in the choices. The percentage naming products made by plaintiff jumped from only 7 percent on the neutral question to over 50 percent on the "aided awareness" question. Judge Stapleton found that while the responses to the neutral question were supportive of plaintiff's position, the responses to the "aided awareness" question were "of little probative value," as they led the interviewee to the desired response.[1]

### § 32:174 Tests of properly conducted survey—Survey formats—*Eveready* confusion format

A now-standard survey format used to prove likely confu-

---

[9]Mennen Co. v. Gillette Co., 565 F. Supp. 648, 220 U.S.P.Q. 354 (S.D.N.Y. 1983), aff'd without op., 742 F.2d 1437 (2d Cir. 1984) (Following survey question held leading and survey found "fatally defective": "Please look at this picture and this list of stick deodorant brand names. Among the leading brands of stick deodorant now on the market, which of the brands listed here would you say uses these stripes on their package?" 63 percent response naming plaintiff Mennen found to be only a "playback of brand share," as Mennen was the major producer of such deodorants.).

[Section 32:173]

[1]Scott Paper Co. v. Scott's Liquid Gold, Inc., 439 F. Supp. 1022, 195 U.S.P.Q. 707 (D. Del. 1977), rev'd, dismissed on other grounds, 589 F.2d 1225, 200 U.S.P.Q. 421 (3d Cir. 1978). See Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 125, 30 U.S.P.Q.2d 1112, 1119-20 (3d Cir. 1994) (accepting expert witness's view that only open-ended questions were valid, and criticizing follow up with repeated probing questions: "A survey is not credible if it relies on leading questions which are 'inherently suggestive and invite guessing by those who did not get any clear message at all.' ").