```
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
---------------------------------------------------------------X
Dongguk University,

                              Plaintiff,
         -against-                              RULING
                                                Case No. 08-cv-0441 (TLM)
Yale University,

                              Defendant
---------------------------------------------------------------X
```

Before the Court is defendant Yale University's Motion for Reconsideration [Rec. Doc. 329] of the Court's February 10, 2012 Ruling [Rec. Doc. 324] on its Motion for Summary Judgment, plaintiff Dongguk University's Memorandum in Opposition thereto [Rec. Doc. 332], and the parties' supplemental memoranda of law [Rec. Docs. 346, 347, 350, 351, 353, and 354] filed pursuant to the Court's April 2, 2012 order [Rec. Doc. 343]. For the reasons that follow, Yale's Motion for Reconsideration will be GRANTED and Dongguk's remaining claims will be dismissed in their entirety.

**I. PROCEDURAL HISTORY**

On August 1, 2011, Yale moved for summary judgment on all of Dongguk's claims [Rec. Doc. 249]. After reviewing the parties' summary judgment papers and the combined 359 exhibits consisting of approximately 3,000 pages, on February 10, 2012 the Court issued its ruling [Rec. Doc. 324] (the "Summary Judgment Ruling") granting in part and denying in part Yale's Motion for Summary Judgment. In the Summary Judgment Ruling, the Court granted Yale's motion as to: (1) plaintiff Dongguk University's reckless and wanton conduct claim (Summary Judgment Ruling at 10-11); (2) the portion of Dongguk's defamation claim that sought "non-economic" damages

1

(Summary Judgment Ruling at 11-22); and (3) the portion of Dongguk's negligence claim that was based on the incorrect statements Yale published to third persons (Summary Judgment Ruling at 22-23). The Court denied Yale's motion as to: (1) the portion of Dongguk's defamation claim that sought "economic" damages (Summary Judgment Ruling at 11-22) and (2) the portion of Dongguk's negligence claim that was based on Yale's inaccurate statements made directly to Dongguk and Yale's failure to timely correct those inaccuracies (Summary Judgment Ruling at 23-28).

On February 17, 2012, Yale moved for reconsideration [Rec. Doc. 329] of the Summary Judgment Ruling, seeking dismissal of Dongguk's defamation and negligence claims in their entirety. Shortly after conducting a telephone conference with the attorneys on March 26, 2012 [Rec. Doc. 338], the Court issued a one-page ruling [Rec. Doc. 339] on Yale's motion stating, *inter alia*, that it would, in due course, issue written reasons for its ruling. In its March 26, 2012 ruling, the Court granted the motion with respect to Dongguk's claim for defamation damages arising from the alleged loss of grants and the denial of its application to open a law school, and with respect to Dongguk's negligence claim in its entirety. The Court denied the motion in all other respects.

By order dated April 2, 2012 [Rec. Doc. 343], after conducting a telephone conference with the attorneys [Rec. Doc. 342], the Court vacated its March 26, 2012 ruling on the motion. The April 2, 2012 order stated, *inter alia*, that:

> In drafting its written reasons for the March 26, 2012 Ruling and reviewing what the Court perceives to be controlling jurisprudence, some cited by the attorneys for the parties, some not, which requires closer scrutiny, the presiding Judge is left with the definite and firm view that the Court's March 26, 2012 Ruling on defendant's Motion for Reconsideration must be vacated. [Rec. Doc. 343 at 1].

The April 2, 2012 order also set a schedule for additional briefing on issues raised in Yale's motion, and set an on the record hearing for April 25-26, 2012.

On April 19, 2012, the Court conducted a telephone conference [Rec. Doc. 355] with the attorneys, during which the attorneys were advised that based on their submissions pursuant to the April 2, 2012 order and the Court's own research, a hearing was not necessary. Thereafter, the Court entered an order [Rec. Doc. 356] canceling the April 25-26, 2012 hearing and upsetting the June 4, 2012 trial.

## II. STANDARD OF REVIEW

"The standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). "[T]he function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or fact or to consider newly discovered evidence." *LoSacco v. City of Middletown*, 822 F. Supp. 870, 876-77 (D. Conn. 1993) (internal quotation marks omitted).

## III. DONGGUK'S DEFAMATION CLAIM

In the seminal case of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Supreme Court held that a public official cannot prevail in a defamation suit unless he establishes, with "convincing clarity," that the defendant published a defamatory statement with actual malice–that is, with knowledge that the statement was false or with reckless disregard of whether it was false or not. 376 U.S. at 279-80, 285-86.[1]  A speaker acts with reckless disregard of the falsity of his

---

[1] *Sullivan's* holding that public officials must prove actual malice in defamation suits was subsequently extended to public figures. *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967); *DiBella v. Hopkins*, 403 F.3d 102, 110 (2d Cir. 2005).   Dongguk does not dispute that it is a public figure. *See* Compl. ¶ 6 ("Plaintiff Dongguk University is one of the most important academic institutions in Korea . . . ."); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352

statement if he "entertained serious doubts as to the truth" of his statement, *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or if he possessed a "high degree of awareness of [his statement's] probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). A failure to investigate by itself is not enough to prove actual malice unless that failure to investigate amounted to "a purposeful avoidance of the truth." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 693 (1989). A defendant's refusal to admit his allegedly defamatory statement was inaccurate "does not establish that he realized the inaccuracy at the time of publication." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984).

Under Connecticut law, each allegedly defamatory statement is a separate cause of action. *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217 (2004). Thus, to prevail with respect to a given statement in a defamation suit, a public-official or public-figure plaintiff must prove that the statement in question was made with actual malice and must also prove the other elements of a defamation claim with respect to the statement. *See Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir. 1987) ("But defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement."); *see also Cweklinsky*, 267 Conn. at 217.

Moreover, when the defendant is an organization, a plaintiff must prove that a particular agent or employee of the defendant acted with actual malice at the time that agent or employee participated in the publication of the statement in question; an organizational defendant is not charged with the collective knowledge of all its agents and employees for purposes of the actual

---

(1974) (noting that a public figure is one who has achieved "general fame or notoriety in the community, and pervasive involvement in the affairs of society").

malice inquiry. *Sullivan*, 376 U.S. at 287 (holding that "the state of mind required for actual malice [has] to be brought home to the persons in the [defendant's] organization having responsibility for the publication of the advertisement"); *Holbrook v. Harman Automotive, Inc.*, 58 F.3d 222, 225 (6th Cir. 1995) ("Because Loepp was the [defendant-corporation's] employee responsible for the publication of the allegedly defamatory statements, we focus solely on his state of mind.").

The "convincing clarity" by which *Sullivan* held actual malice must be proved was subsequently interpreted to be synonymous with the more familiar "clear and convincing evidence" standard of proof. *DiBella v. Hopkins*, 403 F.3d 102, 110 (2d Cir. 2005). Clear and convincing evidence is "a more exacting standard" than proof by a preponderance of the evidence. *United States v. Thomas*, 274 F.3d 655, 672 (2d Cir. 2001). To satisfy the clear and convincing evidence standard, it is not enough that the thing to be proved is more probable than not. Rather, there must be "evidence indicating that the thing to be proved is *highly* probable or reasonably certain." *Ragbir v. Holder*, 389 F. App'x. 80, 84-85 (2d Cir. 2010) (internal quotation marks and alterations omitted; emphasis added).

*A. Actual Malice Inquiry: Publication Responsibility*

At the summary judgment stage of a defamation suit involving a public-official or public-figure plaintiff, a court must first address, based on the record before it, applying the appropriate standard of proof, the threshold issue of which of the defendant's agent(s) or employee(s) was(were) "responsible" for the allegedly defamatory publication. In the Summary Judgment Ruling, applying the default preponderance of the evidence standard of proof, the Court held that there was a genuine issue of material fact as to whether Susan Carney–Yale's Deputy General Counsel–"approved and/or offered input into" the allegedly defamatory statements published by Gila Reinstein, Associate

5

Director of Yale's Public Affairs Office. (Summary Judgment Ruling at 18). Yale asserts that Dongguk's burden of proof as to this threshold issue is by clear and convincing evidence [Rec. Doc. 346 at 1-2]. Dongguk contends that its burden of proof is by a mere preponderance of the evidence [Rec. Doc. 347 at 1-2]. Yale cites two cases in support of its position, which in turn cite *Sullivan* for their holdings. *Speer v. Ottaway Newspapers, Inc.*, 828 F.2d 475, 476 (8th Cir. 1987) (citing *Sullivan*, 376 U.S. at 285-86); *Miskovsky v. Oklahoma Publ'g Co.*, 654 P.2d 587, 591 (Okla. 1982) (citing *Sullivan*, 376 U.S. at 287). Yale further asserts [Rec. Doc. 346 at 3], and Dongguk does not dispute [Rec. Doc. 347], that *Speer* and *Miskovsky* are the only cases, state or federal, that have expressly addressed the standard of proof applicable to the factual question of publication responsibility. The Court's own research leads it to the same conclusion.

The Court agrees with *Speer* and *Miskovksy* and concludes that controlling authority, i.e., *New York Times Co. v. Sullivan,* requires a public-official or a public-figure plaintiff in a defamation suit to prove a person's "responsibility" for publication by clear and convincing evidence. The strict actual malice standard and its attendant standard of proof (clear and convincing evidence) work in tandem to effectuate the protections of the First Amendment. Those protections are bolstered by requiring public officials and public figures to prove publication responsibility by clear and convincing evidence.

The Court erred as a matter of law in the Summary Judgment Ruling by applying the lesser standard of proof, preponderance of the evidence, rather than the proper standard of proof, clear and convincing evidence, and concluding that, based on Plaintiff's Exhibits 77 and 80,[2] "a reasonable

---

[2] Plaintiff's exhibit 77 is a July 17, 2007 email to Reinstein from Helaine Klasky, Yale's Associate Vice President and Director of Public Affairs, in which Klasky instructs Reinstein to use the language "cleared by the GC's office" to respond to media inquiries. Plaintiff's exhibit

6

jury could conclude that Carney approved and/or offered input" into a particular statement that Reinstein went on to publish. (Summary Judgment Ruling at 18). As to Plaintiff's Exhibit 77, Yale correctly argues that this exhibit cannot establish by clear and convincing evidence who if anyone in the "GC's office" ever "cleared" any language containing an allegedly defamatory statement that Reinstein went on to publish, let alone that it was Carney in particular who cleared the language. Plaintiff's Exhibit 80 indicates only that Reinstein and Carney discussed Yale's response to media inquiries; it cannot establish by clear and convincing evidence that Carney participated in crafting or approving the language of a particular statement that Reinstein went on to publish. In order to find in favor of Dongguk with respect to a given statement, a jury must find actual malice on the part of the Yale agent(s) or employee(s) responsible for the publication of that statement. *See Cweklinsky*, 267 Conn. at 217. As Plaintiff's Exhibits 77 and 80 do not contain information regarding which of Reinstein's published statements Carney may have been involved with, a jury could only attribute a given statement to Carney through speculation. As a matter of law, a jury of reasonable persons could not, from the evidence contained in these exhibits, find under the appropriate standard of proof that Carney was "responsible" for any publication that meets all the elements of a defamation claim. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact.").[3]

---

80 is a table of the details of multiple emails, e.g., the sender, recipient(s), date, and the general subject matter of the emails. The table shows Carney sent Reinstein two emails on July 11, 2007 in which Carney provided "[l]egal advice concerning Dongguk University and Jeon Ah Shin." The table also shows that Carney and Reinstein exchanged a series of emails on July 20, 2007 in which Carney and Reinstein discussed "[l]egal advice concerning communications with media" and "[l]egal advice concerning media enquiries concerning Jeong Ah Shin."

[3] In Dongguk's April 17, 2012 supplemental memoranda of law [Rec. Doc. 354], Dongguk cites Plaintiff's Exhibit 21 as evidence that Carney was "responsible" for Yale's allegedly defamatory

Based on the entirety of the record before the Court, applying the appropriate standard of proof, the Court concludes as a matter of law that a jury of reasonable persons could find that the only Yale agents or employees responsible for the allegedly defamatory publications made in connection with Jeong Ah Shin were: Associate Dean Pamela Schirmeister, Associate Vice President and Director of Public Affairs Helaine Klasky, and Associate Director of Yale's Public Affairs Office Gila Reinstein. The Court will therefore focus solely on their states of mind. *Holbrook*, 58 F.3d at 225.

   *B. Actual Malice Inquiry*: *The Mental States of Schirmeister, Klasky, and Reinstein*

  On July 20, 2007, Schirmeister approved, and was thus responsible for, one of Reinstein's published statements–namely, an email Reinstein sent to the Buddhist Weekly Newspaper on or about July 20, 2007. (Pl. Ex. 81; Def. Ex. 29 at 103).[4] Schirmeister testified during her January 28, 2010 deposition that in "July or August" of 2007 she asked her assistant to search her files for documents relating to Shin, but that her assistant did not find the Schirmeister Fax or the Inquiry

---

statements. Plaintiff's Exhibit 21 is Yale's June 12, 2009 response to Dongguk's first set of interrogatories, in which Yale states that various Yale employees–namely, Gila Reinstein, Thomas Conroy, Helaine Klasky, Susan Carney, Dorothy Robinson, Jon Butler, Richard Levin, and Pamela Schirmeister–"prepared, reviewed, approved, or otherwise were involved in the creation and issuance of press releases, press statements, official statements, or other statements made by Yale to any Member of the Media concerning Shin and/or Dongguk." (Pl. Ex. 21 at 9). Plaintiff's Exhibit 21 cannot establish by clear and convincing evidence which statements Carney may have offered input into and/or approved.

[4] The statement that Reinstein proposed to Schirmeister and subsequently emailed to the Buddhist Weekly Newspaper stated: "Shin never was a student here. Neither Pam Schirmeister nor any other Yale official signed documents about her. Yale has no record of her at all. The phone and fax numbers on the false documents are correct, but readily available. We don't know how the false documents supposedly sent from Yale were created, and they are not valid. If Yale had received a request to confirm that Shin earned a degree from the Graduate School, we would have responded that she did not." (Pl. Ex. 81; Def. Ex. 29 at 103).

Letter. (*See* Def. Ex.14 at 166-69). On September 21, 2007, Klasky approved a statement regarding Jeong Ah Shin that Reinstein had drafted, which Reinstein then emailed to four Korean media outlets and posted on Yale's website. (Pl. Ex. 121; 157 at 110; Def. Ex. 56; 135; 136; 137). Thus, it is beyond dispute that Klasky was responsible for these particular statements published by Reinstein. Klasky testified during her August 27, 2010 deposition that she did not recall what she did to investigate the truth of the statements she approved before she approved them. (Pl. Ex. 157 at 105).

The Court, in viewing the evidence in a light most favorable to Dongguk, will assume that Schirmeister and Klasky had undertaken no investigation into the truth of Reinstein's statements at the time they approved the July 20, 2007 and September 21, 2007 statements. Even given that assumption, the record before the Court does not contain sufficient evidence from which a jury of reasonable persons could find under the appropriate standard of proof that either Schirmeister or Klasky *purposely avoided the truth* at the time they approved Reinstein's statements. *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 693. Nor is there sufficient evidence from which a jury of reasonable persons could find under the appropriate standard of proof that Schirmeister or Klasky *entertained serious doubts as to the truth* of the statements they approved or *possessed a high degree of awareness of the probable falsity* of the statements they approved at the time they approved the statements. *St. Amant*, 390 U.S. at 731; *Garrison*, 379 U.S. at 74. In essence, Schirmeister and Klasky approved statements that denied the authenticity of two documents (the Schirmeister Fax and the Inquiry Letter) that purported to corroborate Shin's claim that she held a degree from Yale–a claim that was indisputably false and that was purportedly corroborated by the Certification Document, which was in fact forged. Pl.'s Rule 56(a)2 Stmt. ¶¶ 8-9.

It is uncontested that Reinstein was responsible for the publication of Yale's allegedly

9

defamatory statements. As Associate Director of Yale's Public Affairs Office, Reinstein was the Yale employee that responded to media inquiries regarding Jeong Ah Shin on Yale's behalf. Reinstein testified in her February 4, 2010 deposition that, as part of her investigation into the truth of her published statements she "asked Schirmeister whether [the Schirmeister Fax] had come from her office; and I don't remember the details, but the gist of it was no." (Def. Ex. 29 at 43-44). Reinstein further testified in her deposition that she contacted "someone" at Yale's "graduate school" who told her that the Schirmeister Fax was "not authentic" and that Yale had "never received" the Inquiry Letter (*id*. at 56-57; 83-84). The record before the Court does not contain evidence that Reinstein entertained any doubt–let alone serious doubt–as to the truth of any of her published statements or that she possessed any degree of awareness–let alone a high degree of awareness–of the probable falsity of her published statements at the times she published the statements. A jury of reasonable persons could not find under the appropriate standard of proof that Reinstein published any statement with actual malice at the time of publication.

Having concluded that there is insufficient evidence in the record under the appropriate standard of proof to support a jury finding of actual malice on the part of any Yale agent or employee responsible for an allegedly defamatory publication, the Court erred as a matter of law in the Summary Judgement Ruling in not dismissing Dongguk's defamation claim in its entirety.

**IV. DONGGUK'S NEGLIGENCE CLAIM**

In the Summary Judgment Ruling, the Court granted Yale's motion on Dongguk's negligence claim to the extent that claim was based on the incorrect statements Yale published to third persons. (Summary Judgment Ruling at 22-23). However, the Court denied summary judgment on Dongguk's negligence claim to the extent that claim was based on Yale's inaccurate statements made

directly to Dongguk and Yale's failure to timely correct those inaccuracies. (Summary Judgment Ruling at 23-28). Yale's Motion for Reconsideration asserts that the Court erred in not granting summary judgment on Dongguk's entire negligence claim. The Court agrees.

As noted in the Summary Judgment Ruling, a "public figure cannot circumvent the strict 'actual malice' standard imposed by the First Amendment by calling his claim for defamation by a different name (tort)." (Summary Judgment Ruling at 22, citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988)). Applying *Hustler Magazine,* courts have consistently dismissed "additional tort claims [] aimed at controlling the same speech that is the basis of a libel claim." *E.g.*, *Anyanwu v. Columbia Broad. Sys.*, 887 F.Supp. 690, 693 (S.D.N.Y.1995).

The *Hustler Magazine* rule has most often been applied in cases where the actionable conduct is speech published to a third party. However, it does not follow that the First Amendment concerns underlying *Hustler Magazine* do not arise when the actionable conduct is speech communicated directly to the plaintiff. Rather, "regardless of the specific tort being employed, the First Amendment applies when a plaintiff seeks damages for reputational, mental or emotional injury allegedly resulting from the defendant's speech." *Snyder v. Phelps*, 580 F.3d 206, 218 (4th Cir. 2009), *aff'd*, 131 S. Ct. 1207 (2011); *cf. Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) (holding that the plaintiff's speech-based tort claim was not barred by *Hustler Magazine* because plaintiff sought damages that did not reflect a reputational injury resulting from defendant's speech).

Supreme Court jurisprudence makes clear that the First Amendment affords "heightened protection" to speech addressing matters of public concern–that is, speech "relating to any matter of political, social, or other concern to the community" or speech that is "a subject of general interest and of value and concern to the public." *Snyder,* 131 S. Ct. at 1211 (internal quotation marks

11

omitted); *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2505 (2011) (noting the Supreme Court's "longstanding tradition of granting heightened protection to speech of public concern") (Scalia, J., concurring) (emphasis removed). The private context in which speech is made does not "vitiate the status of the statement as addressing a matter of public concern." *Rankin v. McPherson*, 483 U.S. 378, 386 n.11 (1987); *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 46 (2d Cir. 1983) ("That [the plaintiff's] speech was made privately, rather than publicly, did not remove it from First Amendment protection.").

Yale's statements made directly to Dongguk concerned the relationship and interactions among three figures of public notoriety (Shin, Yale, and Dongguk) and, furthermore, concerned issues related to a national scandal in Korea. (*See* Summary Judgment Ruling at 24). This speech was of a public concern and, accordingly, enjoys the same "heightened protection" that was applied in *Hustler Magazine* and its progeny. *Snyder*, 131 S. Ct. at 1219. As a result, Dongguk cannot seek reputational damages allegedly caused by this speech under the "reasonableness" standard of Connecticut negligence law.

Dongguk argues that Yale's "failure to investigate" is an act of negligence that caused it reputational harm and, because that act is not communicative in nature, it is not barred by the First Amendment principles set forth in *Hustler Magazine*. A failure to investigate the truth of a communication cannot be a cognizable cause of action because it is the communication itself that causes injury to a plaintiff. *See, e.g.*, *Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520, 531 (6th Cir. 2007). If the law were otherwise, a public figure could always seek reputational damages under a negligence standard simply by alleging a claim based on a negligent investigation rather than a claim of defamation. That is what Dongguk seeks to do in this case.

Dongguk also based its negligence claim on Yale's decision to wait in excess of one month, or until November 29, 2007, to advise Dongguk of its discovery on October 18, 2007 that it had made inaccurate statements directly to Dongguk in 2005 and 2007.  This portion of Dongguk's negligence claim must also fail.  Dongguk produced insufficient evidence from which a reasonable jury could conclude that Yale's inaction caused Dongguk any reputational harm separate and apart from the reputational harm caused by Reinstein's publications or Yale's communications made directly to Dongguk.  *Rawls v. Progressive N. Ins. Co.*, 23 A.3d 100, 104 (Conn. App. Ct. 2011) ("Although the jury may make reasonable inferences when determining negligence and causation, the plaintiff must present sufficient evidence from which said inferences may be made.") (citing *O'Brien v. Cordova*, 171 Conn. 303, 305-06 (1976)); *O'Donnell v. Feneque*, 991 A.2d 643, 647 (Conn. App. Ct. 2010) (holding that an alleged "causal connection must be based upon more than conjecture and surmise").[5]

Having concluded that each portion of Dongguk's negligence claim is either precluded by *Hustler Magazine* and its progeny or lacks a sufficient evidentiary basis in the record to support a jury finding in favor of Dongguk, the Court erred as a matter of law in the Summary Judgement Ruling in not dismissing Dongguk's negligence claim in its entirety.

**V. CONCLUSION**

---

[5] In its opposition to Yale's Motion for Summary Judgment, Dongguk attempted to show a causal connection between Yale's inaction and additional harm to Dongguk's reputation by pointing to four public statements released by Dongguk-affiliated organizations. (Pl. Ex. 128, 129; Def. Ex. 114, 115).  These four statements–each released after Yale had discovered its mistakes–criticized Dongguk's president and board of directors for their public-relations response to the larger Shin scandal.  They did not accuse Dongguk of lying about the background check it performed on Shin, nor did they so much as mention Yale.  Thus, they do not support a causal connection between Yale's inaction and harm to Dongguk's reputation.

After due consideration of the entirety of the record, in particular the filings made in connection with Yale's Motion for Reconsideration and the Court's April 2, 2012 order, viewing the evidence in a light most favorable to Dongguk under the appropriate standard of proof applicable to Dongguk's defamation claim and the appropriate standard of proof applicable to Dongguk's negligence claim, the Court can only conclude that if the case were allowed to proceed to trial there could be but one verdict that a jury of reasonable persons could reach: a verdict in favor of Yale and against Dongguk on all of Dongguk's remaining claims. "The [Supreme] Court has said that summary judgment should be granted where the evidence is such that it 'would require a directed verdict for the moving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (quoting *Sartor v. Arkansas Gas Corp.*, 321 U.S. 620, 624 (1944)). "Summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).

As a result of the foregoing, the Court need not address the other issues raised by Yale in its Motion for Reconsideration or the issues previously addressed by the Court in the Summary Judgment Ruling not addressed in this Ruling.

Judgment dismissing Dongguk's remaining claims against Yale with prejudice will be entered forthwith.

Signed at Bridgeport, Connecticut this 8th day of June, 2012.

_____
Tucker L. Melançon
United States District Judge