UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DONGGUK UNIVERSITY,     :   No. 3:08-CV-00441 (TLM)
                              :
          Plaintiff,        :
                              :
     v.                     :
                              :
YALE UNIVERSITY,        :
                              :
          Defendant.     :   SEPTEMBER 19, 2013
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT'S VERIFIED BILL OF COSTS

Pursuant to Fed. R. Civ. P. 54(d) and D. Conn. L. Civ. R. 54, Defendant Yale University ("Yale") submits this Bill of Costs itemizing the costs to which it is entitled as the prevailing party against Plaintiff Dongguk University ("Dongguk") in the above-captioned matter. Yale filed a Motion for Summary Judgment on August 1, 2011 (Doc. No. 249) and a Motion for Reconsideration on February 17, 2012 (Doc. No. 329). This Court granted Yale's Motions for Reconsideration and Summary Judgment and dismissed Dongguk's claims in their entirety on June 8, 2012. (Doc. No. 358.) Judgment entered in favor of Yale on June 8, 2012. (Doc. No. 359.) The Judgment ordered that "plaintiff Dongguk University be cast with the costs of this proceeding, pursuant to Fed. R. Civ. P. 54(d)." (Id.)

After Dongguk appealed, the United States Court of Appeals for the Second Circuit affirmed the District Court's Judgment in its entirety. Dongguk Univ. v. Yale Univ., No. 12-2698-cv, 2013 U.S. App. LEXIS 16907 (2d Cir. Aug. 15, 2013). The Court of Appeals' judgment of affirmance entered on August 15, 2013 (Judgment (attached hereto as Ex. 1)), and its mandate issued on September 11, 2013 (Doc. No. 367).

42843491.5

## I.    BACKGROUND FOR TAXABLE COSTS

Dongguk commenced this action on March 24, 2008, making extremely broad – and ultimately unsupported – allegations.  (Doc. No. 1.)  Dongguk alleged that Yale had destroyed Dongguk's stellar, 100-year-old reputation (id. ¶¶ 6, 157, 164-65, 201-02); deprived Dongguk of a prestigious award (id. ¶ 166); deprived Dongguk of alumni and corporate donations (id. ¶ 168); deprived Dongguk of student applications (id. ¶ 169); deprived Dongguk of government grants (id.); cost several Dongguk employees their positions (id. ¶ 170); "forced [Dongguk] to expend a substantial amount of money defending itself" (id. ¶ 171); and deprived Dongguk of permission to open a law school (id. ¶ 172).  Dongguk alleged that Yale had caused it to "suffer[] damages in an amount no less than $50,000,000."  (Id. ¶¶ 179, 190, 196, 204.)  In its damages analysis, Dongguk sought "*at a minimum* **$55,565,960**" in "economic damages" (Dongguk Damages Analysis of 7/23/10 (attached hereto as Ex. 2) at 8), in addition to unspecified "non-economic damages" (id. at 2) and "punitive damages" (id. at 18-19).

Once Yale's motion to dismiss Dongguk's Complaint was denied, Yale had no choice but to pursue the discovery needed to defend Dongguk's claims.  Yale requested certain relevant documents, and Dongguk flooded it with more than 385,000 pages, nearly all of them written in Korean (and therefore unintelligible to Yale or its attorneys).  (Sept. 19, 2013 Aff. of Howard Fetner ("Fetner Aff.") (attached hereto as Ex. 3) ¶ 3.)  Yale had to hire translators simply to identify the sea of documents that Dongguk had produced, and then to translate only the most significant among them.  (Id. ¶ 4.)  Yale took Dongguk's deposition pursuant to Fed. R. Civ. P. 30(b)(6), producing key admissions that laid bare the baselessness of Dongguk's claims.  (See, e.g., Doc. No. 255 at 20-31.)  Yale also deposed several Dongguk witnesses in their individual capacities, and all of the depositions of Dongguk witnesses were complicated and prolonged by

the need for interpreters, upon which Dongguk insisted.  (<u>See</u> E-mail from Lu to Springer of 7/8/10 (attached hereto as Ex. 4) ("All of the Dongguk deponents will need interpreters.").)

Although discovery was difficult, lengthy, and expensive, it produced the evidence needed to support Yale's successful motion for summary judgment and to prepare for trial. Discovery was necessary to define the scope of Dongguk's claims and to obtain admissible evidence proving that Dongguk could not establish those claims by a preponderance of the evidence.  Largely as a result of that discovery, the Court granted Yale's motion for summary judgment (Doc. No. 358), and the Court of Appeals affirmed.  <u>Dongguk Univ.</u>, 2013 U.S. App. LEXIS 16907.

Yale now seeks to recover the taxable costs that it necessarily incurred in defending Dongguk's claims, which taxable costs are set forth below.

## II.   <u>DEPOSITIONS</u>

Yale seeks to recover the costs of depositions that were "used in support of [its] successful motion for summary judgment" or otherwise "necessarily obtained for the preparation of the case."  D. Conn. L. Civ. R. 54(c)2(ii); 28 U.S.C. § 1920(2).  Yale deposed the following witnesses as Dongguk's chosen Fed. R. Civ. P. 30(b)(6) designees on topics central to Dongguk's claims and Yale's defenses: Euiyon Cho, Jin-Soo Han, Byoung Geon Jeon, Byoung Ho Kim, and Sun-In Lee.  (Fetner Aff. (Ex. 3) ¶ 5.)  Yale deposed the following witnesses in their individual capacities because of their personal involvement in and knowledge of the facts underlying Dongguk's claims and Yale's defenses: Euiyon Cho, Jin-Soo Han, Bong Hyun Kim, Byoung Ho Kim, Sang Il Lee, and Youngkyo Oh.  (<u>Id.</u> ¶ 6.)  Because Dongguk's witnesses testified with the assistance of Korean-English interpreters, their depositions took longer than they otherwise would have, and counsel for Dongguk agreed that Yale could spend two full days

deposing each Rule 30(b)(6) designee and each individual witness.  (Id. ¶ 7.)  Since some

witnesses were deposed both as Rule 30(b)(6) designees and in their individual capacities, some

witnesses were deposed for more than two days.  (Id.)  Yale deposed Jacob Jacoby and Elaine

Kim, Dongguk's proposed expert witnesses, because Dongguk sought to use Jacoby's and Kim's

opinions to show that Yale had caused harm to Dongguk, in order to satisfy a required element of

Dongguk's legal claims.  (Id. ¶ 8.)[1]  Counsel for Yale also defended the depositions of the

following Yale witnesses that were noticed and taken by Dongguk: Edward Barnaby, Peter

Brano, Jon Butler, Susan Carney, Susan Emerson, Alicia Grendziszewski, Helaine Klasky,

Richard Levin, Michael Madera, Thomas Mullen, Gila Reinstein, Harold Rose, and Pamela

Schirmeister, as well as rebuttal expert witness Itamar Simonson.  (Id. ¶ 10.)  Yale obtained

copies of the transcripts and videos of each deposition to enable it to prepare for further

discovery, Dongguk's pre-trial motions, Yale's motions to exclude the testimony of Dongguk's

proposed expert witnesses, Yale's summary judgment motion, and trial.  (Id. ¶ 11.)  See, e.g., In

re Kulicke & Soffa Indus. Inc. Sec. Litig., 747 F. Supp. 1136, 1147 (E.D. Pa. 1990) ("defendants

required copies of deposition transcripts to respond to plaintiff's pretrial motions and to prepare

for trial"; "effective trial preparation and the ability to respond adequately to plaintiff's pretrial

motions depended in large part on the review of deposition testimony").

    More specifically, Yale used the transcripts of the following witnesses' depositions "in

support of [its] successful motion for summary judgment," D. Conn. L. Civ. R. 54(c)2(ii):

Edward Barnaby (Doc. No. 257-2 (Def. SJ Ex. 25)); Euiyon Cho (Doc. No. 257-1 (Def. SJ Ex.

---

[1] Dongguk proffered Jacoby as an expert witness concerning a public opinion survey that he had designed and conducted.  (Fetner Aff. (Ex. 3) ¶ 9; see also, e.g., Doc. No. 298 at 8.) Because Jacoby was not able to answer a series of basic questions about his survey during the first day of his deposition, a second half-day was required, as Dongguk's counsel agreed. (Fetner Aff. (Ex. 3) ¶ 9.)

6)); Jin-Soo Han (Doc. No. 257-2 (Def. SJ Ex. 34)); Byoung Geon Jeon (Doc. No. 257-5 (Def. SJ Ex. 84)); Bong Hyun Kim (Doc. No. 257-3 (Def. SJ Ex. 52)); Byoung Ho Kim (Doc. No. 257-7 (Def. SJ Ex. 112)); Sun-In Lee (Doc. No. 257-5 (Def. SJ Ex. 87)); Youngkyo Oh (Doc. No. 257-6 (Def. SJ Ex. 103)); Gila Reinstein (Doc. No. 257-2 (Def. SJ Ex. 29)); and Pamela Schirmeister (Doc. No. 257-1 (Def. SJ Ex. 14)).  (Fetner Aff. (Ex. 3) ¶ 12.)  All of the remaining depositions were also "necessarily obtained for the preparation of the case," D. Conn. L. Civ. R. 54(c)2(ii), as all of the remaining deponents were included on at least one party's trial witness list.  (Doc. No. 345 (listing, among other Yale trial witnesses, Peter Brano, Susan Carney, Alicia Grendziszewski, Sang Il Lee, Thomas Mullen, Harold Rose, and Itamar Simonson); Doc. No. 349 (listing, among other Dongguk trial witnesses, Peter Brano, Jon Butler, Susan Carney, Susan Emerson, Alicia Grendziszewski, Jacob Jacoby, Elaine Kim, Helaine Klasky, Sang Il Lee, Richard Levin, Michael Madera, and Harold Rose); Fetner Aff. (Ex. 3) ¶ 13.)  In addition, the depositions of Dongguk's proposed expert witnesses, Jacob Jacoby and Elaine Kim, were necessary for, and cited in, Yale's successful motions in limine to exclude the testimony of Jacoby and Kim.  (Doc. Nos. 289 (citing Ex. 2), 292 (citing Ex. 2), 357; Fetner Aff. (Ex. 3) ¶ 14.)  Dongguk Univ. v. Yale Univ., No. 3:08CV441, 2012 U.S. Dist. LEXIS 76575 (D. Conn. June 1, 2012).  Those motions in limine, in turn, were necessary because Dongguk relied upon both Jacoby and Kim in opposing Yale's motion for summary judgment (Doc. No. 265 at 8, 9 n.5, 36, 37) and because Dongguk identified both as trial witnesses (Doc. No. 349).  (Fetner Aff. (Ex. 3) ¶ 15.)

In addition to written transcripts, Yale also obtained video recordings of all of the depositions identified above.  As in any case, the video recordings were important to be able to present them at trial, either as impeachment material or in lieu of an unavailable witness's live

testimony, so the jury could view the witnesses' demeanor, facial expressions, and gestures. Moreover, the video recordings of the Korean witnesses were particularly important because those witnesses testified primarily through Korean-English interpreters.  (Fetner Aff. (Ex. 3) ¶ 16.)  The transcripts of these depositions recorded the interpreters' English translations, not the witnesses' original Korean testimony.  (Id.)  Therefore, the video recordings were necessary in order to resolve any disputes over the accuracy of the translations.  That was particularly important in this case because Dongguk brought its own interpreter to many depositions and frequently challenged the accuracy of the official interpreters' translations of the witnesses' testimony.  (Id. ¶ 17; see also, e.g., July 30, 2010 Dep. of Jin-Soo Han as Rule 30(b)(6) Designee of Dongguk University at 71 (attached hereto as Ex. 5).)

Even without the special circumstances of this case, where depositions are recorded both in written transcripts and on video, federal courts typically award costs for both the transcripts and the videos.  See, e.g., Synopsys, Inc. v. Ricoh Co. (In re Ricoh Co. Patent Litig.), 661 F.3d 1361, 1370 (Fed. Cir. 2011); Tilton v. Capital Cities/ABC Inc., 115 F.3d 1471, 1477 (10th Cir. 1997); Barclay v. Michalsky, No. 3:04 CV 1322, 2011 U.S. Dist. LEXIS 16408, at *4-5 (D. Conn. Feb. 18, 2011); Outram v. Outram, No. CV 08-3437, 2010 U.S. Dist. LEXIS 28202, at *11 (E.D.N.Y. Mar. 4, 2010); Buell v. Hughes, No. 3:07 CV 468, 2009 U.S. Dist. LEXIS 131305, at *3 (D. Conn. Apr. 20, 2009); Oliphant v. State of Conn., No. 3:02 CV 700 (D. Conn. June 23, 2008); Fairbrother v. State of Conn., No. 01 CV 162 (D. Conn. Dec. 20, 2006); but see, e.g., Christie v. Gen. Elec. Capital Servs., Inc., No. 05-cv-0379, 2010 U.S. Dist. LEXIS 79185, at *2-3 (D. Conn. Aug. 5, 2010) (denying cost of video recording of depositions).

In all, Yale seeks to recover the following deposition costs:[2]

| Witness | Transcript (Original and One Copy) | Court Reporter's Attendance Fee | Video Recording |
|---|---|---|---|
| Edward Barnaby | $522.05 | | $42.40 |
| Peter Brano | $302.10 | | $21.20 |
| Jon Butler | $426.65 | | $42.40 |
| Susan Carney | $633.35 | | |
| Euiyon Cho | $773.59 (7/26/10)<br>$751.86 (7/27/10)<br>$851.82 (7/28/10)<br>$743.17 (7/29/10)<br>$682.32 (1/18/11) | $132.50 (7/26/10)<br>$201.40 (7/27/10)<br>$201.40 (7/28/10)<br>$201.40 (7/29/10)<br>$201.40 (1/18/11) | $1144.80 (7/26/10)<br>$1144.80 (7/27/10)<br>$1181.90 (7/28/10)<br>$1216.35 (7/29/10)<br>$1367.40 (1/18/11)<br>$24.20 (auto mileage and parking, 1/18/11) |
| Susan Emerson | $325.95 | | $42.40 |
| Alicia Grendziszewski | $217.30 | | $21.20 |
| Jin-Soo Han | $556.29 (7/30/10)<br>$512.83 (8/2/10)<br>$586.71 (8/3/10)<br>$608.44 (8/4/10) | $100.70 (7/30/10)<br>$132.50 (8/2/10)<br>$201.40 (8/3/10)<br>$100.70 (8/4/10) | $1001.70 (7/30/10)<br>$1216.35 (8/2/10)<br>$1144.80 (8/3/10)<br>$1144.80 (8/4/10) |
| Jacob Jacoby | $2148.30 (5/7/11)[3]<br>$909.85 (5/19/11) | $114.00 (5/7/11)<br>$57.00 (5/19/11) | $1262.50 (5/7/11)<br>$60.00 (5/7/11 – travel)<br>$610.00 (5/19/11)<br>$60.00 (5/19/11 – travel) |
| Byoung Geon Jeon | $460.68 (8/9/10)<br>$447.64 (8/11/10) | $100.70 (8/11/10) | $1144.80 (8/9/10)<br>$1160.70 (8/11/10)<br>$222.00 (auto mileage and parking, 7/26/10 – 8/11/10) |
| Bong Hyun Kim | $451.98 (2/9/11)<br>$465.02 (2/10/11) | $201.40 (2/9/11)<br>$201.40 (2/10/11) | $1367.40 (2/9/11)<br>$1224.30 (2/10/11)<br>$20.40 (auto mileage) |
| Byoung Ho Kim | $421.56 (8/5/10) | $100.70 (8/5/10) | $1144.80 (8/5/10) |

---

[2] Yale does not seek to recover the costs of rough drafts of deposition transcripts, miniature versions of deposition transcripts, expediting deposition transcripts, or shipping and handling deposition transcripts or videos.  The amounts stated in the table above include any sales tax that Yale paid (excluding any sales tax that Yale paid on rough drafts, miniature versions, expediting, or shipping and handling).

[3] Yale does not seek to recover the full $3,049.85 that it paid for expedited delivery of this transcript.  Rather, Yale seeks to recover only the $2,148.30 that it would have paid for regular, non-expedited delivery.

| | | | |
|---|---|---|---|
| | $356.37 (8/6/10) | $100.70 (8/6/10) | $1038.80 (8/6/10) |
| Elaine Kim | $1440.45<br>$39.00 (CD)<br>$79.95 (exhibits) | | $1589.50<br>$35.00 (parking fees) |
| Helaine Klasky | $559.15 | | $42.40 |
| Sang Il Lee | $789.49 | $132.50 | $1224.30<br>$10.00 (auto mileage) |
| Sun-In Lee | $420.08 (10/27/10)<br>$467.88 (10/28/10) | $100.70 (10/27/10)<br>$100.70 (10/28/10) | $1224.30 (10/27/10)<br>$1152.75 (10/28/10)<br>$20.00 (auto mileage) |
| Richard Levin | $537.95 | | $42.40 |
| Michael Madera | $113.95 | | $21.20 |
| Thomas Mullen | $206.70 | | $21.20 |
| Youngkyo Oh | $334.64 (9/15/10)<br>$625.82 (9/16/10) | $100.70 (9/15/10)<br>$100.70 (9/16/10) | $1136.85 (9/15/10)<br>$1311.75 (9/16/10)<br>$54.00 (auto mileage) |
| Gila Reinstein | $508.80 (2/4/10)<br>$111.30 (4/26/11) | | $21.20 (4/26/11) |
| Harold Rose | $325.95 | | $42.40 |
| Pamela Schirmeister | $739.35 (1/28/10)[4]<br>$116.60 (4/26/11) | | $21.20 (4/26/11) |
| Itamar Simonson | $4019.50 | | $328.00 |
| **Total: $56,847.84** | | | |

True and accurate copies of the invoices documenting the deposition costs identified above are attached hereto as Exhibit 6. (Fetner Aff. (Ex. 3) ¶ 18.)

### III.  INTERPRETERS' FEES

In addition to the deposition costs identified above, Yale also seeks to recover the costs of engaging Korean-English interpreters for the depositions of Dongguk witnesses. See D. Conn. L. Civ. R. 54(c)2(ii) ("A reasonable fee for the necessary use of an interpreter is also taxable."); 28 U.S.C. § 1920(6) ("compensation of interpreters"). Yale engaged the interpreters because Dongguk's counsel informed Yale's counsel, "All of the Dongguk deponents will need interpreters." (E-mail from Lu to Springer of 7/8/10 (Ex. 4).) For most of the depositions of

---

[4] Yale does not seek to recover the full $1,330.83 ($4.50 per page) that it paid for expedited delivery of this transcript. Rather, Yale seeks to recover only the $739.35 ($2.50 per page) that it would have paid for regular, non-expedited delivery.

Dongguk witnesses, the interpreter was Arien Greene of TransPerfect Translations, whom Dongguk's counsel specifically requested.  (Letter from Lu to Fetner of 9/16/10 (attached hereto as Ex. 7) at 2 ("For the three depositions above, we'd ask that Yale contact Transperfect Translations and inquire as to whether Mrs. Arien Greene is available.").)

    Yale seeks to recover the following deposition interpreters' fees:

| Witness | Interpreter's Fee | Travel Expense |
|---|---|---|
| Euiyon Cho | $1,400.00 (7/26/10)<br>$1,400.00 (7/27/10)<br>$1,400.00 (7/28/10)<br>$1,400.00 (7/29/10)<br>$1,400.00 (1/18/11)<br>$1,400.00 (1/19/11)[5] | $260.00 (covers 7/26/10 – 8/11/10)<br><br>$150.00 (covers 1/18/11 – 2/10/11) |
| Jin-Soo Han | $1,400.00 (7/30/10)<br>$1,400.00 (8/2/10)<br>$1,400.00 (8/3/10)<br>$1,400.00 (8/4/10) | |
| Byoung Geon Jeon | $1,400.00 (8/9/10)<br>$1,400.00 (8/11/10) | |
| Bong Hyun Kim | $1,400.00 (2/9/11)<br>$1,400.00 (2/10/11) | |
| Byoung Ho Kim | $1,400.00 (8/5/10)<br>$1,400.00 (8/6/10) | |
| Sang Il Lee | $1,400.00 | |
| Sun-In Lee | $1,400.00 (10/27/10)<br>$1,400.00 (10/28/10) | |
| Youngkyo Oh | $1,400.00 (9/15/10)<br>$1,400.00 (9/16/10)<br>$350.00 (two hours of overtime on 9/16/10) | $97.00 (covers 9/15/10 – 9/16/10) |
| **Total: $30,257.00** | | |

    True and accurate copies of the invoices documenting the interpreters' fees are attached hereto as Exhibit 8.  (Fetner Aff. (Ex. 3) ¶ 20.)

## IV.    <u>WITNESS FEE</u>

---

    [5] Although the January 19, 2011 deposition was canceled at the last minute at Dongguk's request, Yale still had to pay the interpreter's fee for that day.  (Fetner Aff. (Ex. 3) ¶ 19; Ex. 8 at 4.)

Yale seeks to recover $40 of the fee it paid to nonparty witness Itamar Simonson for his deposition.  See D. Conn. L. Civ. R. 54(c)2(ii) ("Fees for nonparty deponents . . . are taxable at the same rate as for attendance at trial, where the deposition is a taxable cost under this subsection."); 28 U.S.C. § 1920(3); 28 U.S.C. § 1821(b) ("A witness shall be paid an attendance fee of $40 per day for each day's attendance.").

A true and accurate copy of the invoice documenting Dr. Simonson's fee for his deposition is attached hereto as Exhibit 9.  (Fetner Aff. (Ex. 3) ¶ 21.)

## V.   **COPIES OF PAPERS**

Yale seeks to recover the costs of copying papers that "were necessarily obtained for use in the case," D. Conn. L. Civ. R. 54(c)3(i); 28 U.S.C. § 1920(4), including "the cost of exhibits appended to [Yale's] successful motion for summary judgment," D. Conn. L. Civ. R. 54(c)3(iii). Taxable copying costs include the costs of copying discovery materials.  In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975, 687 F.2d 626, 631-32 (2d Cir. 1982); see also Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 257-58 (4th Cir. 2013); Synopsys, Inc. v. Ricoh Co. (In re Ricoh Co. Patent Litig.), 661 F.3d 1361, 1365 (Fed. Cir. 2011); Rundus v. City of Dallas, Tex., 634 F.3d 309, 316 (5th Cir. 2011); U.S. E.E.O.C. v. W & O, Inc., 213 F.3d 600, 623 (11th Cir. 2000); Illinois v. Sangamo Constr. Co., 657 F.2d 855, 867 (7th Cir. 1981).

Yale incurred copying costs throughout the more than five-year duration of this lawsuit. Nevertheless, Yale seeks to recover only its most significant copying costs, as follows:

- May 2008 (including motion to stay discovery, supporting memorandum, and exhibits): $60.20

- June 2008 (including motion to dismiss, supporting memorandum, and exhibits): $45.10

- June 2010 (including exhibits to depositions of Dongguk witnesses): $219.90

-10-

- July 2010 (including exhibits to depositions of Dongguk witnesses): $1,134.80

- August 2010 (including exhibits to depositions of Dongguk witnesses): $571.00

- September 2010 (including exhibits to depositions of Dongguk witnesses): $266.70

- October 2010 (including exhibits to depositions of Dongguk witnesses): $295.20

- January 2011 (including exhibits to deposition of Dongguk witness): $177.30

- February 2011 (including exhibits to depositions of Dongguk witness): $494.90

- April 2011 (including exhibits to deposition of Elaine Kim): $236.20

- May 2011 (including exhibits to depositions of Jacob Jacoby): $134.30

- July 2011 (including successful motion for summary judgment, supporting memorandum, and exhibits): $1,442.40

- August 2011 (including successful motion for summary judgment, supporting memorandum, and exhibits): $85.10

- September 2011 (including reply memorandum and exhibits in support of successful motion for summary judgment; motions in limine to exclude for all purposes testimony of Elaine Kim and Jacob Jacoby, supporting memoranda, and exhibits): $1,041.30 (i.e., $631.10 for photocopying + $410.20 for impressions)

- March 2012 (including proposed jury instructions, jury interrogatories, and trial exhibits): $597.60

- April 2012 (including supplemental memoranda in support of successful motion for reconsideration of ruling on motion for summary judgment, proposed trial exhibits, Dongguk's proposed trial exhibits): $504.40

- Total: $7,306.40

True and accurate copies of the invoices documenting Yale's copying costs are attached

hereto as Exhibit 10 (with other, non-copying charges redacted).  (Fetner Aff. (Ex. 3) ¶ 22.)

## VI.   TRANSCRIPTS OF PRE-TRIAL PROCEEDINGS

Yale seeks to recover the costs of obtaining transcripts of several pre-trial proceedings.

See D. Conn. L. Civ. R. 54(c)2(i) ("The cost of the original and one copy of . . . transcripts of

pre-trial proceedings . . . [is] taxable if . . . necessarily obtained for use in the case."); 28 U.S.C. §

1920(2).

Yale obtained transcripts of the following-pretrial proceedings for use in the case, at the

following taxable costs:[6]

- Oral argument on Yale's motion to dismiss (1/30/09): $301.78 (i.e., 78 pages, at $3.65 per page for a non-expedited transcript, plus sales tax)

- Telephone conference with Judge Chatigny (2/4/09): $108.33 (i.e., 28 pages, at $3.65 per page for a non-expedited transcript, plus sales tax)

- Telephone conference with Judge Chatigny (2/23/09): $88.99 (i.e., 23 pages, at $3.65 per page for a non-expedited transcript, plus sales tax)

- Telephone conference with Judge Chatigny (3/30/09): $158.63 (i.e., 41 pages, at $3.65 per page for a non-expedited transcript, plus sales tax)

- Oral argument on motion to issue request for international judicial assistance (2/16/11): $127.68 (i.e., 33 pages, at $3.65 per page for a non-expedited transcript, plus sales tax)

- Oral argument on motions in limine to exclude testimony of proposed expert witnesses Jacob Jacoby and Elaine Kim (12/20/11): $395.94 (i.e., 102 pages, at $3.65 per page for a non-expedited transcript, plus sales tax)

- Total: $1,181.35

All of the foregoing transcripts were necessarily obtained for use in the case.  The

January 30, 2009 oral argument transcript (Doc. No. 257-5 (Def. SJ Ex. 79)) and the March 30,

2009 telephone conference transcript (Doc. No. 257-257-6 (Def. SJ Ex. 99)) were appended as

exhibits to Yale's successful motion for summary judgment and cited in Yale's memorandum in

support of that motion.  (Doc. No. 250 at 17 (citing Ex. 79), 25-26 n.8 (citing Ex. 99).)  The other

transcripts were necessary as well, in pursuing discovery, in connection with various pre-trial

motions, in preparing the summary judgment motion, and in preparing for trial.  For example, in

---

[6] Yale does not seek to recover the costs of expediting the transcripts of pre-trial proceedings.  Yale seeks to recover sales tax based on the lower, non-expedited rates.

the February 4, 2009 and February 23, 2009 telephone conferences, Judge Chatigny explained

his basis for denying Yale's motion to dismiss Dongguk's Complaint and the framework within

which discovery would be conducted in the case.  (Doc. Nos. 68, 70, 72.)  The December 20,

2011 oral argument on Yale's motions in limine to exclude the testimony of Dongguk's two

proposed expert witnesses was reasonably necessary to enable Yale's counsel to prepare for trial,

especially since those motions were not ruled upon until after Yale had done much of its trial

preparation work.  (Doc. Nos. 317, 357.)

True and accurate copies of the invoices documenting Yale's costs of obtaining the

transcripts of pre-trial proceedings are attached hereto as Exhibit 11.  (Fetner Aff. (Ex. 3) ¶ 23.)

## VII.   TRANSLATIONS OF WRITTEN DOCUMENTS

Yale seeks to recover the costs of translating certain written documents from Korean to

English, and other documents from English to Korean.  "The fee of a translator is taxable if the

copy itself is a taxable cost," i.e., if the translated document was "used in support of a successful

motion for summary judgment" or "necessarily obtained for use in the case."  D. Conn. L. Civ.

R. 54(c)3(i).

While the Supreme Court has ruled that the term "compensation of interpreters" in 28

U.S.C. § 1920(6) pertains only to oral interpretation, not to the translation of written documents,

Taniguchi v. Kan Pac. Saipan, Ltd., 132 S. Ct. 1997 (2012), Yale does not seek any document

translation costs under that subsection.  Rather, Yale seeks to recover select translation costs

under D. Conn. L. Civ. R. 54(c)3(i) ("[t]he fee of a translator"), the authority for which derives

from 28 U.S.C. § 1920(4) ("Fees for exemplification and the costs of making copies of any

materials where the copies are necessarily obtained for use in the case.").  It is clear that the

authority for D. Conn. L. Civ. R. 54(c)3(i) derives from section 1920(4), not section 1920(6),

because Rule 54(c)3 is captioned, "Fees for Exemplification and Copies of Papers Necessarily Obtained for Use in the Case," which echoes the language of section 1920(4).  A different subsection of Local Rule 54 addresses the taxability of "[a] reasonable fee for the necessary use of an interpreter."  D. Conn. L. Civ. R. 54(c)2(ii).

Even without the explicit language of D. Conn. L. Civ. R. 54(c)3(i), federal courts have long considered certain document translation costs to be taxable as "exemplification" costs within the meaning of 28 U.S.C. § 1920(4).  See, e.g., Studiengesellschaft Kohle mbH v. Eastman Kodak Co., 713 F.2d 128, 133 (5th Cir. 1983); McKesson Corp. v. Islamic Republic of Iran, No. 82-00220, 2000 U.S. Dist. LEXIS 13429, at *32-34 (D.D.C. Sept. 13, 2000); Oetiker v. Jurid Werke, GmbH, 104 F.R.D. 389, 393 (D.D.C. 1982); Bennett Chem. Co. v. Atl. Commodities, Ltd., 24 F.R.D. 200, 204 (S.D.N.Y. 1959).  Taniguchi did not alter the taxability of document translation costs under D. Conn. L. Civ. R. 54(c)3(i) and 28 U.S.C. § 1920(4), since Taniguchi addressed only the taxability of document translation costs under 28 U.S.C. § 1920(6) and the meaning of the word "interpreters" in that subsection.  See Taniguchi, 132 S. Ct. 1997; see also Nobel Biocare USA, LLC v. Technique D'Usinage Sinlab, Inc., No. 1:12cv730, 2013 U.S. Dist. LEXIS 30851, at *9-10 (E.D. Va. Mar. 4, 2013) (awarding costs for translation of documents after Taniguchi).

Yale seeks to recover the costs of translating the following documents: one exhibit to Yale's motion to dismiss, exhibits to Yale's motion for summary judgment, Yale's proposed trial exhibits, and a request for international judicial assistance issued by the Court.  To be sure, the foregoing documents are a small fraction of the documents that Yale had translated in defending this case, and the document translation costs that Yale seeks to recover are a small fraction – approximately one-fourth – of the document translation costs that it incurred in defending this

42843491.5
-14-

case.  (Fetner Aff. (Ex. 3) ¶¶ 24-25.)[7]  Nevertheless, Yale believes that only the document translations identified in the first sentence of this paragraph qualify as "fees for exemplification" within the meaning of 28 U.S.C. § 1920(4), and that the large majority of Yale's document translation costs are not taxable in light of the Supreme Court's decision in Taniguchi.

The English translation of Exhibit G to Yale's motion to dismiss was "necessarily obtained for use in the case."  D. Conn. L. Civ. R. 54(c)3(i).  Exhibit G to Yale's motion to dismiss is an English translation of the judgment of the Seoul Western District Court in the criminal case involving Jeong Ah Shin, Yang Kyun Byeon, and Yong Taek Lim, the then-Chairman of the Dongguk University Foundation Board of Directors.  (Doc. No. 26-8.)  Yale discussed Exhibit G in its memorandum of law in support of its motion to dismiss.  (Doc. No. 26 at 6, 7, 15, 18.)  It is undisputed that Yale was required to have any document that it submitted to the Court translated into English.  See, e.g., United States v. Rivera-Rosario, 300 F.3d 1, 5-7 & n.4 (1st Cir. 2002) (noting "the well-settled rule that parties are required to translate all foreign language documents into English").  (Letter from Weiner to Judge Fitzsimmons of 7/20/10 (attached hereto as Ex. 12) at 1 ("It is well-settled that before foreign language documents can be admitted into evidence, the party seeking to use foreign language documents must provide the Court and the party's adversary with certified English-language translations of foreign-language documents so that the Court can evaluate the documents' admissibility and evidentiary worth.").)[8]

---

[7] Nearly all of the more than 385,000 pages of documents that Dongguk produced in discovery were in Korean, so Yale had to have many of those documents translated into English, including any that Yale wanted to use as deposition exhibits, as exhibits to discovery motions, as exhibits to its motion for summary judgment, or as trial exhibits.  (Fetner Aff. (Ex. 3) ¶ 26.)

[8] Yale also used the English translation of Exhibit G to its motion to dismiss as an exhibit to the Rule 30(b)(6) deposition of Dongguk via designee Euiyon Cho.  (Fetner Aff. (Ex. 3) ¶ 27.)  Dongguk's attorney had requested that Yale provide him with English translations of any Korean

The English translations of the Korean exhibits to Yale's motion for summary judgment were both "used in support of a successful motion for summary judgment" and "necessarily obtained for use in the case."  D. Conn. L. Civ. R. 54(c)3(i).  As noted above, Yale was required to have any documents that it submitted to the Court translated into English.  See, e.g., Rivera-Rosario, 300 F.3d at 5-7 & n.4.  Dongguk has acknowledged this well-settled rule.  (Letter from Weiner to Judge Fitzsimmons of 7/20/10 (Ex. 12) at 1.)  Many of the exhibits to Yale's successful motion for summary judgment were written in Korean (nearly all of them produced by Dongguk in discovery), and therefore had to be translated into English.  (Doc. Nos. 257, 257-1, 257-2, 257-3, 257-4, 257-5, 257-6, 257-7, 257-8 (Def. SJ Exs. 2-3, 7, 9, 14, 20-21, 31, 38, 40, 45, 50, 58-61, 63-68, 70-72, 82-83, 86, 88, 91-96, 98, 100-02, 104, 107-08, 111, 113-15, 140, 142-43, 148, 151, 154-56, 158, 161-62, 175).)  Yale cited and discussed nearly all of the translated exhibits in its memorandum of law in support of its successful motion for summary judgment and its Local Rule 56(a)1 Statement; the few others were cited and discussed in Exhibit 73 to Yale's motion for summary judgment, which itself was cited and discussed in Yale's memorandum of law and Local Rule 56(a)1 Statement.  (Doc. Nos. 250, 251, 257-4 at 24-35; see also Doc. No. 353.)

The English translations of Yale's proposed Korean trial exhibits were "necessarily obtained for use in the case."  D. Conn. L. Civ. R. 54(c)3(i).  In addition to the translations of Yale's exhibits to its motion for summary judgment (many of which were also included among Yale's proposed trial exhibits), Yale also obtained many additional English translations of Korean documents that it included among the proposed trial exhibits that it exchanged with Dongguk's counsel pursuant to Court order.  (Fetner Aff. (Ex. 3) ¶ 28; Doc. No. 318 at 4; Def.

documents that it used as deposition exhibits.  (Letter from Weiner to Judge Fitzsimmons of 7/20/10 (Ex. 12) at 1-2.)

Yale University's Trial Exhibits (attached hereto as Ex. 13) Nos. 3-8, 11, 16-18, 20-24, 62-64, 68-70, 72, 98-100, 106-07, 111-21, 126-53, 158-66, 169-72, 175-83, 185-200, 204-07, 285-94, 308-35.) It is beyond dispute that the translations of Dongguk's Korean documents were necessary. See, e.g., Rivera-Rosario, 300 F.3d at 5-7 & n.4. (Letter from Weiner to Judge Fitzsimmons of 7/20/10 (Ex. 12).)

The translations of Yale's proposed trial exhibits were "necessarily obtained for use in the case," D. Conn. L. Civ. R. 54(c)3(i), and the costs of those translations therefore are taxable, even though the trial was not held. A Court order required the parties to exchange all trial exhibits (including translations) no later than April 5, 2012, *before* Yale's motion for summary judgment was granted on June 8, 2012. (Doc. No. 318 at 4; Doc. No. 358.) As required by a Court order, counsel for both parties sent copies of all proposed trial exhibits, including translations, to each other on April 5, 2012 (and e-mailed the exhibit lists to each other the next day). (Fetner Aff. (Ex. 3) ¶ 29; E-mail from Fetner to Lu of 4/6/11 (attached hereto as Ex. 14).) While the Court ultimately canceled the trial and suspended all remaining pretrial deadlines, it did not do so until April 19, 2012, after the parties had already exchanged their trial exhibits as required by Court order. (Doc. No. 356.)[9]

The Korean translations of the Court's request for international judicial assistance also were "necessarily obtained for use in the case." D. Conn. L. Civ. R. 54(c)3(i). During discovery, pursuant to the parties' requests, the Court issued a Request for International Judicial Assistance to Korean judicial authorities (Doc. No. 222), which necessitated several English-to-Korean translations. (Letter from Kwon, Soon-ho of 5/19/11 (attached hereto as Ex. 15).) Yale

---

[9] The Court had ordered that a failure to comply with the deadlines established by its Jury Trial Procedure Order may result in "the imposition of an adverse presumption or the imposition of sanctions" (Doc. No. 318 at 7) and that "the deadlines . . . established by the Court's Jury Trial Procedure Order . . . will not be extended short of a force majeure." (Doc. No. 282.)

initially sought the Request for International Judicial Assistance in order to obtain, from a

Korean prosecutor, authenticated copies of 22 statements that Dongguk witnesses had given to

the prosecutor in support of Dongguk's criminal complaint against former Dongguk professor

Jeong Ah Shin and the prosecutor's related investigation of Shin's lover, former Korean

government official Yang Kyun Byeon.  (Fetner Aff. (Ex. 3) ¶ 30; Doc. No. 210 at 2-3.)  Before

seeking the Request for International Judicial Assistance, Yale served Dongguk with 22 requests

for admission asking Dongguk to admit the authenticity of its employees' statements to the

prosecutor.  (Doc. No. 210 at 3.)  Dongguk, however, refused to admit the statements'

authenticity, denying knowledge of its employees' statements.  (Id. at 3-4.)  As a result, Yale

filed a Request for International Judicial Assistance in order to obtain authenticated copies of the

Dongguk witnesses' statements from the Korean prosecutor.  (Fetner Aff. (Ex. 3) ¶ 30.)  Yale's

proposed request was modified two times, once in order to include Dongguk's additional

proposed request (Doc. Nos. 214, 217), and once more after the Korean authorities rejected

portions of Dongguk's request.  (Letter from Judge Kwon, Soon-ho of 8/4/11 (attached hereto as

Ex. 16).)  All three versions had to be translated into Korean.  (See Letter from Kwon, Soon-ho

of 5/19/11 (Ex. 15).)

　　　In connection with the Request for International Judicial Assistance, Yale incurred the

following translators' fees:[10]

- Korean translation of Yale's proposed Request: $296.50

- One-half of Korean translation of April 28, 2011 Request, after Court ordered that
  Dongguk's proposed Request be combined with Yale's proposed Request: $249.24

- One-half of certification of Korean translation of April 28, 2011 Request: $17.50

---

[10] Other than the initial translation of Yale's proposed Request, for which Yale paid the entire cost, Yale and Dongguk each paid one-half of these translation costs.  The dollar amounts identified above represent only the portions that Yale paid.

- One-half of Korean translation of December 5, 2011 Request, after portions of previous Request sought by Dongguk were rejected by Korean authorities: $564.36

- Total: $1,127.60

The documents that Yale sought – and ultimately obtained – via the Request for International Judicial Assistance were both relevant and significant.  Those documents provided crucial information about the facts alleged by Dongguk, as well as impeachment material, as the Dongguk employees' statements to the Korean prosecutor contradicted many of Dongguk's allegations in this lawsuit.  (See Doc. No. 210 at 3.)  Once the Request was granted, and the documents were provided by the Korean authorities, Yale included all of them among its proposed trial exhibits.  (Fetner Aff. (Ex. 3) ¶ 31; Def. Yale University's Trial Exhibits (Ex. 13) Nos. 311-33.)

In all, Yale seeks to recover the following translators' fees:

- Translation of Exhibit G to Yale's motion to dismiss: $14,282.22[11]

- Translations of exhibits to successful summary judgment motion: $38,729.43

- Translations of proposed trial exhibits: $82,693.85

- Translations of Request for International Judicial Assistance: $1,127.60

- Total: $136,833.10

True and accurate copies of the invoices documenting Yale's document translation costs are attached hereto as Exhibit 17 (translation of Exhibit G to Yale's motion to dismiss); Exhibit 18 (translations of exhibits to Yale's motion for summary judgment); Exhibit 19 (translations of

---

[11] Yale calculated the cost of translating Exhibit G by multiplying each professional's hourly rate by the number of hours he or she worked, and converting the total from Korean won into U.S. dollars per the basic exchange rate noted on page one of the Kim & Chang invoice (i.e., ₩1,022.60 per US$1.00).  (See Ex. 17.)

Yale's proposed trial exhibits); and Exhibit 20 (translations of Request for International Judicial

Assistance).  (Fetner Aff. (Ex. 3) ¶ 32.)

## VIII.   DEMONSTRATIVE AIDS

Yale seeks to recover the costs of preparing demonstrative aids for use at trial.  In

preparing for trial, Yale engaged Empirical Creative LLC to produce a variety of graphics to use

as demonstrative aids at trial.  (Fetner Aff. (Ex. 3) ¶ 33.)  The demonstrative aids produced by

Empirical Creative were reasonably necessary to present Yale's case at trial because this case

involved many damages claims, a complicated fact pattern, many actors, and a huge number of

documents.  (Id. ¶ 34.)  The facts underlying this case occurred over the course of several years,

in two countries, and in two languages.  (Id. ¶ 35.)  At the time Yale prepared for trial, the case

also involved the potential testimony of Dongguk's two proposed expert witnesses and Yale's

rebuttal expert.  (Id. ¶ 36.)[12]  The demonstrative aids that Empirical Creative LLC created were

necessary to present all of the foregoing to a jury in a coherent, intelligible way.

Yale's demonstrative aids were "necessarily obtained for use in the case," D. Conn. L.

Civ. R. 54(c)3(i), and the costs of those demonstrative aids therefore are taxable, even though the

trial was not held.  A Court order required the parties to exchange all demonstrative aids no later

than April 5, 2012 (Doc. No. 318 at 4), which deadline was subsequently extended to April 19,

2012 (Doc. No. 336).  While the Court ultimately canceled the trial and suspended all remaining

pretrial deadlines, it did not do so until April 19, 2012, the day that the parties were required to

exchange their demonstrative aids.  (Doc. No. 356.)  In order to comply with the Court's January

---

[12] Yale's motions in limine to exclude the testimony of Dongguk's proposed expert witnesses were not ruled upon until June 1, 2012 (Doc. No. 357), after the Court-ordered deadline for preparing and exchanging demonstrative aids (Doc. Nos. 318 at 4, 336).

18, 2012 and March 8, 2012 Orders, Yale had to have its demonstrative aids prepared in advance of April 19, 2012.  (Doc. Nos. 318 at 4, 336.)

   In preparing for trial, Yale also engaged Justine Cho.  Ms. Cho collected, reviewed, and summarized the two leading Korean daily newspapers' coverage concerning Dongguk and Jeong Ah Shin, so that that news coverage could be presented to the jury via Ms. Cho's trial testimony and a demonstrative aid prepared by Empirical Creative.  (Fetner Aff. (Ex. 3) ¶ 37.)  The large amount of the newspapers' coverage, and the fact that all of the articles were in Korean, made it impossible to present all of the articles concerning Dongguk and Shin at trial.  (Id. ¶ 38.)  Therefore, Yale planned for Ms. Cho to present English-language summaries of that news coverage at trial, pursuant to Fed. R. Evid. 1006.  (See Doc. No. 345 at 2.)  In light of the extensive amount of Korean news coverage relating to Jeong Ah Shin, in light of the fact that that coverage was in Korean, and in light of Dongguk's allegation that Yale had caused that coverage to appear (see, e.g., Doc. No. 269 ¶ 14 (arguing that "articles about Dongguk's wrongdoings" were "prompted by Yale's repeated false statements to the Korean media")), Ms. Cho's summaries were necessary to present the Korean media's coverage to the jury.  Empirical Creative prepared a demonstrative aid reflecting Ms. Cho's summaries of the Korean news coverage, which Yale planned to present at trial.  (Fetner Aff. (Ex. 3) ¶ 39.)

   The costs of creating demonstrative aids are taxable as "exemplification" costs within the meaning of 28 U.S.C. § 1920(4) (and, by extension, D. Conn. L. Civ. R. 54(c)3(i)).  See In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975, 687 F.2d 626, 631 (2d Cir. 1982); Cefalu v. Village of Elk Grove, 211 F.3d 416, 427 (7th Cir. 2000) ("exemplification" is "broad enough to include a wide variety of exhibits and demonstrative aids"); Maxwell v. Hapag-Lloyd Aktiengesellschaft, 862 F.2d 767, 770 (9th Cir. 1988) ("'exemplification and

copies of papers' has been interpreted to include all types of demonstrative evidence, including photographs and graphic aids"); Astrazeneca AB v. Lek Pharm. & Chem. Co., D.D. (In re Omeprazole Patent Litig.), MDL No. 1291, 2012 U.S. Dist. LEXIS 160057, at *26-31 (S.D.N.Y. Nov. 6, 2012) (taxing $225,597.65 in costs for preparation of demonstrative aids); Farberware Licensing Co. LLC v. Meyer Mktg. Co., Ltd., No. 09 Civ. 2570, 2009 U.S. Dist. LEXIS 121323, at *23-25 (S.D.N.Y. Dec. 29, 2009); Natural Organics, Inc. v. Nutraceutical Corp., No. 01 Civ. 0384, 2009 U.S. Dist. LEXIS 71077, at *26 (S.D.N.Y. Aug. 6, 2009); DiBella v. Hopkins, 407 F. Supp. 2d 537, 539-40 (S.D.N.Y. 2005); Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 66 (S.D.N.Y. 2003) ("The Second Circuit has taken a rather broad view of what is included in the category of exemplification . . . ."); In re Kulicke & Soffa Indus. Inc. Sec. Litig., 747 F. Supp. 1136, 1147 (E.D. Pa. 1990).

Yale seeks to recover the following demonstrative aid, or exemplification, costs:

- Empirical Creative: $66,947.82

- Justine Cho: $36,921.52

- Total: $103,869.34

A true and accurate copy of the invoice documenting the cost that Yale paid to Empirical Creative for the preparation of demonstrative aids to be presented at trial in this action is attached hereto as Exhibit 21.  (Fetner Aff. (Ex. 3) ¶ 40.)  True and accurate copies of the invoices documenting the costs that Yale paid for Justine Cho's collection, review, and summarization of the two leading Korean daily newspapers' coverage concerning Dongguk and Jeong Ah Shin are attached hereto as Exhibit 22.  (Id. ¶ 41.)  True and accurate copies of the 18 demonstrative aids prepared by Empirical Creative are attached hereto as Exhibits 23-40.  (Id. ¶ 42.)

## IX.    <u>CONCLUSION</u>

The following is a list of all taxable costs incurred by Yale:

| Category | Taxable Costs |
|---|---|
| Depositions | $56,847.84 |
| Interpreters' Fees | $30,257.00 |
| Witness Fee | $40.00 |
| Copies of Papers | $7,306.40 |
| Transcripts of Pre-trial Proceedings | $1,181.35 |
| Translations of Written Documents | $136,833.10 |
| Demonstrative Aids | $103,869.34 |
| **Total** | **$336,335.03** |

Accordingly, pursuant to Fed. R. Civ. P. 54(d) and D. Conn. L. Civ. R. 54, Yale

respectfully requests that the Court enter an order directing Dongguk to reimburse it in the total

amount of *$336,335.03* for the necessary costs incurred in defending this action.

DEFENDANT YALE UNIVERSITY

By:      /s/ Howard Fetner
Felix J. Springer (#ct05700)
Howard Fetner (#ct26870)
Jeffrey P. Mueller (#ct27870)
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103
(860) 275-0100 (phone)
(860) 275-0343 (fax)
fjspringer@daypitney.com
hfetner@daypitney.com
jpmueller@daypitney.com

Its attorneys

42843491.5

## <u>CERTIFICATION</u>

I hereby certify that on September 19, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_/s/ Howard Fetner_